# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

THE HONORABLE SEAN O'DONNELL

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| KEMPER HOLDINGS, LLC, a limited liability company, | No. 20-2-15992-1 SEA |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| AMERICAN INTERNATIONAL GROUP UK LIMITED T/A LEX-LONDON, a corporation; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a corporation; XL INSURANCE AMERICA, INC., a corporation; LIBERTY MUTUAL FIRE INSURANCE COMPANY, a corporation; and CONTINENTAL CASUALTY COMPANY, a corporation, | |
| Defendants. | |

Plaintiff Kemper Holdings, LLC ("Kemper"), by and through its attorneys, Perkins

Coie LLP, for its First Amended Complaint for breach of contract, declaratory judgment

pursuant to RCW 7.24.010, *et seq.*, and damages for the breach of the duty of good faith and

COMPLAINT –1

fair dealing and under Washington's Consumer Protection Act and Insurance Fair Conduct Act against Defendants American International Group UK Ltd T/A[1] LEX-London ("AIG"), American Guarantee and Liability Insurance Company ("Zurich"),  XL Insurance America, Inc. ("XL"), Liberty Mutual Fire Insurance Company ("Liberty"), and Continental Casualty Company ("CNA") (individually, an "Insurer" or, collectively, the "Defendants" or "Insurers") states as follows:

## I.  NATURE OF THE ACTION

1.      This is a civil action for declaratory relief, as well as damages for breach of contract and for bad faith and violations of Washington's Consumer Protection Act ("WCPA") and Insurance Fair Conduct Act, RCW 48.30.015, ("IFCA") arising out of the Insurers' wrongful failure and refusal to provide coverage under an "all risks" insurance program for Kemper's tens of millions of dollars in losses due to direct physical loss or damage at a group of properties and nearby attractions, all of which arose out of the novel coronavirus ("COVID-19") pandemic and/or the unprecedented state and municipal government orders that impaired, altered, and/or damaged the properties.

2.      Washington requires that "[e]very insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time."  Wash. Admin. Code § 284-30-370.  Kemper provided the Insurers with notice of its claims in March 2020.  Yet, the Insurers have failed for more than *seven months* to honor their coverage obligations.  The Insurers' unreasonable delay and refusal is particularly egregious because the policies, which all incorporate the same core AIG coverage form, specifically cover "Communicable Disease Response" and [Business]

---

[1] "T/A" stands for "Trading As."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"Interruption by Communicable Disease," and also provide numerous additional triggered coverages.

3.      Since Kemper submitted its claim, the Insurers have sent Kemper broad reservations of rights letters, but the Insurers have failed to conduct anything more than a superficial or pretextual investigation of the claim, consisting of a questionnaire and follow up requests for information.  Kemper promptly responded to the questionnaire on June 24, 2020 and promptly provided its responses to the Insurers' additional requests for information on August 4, 2020.  Kemper's responses demonstrated the direct physical loss or damage caused by the presence of the COVID-19 communicable disease at its properties and nearby attractions and provided information about the relevant government orders imposed in response to the pandemic that impaired, altered, and/or damaged the properties and nearby attractions.  This information demonstrated that Kemper's damages and losses, as well as the extra expenses Kemper was incurring, plainly triggered various coverages under the policies. Kemper also furnished the Insurers with a third-party assessment showing that Kemper's total losses are more than $30 million.  Nonetheless, the Insurers have failed and refused to even pay for Kemper's losses under the "communicable disease" coverages, let alone any other coverages, and refused even the basic step of acknowledging that the pandemic triggers any aspect of their coverage despite having months to investigate, adjust, and resolve this claim; thus, forcing Kemper to bring this action.

## II.  THE PARTIES

4.      Plaintiff Kemper is a Washington limited liability company with its principal place of business in King County, Washington.

5.      Defendant AIG is a corporation registered under the laws of England with its principal place of business in London, England.

FIRST AMENDED COMPLAINT –3

6.     The remaining Defendants – Zurich, XL, Liberty, and CNA – are U.S.-based corporations registered with the Washington State Office of the Insurance Commissioner and licensed by that Office to issue certain insurance policies in the State of Washington.

### III.  JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over the Insurers because the policies that they issued to Kemper insure Kemper's property, which is located within King County, in the State of Washington, and were delivered to Kemper in King County, Washington.  This constitutes evidence that the Insurers have purposefully availed themselves of the benefits and protections of the State of Washington by transacting business with Kemper and assuming continuing obligations to Kemper in the State of Washington, as well as purposefully directing its activities at Kemper in King County, Washington.  Moreover, Zurich, XL, Liberty, and CNA have purposefully availed themselves of the Court's jurisdiction and targeted Washington by registering with the Washington State Office of the Insurance Commissioner for the purpose of issuing insurance policies in Washington.  Finally, the lead AIG policy contains a provision whereby AIG, "will submit to the jurisdiction of any Court of competent jurisdiction within the United States."

8.     This Court has subject-matter jurisdiction over the controversy pursuant to RCW 2.08.010.

9.      Venue is proper in this District pursuant to RCW 4.12.025(1) because the Defendants transacted business in King County, Washington by issuing insurance policies to Kemper - a King County, Washington resident - that insure property located in King County, Washington.

10.    Jurisdiction and venue are additionally proper in this Court because all Insurers except for Zurich consented in their policies to answer suit in "any Court of competent

FIRST AMENDED COMPLAINT –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

jurisdiction within the United States" and not to "transfer, change venue, or remove any lawsuit filed by the Insured in any such court."

## IV.  GENERAL ALLEGATIONS

### A.  The Kemper Portfolio

11.     Kemper is part of a fourth-generation, family-owned organization that has developed and managed property in Bellevue, Washington since the 1940s.

12.     At issue here are properties that are part of a more than 6,000,000 square foot portfolio known as "The Bellevue Collection."

13.     The Bellevue Collection includes three luxury hotels; the Bellevue Square shopping mall, which is home to over 200 tenants; two movie theaters; and additional dining, retail, office, and luxury residential space.

14.     The Bellevue Collection is located within one mile of several major King County attractions, including without limitation: Bellevue Downtown Park, KidsQuest Children's Museum, Meydenbauer Bay Park, and the Meydenbauer Convention Center.

15.     KidsQuest Children's Museum, for example, reports that it draws approximately 206,000 annual visitors and has had more than 2,000,000 visitors since opening in 2005.

### B.  The Policies

16.     The Insurers collectively issued a property insurance program to Kemper for the Bellevue Collection providing $1,000,000,000 in "all risks" coverage for the policy period of July 31, 2019 to July 31, 2020 ("Policies").

17.     The Insurers' are severally subscribed to the Policies as follows:

     A.  AIG issued Policy No. PN304770N, attached hereto as **Exhibit A**, under which it assumed a 40% quota share for all limits and sublimits on the Program ("AIG Policy");

FIRST AMENDED COMPLAINT –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

B.  Zurich issued Policy No. ERP-0851426-01, attached hereto as **Exhibit B**, under which it assumed a 25% quota share for all limits and sublimits on the Program ("Zurich Policy");

C.  XL issued Policy No. US00086797PR19A, attached hereto as **Exhibit C**, under which it assumed a 15% quota share for all limits and sublimits on the Program ("XL Policy");

D.  Liberty issued Policy No. MJ2-L9L-442757-079, attached hereto as **Exhibit D**, under which it assumed a 10% quota share for all limits and sublimits on the Program ("Liberty Policy"); and

E.  CNA issued Policy No. 6072928892, attached hereto as **Exhibit E**, under which it assumed a 10% quota share for all limits and sublimits on the Program ("CNA Policy").

18.     The AIG Policy serves as the lead policy, with all Insurers except Zurich adopting the AIG Policy form directly, subject to certain carrier-specific endorsements.  The AIG Policy, XL Policy, Liberty Policy, and CNA Policy are hereinafter referred to as the "AIG Form Policies."

19.     The Policies provide coverage for the Bellevue Collection's properties – called "**locations**"[2] in the Policies – as specified in a Schedule of Locations on file with the Insurers.

20.     The "locations" insured under the Policies generally break down into several categories at issue here, including but not limited to: Bellevue Place; Bellevue Square; Lincoln Square North; Lincoln Square South; the Kaylen Ground Lease; the Cascade Building; and the Redwood Building (collectively, the "Properties").

21.     The AIG Form Policies cover Kemper "against all risks of direct physical loss of or damage to property described herein . . . except as hereinafter excluded."  *See* Ex. A, ¶ 9.

---

[2] Terms that are bolded in discussion of the Policies' language are defined terms in the Policies and have the same meaning as used therein.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

22.    The Zurich Policy covers "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy." *See* Ex. B, Declarations.

23.    The AIG Form Policies contain several different coverage forms implicated in this action, including:

A. Business interruption coverage for "[l]oss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described [in the Policies]," including "net profit" and 90 days of lost "ordinary payroll," that includes an Extended Period of Liability of 365 days, *see* Ex. A, ¶ 7(B);

B. "Extra expense" coverage for "the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred" where such expense is "incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described" [in the Policies], *see id.* at ¶ 7(C);

C. Coverage for lost "Rental Value," *see id.* at ¶ 7(D);

D. $1 million for "Communicable Disease Response" and "Interruption by Communicable Disease," *see id.* at ¶¶ 7(L)-(M);

E. 30 consecutive days per occurrence for time element "loss sustained during the period of time when as a direct result of a peril insured against, access to real or personal property is thereby prohibited by order of civil or military Authority" where such peril occurs within 5 miles of any "**location**", *id.* at ¶ 7(F)(2);[3]

F. 30 consecutive days per occurrence of time element loss "resulting from damage to or destruction by causes of loss insured against" at "attraction property" – *i.e.*, "[p]roperty not owned or operated by the Insured, located within 1 mile of the Insureds location which attracts business to the Insured," *id.* at ¶ 7(F)(1)(d);[4]

---

[3] This coverage is subject to a $25 million per occurrence sublimit.
[4] This coverage is subject to a $25 million per occurrence sublimit.

FIRST AMENDED COMPLAINT –7

G. 30 days of loss per occurrence, including business interruption, "during the period of time when, as a direct result of a peril insured against, access to or egress from real or personal property is thereby prevented" where such peril occurs within 5 miles of any "**location**," *id.* at ¶ 7(F)(3).;[5]

H. $25 million per occurrence in "Contingent Time Element Extended" coverage for "loss resulting from damage to or destruction by causes of loss insured against . . . [p]roperty that prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the policy territory," *id.* at ¶ 7(F)(1)(b); and

I. $1 million of "Claims Preparation Costs" – *i.e.*, "expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy," *id.* at ¶ 8(D).

24.     The Zurich Policy provides similar coverages, albeit with slightly different terms as provided in the policy.

25.     By way of example, the Zurich Policy provides a 545-day Extended Period of Indemnity for time element losses, and thus more than the 365-day period in the AIG Form Policies.

26.     The Zurich Policy notably lacks a dollar-specific sublimit for the "Attraction Property," "Civil or Military Authority," and "Ingress/Egress" coverage.  Ex. B, ¶ 11.

27.     The Zurich Policy also has a different limit for "Claims Preparation Costs." *Id.*

28.     Moreover, the Zurich Policy contains an additional coverage extension for "Protection and Preservation of Property," which provides for "reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or

---

[5] This coverage is subject to a $25 million per occurrence sublimit.

FIRST AMENDED COMPLAINT –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

damage to such insured property." *Id.* at Property Damage, Other Additional Coverages, ¶ (U). The "Protection and Preservation of Property" coverage also provides for "Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property injured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property." *Id.* at Time Element, Additional Time Element Coverages, ¶ G.

### C. The COVID-19 Outbreak: What is COVID-19?

29.     COVID-19 is a communicable disease caused by the novel coronavirus known as SARS-CoV-2.

30.     As of the time of filing, there is no known, domestically-approved vaccine for preventing COVID-19.

31.     On January 30, 2020, the World Health Organization ("WHO") declared COVID-19 a Public Health Emergency of International Concern. On March 11, 2020, the WHO upgraded its declaration to recognize COVID-19 as a global pandemic.

32.     WHO reporting reflects that COVID-19 is highly transmissible and can be passed, among other ways, through:

A. "direct, indirect, or close contact with infected people";

B. exposure to respiratory droplets from a person "in close contact (within 1 metre) with an infected person who has respiratory symptoms (e.g. coughing or sneezing) or who is talking or singing";

C. airborne or aerosol transmission where droplets remain in the air for extended periods of time and over long distances; and

D. coming into contact with an infected surface as "viable SARS-CoV-2 virus and/or RNA . . . can be found on . . . surfaces for periods ranging from hours to days, depending on the ambient

FIRST AMENDED COMPLAINT –9

environment (including temperature and humidity) and the type of surface."[6]

33.    The U.S. Centers for Disease Control and Prevention ("CDC") has similarly concluded that COVID-19 "is spreading very easily and sustainably between people."

34.    At least one aerosols expert, University of Colorado chemistry professor Jose-Luis Jimenez, stated in March 2020 interview that individuals should maintain at least 25 feet of distance between themselves and others to prevent the aerosol spread of SARS-CoV-2.[7]

35.    On August 25, 2020, Professor Jimenez published an article in TIME explaining that SARS-CoV-2 spreads three ways: (1) by "fomites," or "objects that are contaminated with the virus (which could include someone else's skin)"; (2) "droplets," or "small bits of saliva or respiratory fluid that infected individuals expel when they cough, sneeze, or talk" that "fall to the ground after traveling 3-6 feet"; and (3) "aerosols," or "bits of fluid" expelled by humans that "are so small that they can linger in the air for minutes to hours."[8]

36.    With respect to "aerosols," Professor Jimenez explained that "the evidence overwhelmingly supports aerosol transmission [of SARS-CoV-2], and there are no strong arguments against it."[9] His article compares aerosol transmission to smoking, explaining:

> Imagine sharing a home with a smoker: if you stood close to the smoker while talking, you would inhale a great deal of smoke. Replace the smoke with virus-containing aerosols, which behave very similarly, and the impact is similar: the

---

[6] *Transmission of SARS-CoV-2: implications for infection prevention precautions*, World Health Org. (Jul. 9, 2020), https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions.
[7] Chris Bianchi, *Coronavirus: Tips to stay safe while exercising outdoors*, PIONEER PRESS (March 27, 2020), https://www.twincities.com/2020/03/27/coronavirus-exercising-outdoors-jogging-staying-safe-tips/
[8] Jose-Luis Jimenez, *COVID-19 Is Transmitted Through Aerosols. We Have Enough Evidence, Now It Is Time to Act*, TIME (Aug. 25, 2020 7:00AM EDT), https://time.com/5883081/covid-19-transmitted-aerosols/
[9] *Id.*

FIRST AMENDED COMPLAINT –10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

closer you are to someone releasing virus-carrying aerosols, the more likely you are to breathe in larger amounts of virus. We know from detailed, rigorous studies that when individuals talk in close proximity, aerosols dominate transmission and droplets are nearly negligible.

If you are standing on the other side of the room, you would inhale significantly less smoke. But in a poorly ventilated room, the smoke will accumulate, and people in the room may end up inhaling a lot of smoke over time. Talking, and especially singing and shouting increase aerosol exhalation by factors of 10 and 50, respectively. Indeed, we are finding that outbreaks often occur when people gather in crowded, insufficiently ventilated indoor spaces, such as singing at karaoke parties, cheering at clubs, having conversations in bars, and exercising in gyms. Superspreading events, where one person infects many, occur almost exclusively in indoor locations and are driving the pandemic. These observations are easily explained by aerosols, and are very difficult or impossible to explain by droplets or fomites.

***

Aerosols . . . act like smoke: after being expelled, they don't fall to the ground, but rather disperse throughout the air, getting diluted by air currents, and being inhaled by others present in the same space. Contact tracing shows that, when it comes to COVID-19, being outdoors is 20 times safer than being indoors, which argues that aerosol transmission is much more important than droplets; outdoors, there's plenty of air in which aerosols can become diluted; not so indoors.[10]

37.     With respect to surfaces, a March 2020 National Institutes of Health study published in the New England Journal of Medicine reported that SARS-CoV-2 "remained active on plastic and stainless steel surfaces for two to three days" and " remained infectious for up to 24 hours on cardboard and four hours on copper."  The same study found that SARS-CoV-2 "was detectable in aerosols for up to three hours."  All of these types of surfaces are present in the Properties.

38.     Other studies have found that SARS-CoV-2 may be found on various surfaces for even longer periods of time.  For example, the CDC determined that SARS-CoV-2 RNA was identifiable on surfaces within the Diamond Princess cruise ship up to 17 days after the cabins had been vacated.

---

[10] *Id.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

39.     Another study published on October 7, 2020 in the *Virology Journal* determined that "SARS-CoV-2 can be recovered from non-porous surfaces for at least 28 days at ambient temperature and humidity (20 °C and 50% RH)."[11]

40.     COVID-19 is particularly dangerous because it has an incubation period (the time between exposure and manifesting symptoms) of up to 14 days, during which time an individual who has been exposed to COVID-19 but is "pre-symptomatic" can unknowingly shed and/or transmit SARS-Cov-2 particles.

41.     In addition, as many as 40 percent of individuals infected with COVID-19 never manifest symptoms.  Scientific studies suggest that even asymptomatic individuals can shed and/or transmit SARS-Cov-2 particles at a level sufficient to infect others.

42.     Based on this evidence, SARS-CoV-2 plainly can cause direct physical damage to property.

43.     Additionally, and in the alternative, SARS-CoV-2 plainly can cause direct physical loss to property.

**D.  The COVID-19 Outbreak in King County Lead to State-Wide Civil Authority Orders That Impacted the Properties' Tenants, and Ultimately Led To Kemper's Closure of the Properties and Related Closure of Attractions Nearby**

44.     COVID-19 was first reported in Wuhan City, China in or around December 2019.  Available evidence "suggests that the start of the outbreak resulted from a single point introduction in the human population around the time that the virus was first reported in humans in Wuhan, China in December 2019."

45.     On or about January 21, 2020, the United States confirmed what was then believed to be the first known case of COVID-19 in the country, involving an individual who

---

[11] Riddell, S., Goldie, S., Hill, A. et al. *The effect of temperature on persistence of SARS-CoV-2 on common surfaces*, Virol J 17, 145 (2020), https://doi.org/10.1186/s12985-020-01418-7.

FIRST AMENDED COMPLAINT –12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

entered the United States in Seattle, Washington and resided in State of Washington. Investigations concerning potential earlier cases remain on-going.

46.      On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency to combat COVID-19.[12]

47.      Thereafter, COVID-19 began to rapidly spread within the King County area, including in, at, and near the Properties and nearby attractions.

48.      On February 29, 2020, Washington Governor Jay Inslee issued Proclamation 20-05, attached hereto as **Exhibit F**, declaring a State of Emergency in all counties in the State of Washington arising out of the presence and risks of COVID-19.  The same day, King County confirmed the first COVID-19 fatality in Washington State – a patient located just north of the Properties in Kirkland, Washington.

49.      On March 6, 2020, several universities in the general vicinity of the Properties, including Bellevue College and the University of Washington, announced that all classes would meet online.

50.      On March 11, 2020, the WHO declared COVID-19 to be a "pandemic."

51.      That same day, Washington Governor Jay Inslee issued Proclamation 20-07, attached hereto as **Exhibit G**, banning "[g]atherings of 250 people or more for social, spiritual and recreational activities" in King County (among others) until March 31, 2020 unless extended beyond that date.  Proclamation 20-07 recognized that COVID-19 is "a respiratory disease that spreads easily from person to person and may result in serious illness or death,

---

[12] *Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus*, U.S. Dep't of Health and Human Serv. (Jan. 31, 2020), https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html.

FIRST AMENDED COMPLAINT –13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

has been confirmed in 9 counties of Washington State resulting in 24 deaths, with *significant community spread* in King, Pierce, and Snohomish counties." Ex. G, at 1 (emphasis added).

52.     On March 13, 2020, the White House issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak.

53.     Also on or before March 13, 2020, local news media reported that several Bellevue Collection tenants at the Properties were reducing their hours of operation, restaurants with the Properties were closing; and the nearby KidsQuest Children's Museum was closing through at least April 3, 2020.[13]

54.     On March 16, 2020, Washington Governor Jay Inslee issued Proclamation 20-13, attached hereto as **Exhibit H**, whereby the State of Washington "prohibit[ed] any number of people from gathering in any public venue in which people congregate for purposes of public entertainment, recreation, food and beverage service, theater, bowling, fitness and other similar activities, to include all public venues in which the serving, provision, or consumption of prepared food or beverages occurs at a table, bar, or for consumption within."  The Proclamation further stated that "to help preserve and maintain life, health, property or the public peace, I hereby prohibit the operation of public venues in which people congregate for entertainment, social or recreational purposes, including but not limited to theaters, bowling alleys, gyms, fitness centers, non-tribal card rooms, barbershops and hair/nail salons, tattoo parlors, pool halls, and other similar venues."

55.     Significantly, Proclamation 20-13 also declared:

> based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, *property* or the public peace, for all

---

[13] *Bellevue Square Modifies Operating Hours, Plus Other Bellevue Businesses Temporarily Close*, Downtown Bellevue Network (March 13, 2020), https://downtownbellevue.com/2020/03/13/bellevue-square-modifies-operating-hours-other-bellevue-businesses-temporarily-close/

FIRST AMENDED COMPLAINT –14

other retail businesses except pharmacies and grocery stores, I hereby prohibit the operation of all retail stores unless they designate an employee or officer who must establish and implement social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines, which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

Ex. H, at 3.

56.    Moreover, also on March 16, 2020, Washington Governor Jay Inslee issued Proclamation 20-14, attached hereto as **Exhibit I**, whereby the State of Washington amended previous Proclamations to prohibit gatherings of 50 people or less.

57.    On March 23, 2020, Washington Governor Jay Inslee issued Proclamation 20-25, attached hereto as **Exhibit J** and entitled "Stay Home–Stay Healthy," which recognized " at least 2,221 cases of COVID-19 in Washington State" at the time and ordered that "[a]ll people in Washington State shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services" until April 6, 2020 or beyond.  Proclamation 20-25 further banned all public gatherings and ordered that "[e]ffective midnight on March 25, 2020, all non-essential businesses in Washington State shall cease operations except for performing basic minimum operations.  Ex. J, at ¶ 3.

58.    Washington extended the above-referenced orders several times, including extending the "Stay Home–Stay Healthy" Proclamation 20-25 through May 31, 2020, after which time Washington began a phased re-opening plan.  *See, e.g.*, Proclamation 20-20-25.4, attached hereto as **Exhibit K**.

FIRST AMENDED COMPLAINT –15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### E.  Specific Evidence of COVID-19 Causing Direct Physical
### Loss or Damage to Kemper's Properties

59.     The first known potential COVID-19 case at the Properties was on or about March 5, 2020, involving an employee of a Lincoln Square South office tenant who was present at the Properties on that date.  Kemper learned on or about March 11, 2020 that the employee tested positive for COVID-19 within days after being present at the Properties on March 5, 2020.

60.     On or about March 12, 2020, Kemper learned that a Bellevue Square retail tenant had an employee who tested positive for COVID-19.  Investigation continues as to when that employee had last been at Bellevue Square before testing positive.

61.     On March 16, 2020, consistent with Proclamation 20-13 and the intent of Proclamation 20-14, Kemper corporate officers directed that all retail shops in Bellevue Square, Bellevue Place, Lincoln Square North, and Lincoln Square North be closed due to COVID-19 and related orders of civil authority.  A true and correct copy of Kemper's order is attached hereto as **Exhibit L**.

62.     Additionally, on March 23, 2020, Kemper learned of a Bellevue Place office tenant who had an employee test positive of COVID-19 after being in the office last on March 19, 2020.

63.     Between March 17, 2020 and April 18, 2020, Kemper partnered with environmental health and safety consulting firm, EHS-International, Inc. ("EHSI") to perform COVID-19 testing at certain Properties following several instances (include the aforementioned) where Kemper learned that employees and/or vendors who worked in certain Properties tested positive for COVID-19 within a short time of being at the Property.  EHSI's

FIRST AMENDED COMPLAINT –16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

testing confirmed the presence of the SARS-CoV-2 virus at least one location – the Redwood Building – during the above-referenced time period.

64.     Even before receiving the EHSI results, Kemper was forced on or about April 17, 2020 to close the Redwood Building and Cascade Building temporarily for disinfection based on a report that a janitorial staff member tested positive for COVID-19 within days having been inside both buildings.

65.     More recently, in September 2020, further testing confirmed the presence of the SARS-CoV-2 virus at another location – Bellevue Place.

66.     Ultimately, even absent this testing evidence, Kemper states, on information and belief, that COVID-19 was present at all of the Properties starting in January and/or February 2020 and at relevant times thereafter due to (1) prevalence of COVID-19 in King County, Washington as the nation's first COVID-19 "hot spot"; (2) the fact that the Properties are almost all heavily trafficked public spaces such as restaurants, a shopping mall, hotels, and office spaces; (3) the lack of available testing at high volumes, and (4) the lack of public knowledge during January, February, and much of March that COVID-19 may be spread by pre-symptomatic and asymptomatic individuals.

### F.  Insurers' Failure to Investigate and Bad Faith Refusal to Accept Coverage

67.     On March 19, 2020, Kemper, provided the Insurers with notice of loss under the Policies ("Claim").

68.     As provided in the Policies, the Insurers appointed Jeffry Hellman from McLarens to investigate and adjust the Claim.  McLarens acknowledged Kemper's Claim immediately and asked several initial questions about the Claim.

69.     On March 26, 2020, Kemper provided written responses to McLarens' preliminary written questions concerning the Claim.  Kemper's responses disclosed that

FIRST AMENDED COMPLAINT –17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

several individuals who tested positive for COVID-19 were present within the Properties just days before their positive tests and provided substantial information from which the Insurers could conclude that, at a minimum, the communicable disease coverages in the Policies had been triggered.

70.     On March 30, 2020, McLarens provided a written questionnaire to Kemper from XL that, among other things, sought information not relevant to the XL Policy's coverages.

71.     On April 28, 2020, McLarens sent a letter to Kemper on behalf of the Insurers "reserve[ing] all rights and defenses" under the Policies for Kemper's Claim, but refusing to acknowledge any claim or loss under the Policies.

72.     On June 24, 2020, Kemper provided McLarens with its written responses XL's questionnaire wherein Kemper stated with respect to each of the Properties that "COVID-19 has led to the physical loss of use and physical damage to the property."  Kemper's written responses also informed McLarens that Kemper retained BDO USA, LLP ("BDO") to assist with claim preparation and attached invoices and reports from EHSI related to testing and cleaning the Properties.

73.     On July 17, 2020, McLarens again sent correspondence to Kemper on behalf of the Insurers wherein the Insurers failed and refused to acknowledge their coverage obligations for the Claim, including a failure to acknowledge any claim or loss under the Policies**.**  McLarens' correspondence also sought additional information from Kemper regarding the Claim.

74.     On August 4, 2020, Kemper sent a response to McLarens providing preliminary business interruption loss projections for several of the Properties from BDO, responses to McLarens' requests for information, copies of publicly-available orders from a

FIRST AMENDED COMPLAINT –18

civil authority that prohibited access to and use of certain elements of the Property due to COVID-19 and re-sent the testing and cleaning-related invoices and reports.

75.     Despite receiving a detailed submission of materials on August 4, 2020 and follow-up testing information in September 2020, Insurers failed and refused to timely acknowledge their coverage obligations for the Claim or even that the Claim triggers the Policies, forcing Kemper to file the instant action on the morning of October 30, 2020.

76.     Later that day, the Insurers sent correspondence to Kemper denying coverage for the Claim.

77.     On November 3, 2020, Kemper sent the Insurers a written notice informing the Insurers of their violations of the IFCA and providing them with an opportunity to cure such violations.  Kemper provided a copy of such notice to the Washington Office of the Insurance Commissioner.

78.     On November 24, 2020, the Insurers' agent, McLarens, sent Kemper a letter disclaiming any liability under the IFCA and again wrongfully asserting that Kemper was not entitled to coverage for its Claim.

### G.  Kemper's Claim for COVID-19-Related Losses Triggered The "All Risks" AIG Form Policies and Various Coverages Therein

79.     The actual presence of SARS-CoV-2, the virus, which causes the COVID-19 communicable disease, at the Properties first arose during the period of the AIG Form Policies and caused direct physical loss and/or direct physical damage at the Properties.

### i.  COVID-19 Has Triggered the Communicable Disease Response and Interruption by Communicable Disease Coverages

80.     As described herein, Kemper owns Properties that have been subjected to the actual not suspected presence of a communicable disease, COVID-19.

FIRST AMENDED COMPLAINT –19

81.     Kemper's access to such Properties has been limited for more than 48 hours by both: (1) an order of an authorized governmental agency regulating the actual not suspected presence of COVID-19, including without limitation the Governor of the State of Washington; and/or (2) a decision of an Officer of the Kemper as a result of the actual not suspected presence of a communicable disease, including but not limited to Kemper's direction to close certain Properties.

82.     As a result, Kemper has incurred reasonable and necessary costs at its Properties to cleanup, remove, and/or dispose of SARS-CoV-2 particles.

83.     Moreover, Kemper's access to such Properties as a result of orders by an authorized governmental agency and/or an Officer of Kemper has led Kemper to sustain and continue sustaining on-going actual losses and extra expenses well in excess of the AIG Policy, XL Policy, Liberty Policy, and CNA Policy sublimits.

### *ii.  Kemper is Not Limited to the Communicable Disease Sublimits*

84.     AIG, XL, Liberty, and CNA have issued identical "all risks" policies that do not contain a broad-form communicable disease exclusion.

85.     The actual presence of SARS-CoV-2, the virus which causes the COVID-19 communicable disease, at the Properties caused direct physical loss and/or direct physical damage to the Properties, triggering multiple coverages in the above-referenced AIG Form Policies.

86.     Moreover, the presence of SARS-CoV-2, the virus which causes the COVID-19 communicable disease, at locations away from, but within 1-mile and/or 5-mile proximity to the Properties has triggered additional coverages within the above-referenced Policies.

FIRST AMENDED COMPLAINT –20

*iii. COVID-19 Triggered The AIG Form Policies Real and Personal Property Coverage*

87.     Kemper has interests in substantial real and personal property (the Properties) covered under Coverage 7(A) of the AIG Form Policies.

88.     COVID-19's presence at the Properties caused direct physical loss and/or direct physical damage to such Properties, requiring, among other things, closure of the Properties, payment for extra cleaning, and payment for testing at the Properties.

*iv. COVID-19 Triggered The AIG Form Policies Business Interruption Coverage*

89.     Starting in or about March 2020, COVID-19 and the government orders related to the same caused Kemper to incur a necessary interruption, both partial and total, in its business caused by loss or damage to its Properties during the term of the AIG Form Policies.

90.     This loss triggers the business interruption coverage, including the 365-day Extended Period of Liability.

91.     Kemper's business interruption remains on-going due to the continuing loss and/or damage to its Properties caused by the COVID-19 pandemic and government orders related to the same.

*v. COVID-19 Triggered The AIG Form Policies Extra Expense Coverage*

92.     COVID-19 and the government orders related to the same have caused loss or damage to the Properties and led Kemper to expenses in excess of the total cost chargeable to the operation of Kemper's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

93.     Such extra expenses include without limitation: incurring costs to promote social distancing in its Properties, clean-up and disinfecting costs, property testing costs, security costs, and capital expenditures on retrofitting heating, ventilation, and air conditioning systems and escalators.

FIRST AMENDED COMPLAINT –21

94.     These expenses trigger the AIG Form Policies extra expense coverage.

### vi.  COVID-19 Triggered The AIG Form Policies Lost Rental Value

95.      Kemper has hundreds of commercial tenants and residential tenants in its Properties.

96.     The presence of COVID-19 in its Properties and the government orders related to the same has caused loss and/or damage, leading to a reduction in "Rental Value" for the tenants impacted by such loss and/or damage.

97.     Such losses are covered under the AIG Form Policies.

### vii.  COVID-19 Triggered The AIG Form Policies Civil or Military Authority Coverage

98.      Starting in mid-March 2020, Washington Governor Jay Inslee issued a series of Proclamations recognizing the damage being caused by COVID-19; acknowledging that COVID-19 was spreading in and around King County, where the Properties are located, including within 5 miles of the Properties (amongst other locations, there were multiple confirmed COVID-19 cases reported at nearby hospitals and nursing homes); and acting to prevent further community spread by, among other things, prohibiting dine-in access to restaurants, bars, and coffee shops; banning gatherings and public events above a certain size, including in the operation of movie theaters; and ultimately ordering Washington residents to stay in their homes except for essential travel.

99.     These Proclamations and other orders from Washington state, county, and/or municipal officials partially or totally prohibited access to the Properties by Kemper, its tenants, their clients, and visitors.

100.    Such Proclamations and orders were issued as a direct result of COVID-19, which is a "peril insured against" under the AIG Form Policies and led Kemper to incur

FIRST AMENDED COMPLAINT –22

substantial losses at its Properties in an amount and for a duration to be proven at trial, thus triggering the Civil and Military Authority coverage.

*viii.  COVID-19 Triggered The AIG Form Policies Attraction Property Coverage*

101.    On information and belief, COVID-19 was present at and caused direct physical loss or direct physical damage to several major properties not owned by Kemper, but within 1 mile of the Kemper Properties, that attract business to Kemper's Properties.

102.    Such attraction properties include without limitation: Bellevue Downtown Park, KidsQuest Children's Museum, Meydenbauer Bay Park, and the Meydenbauer Convention Center.

103.    The presence of COVID-19, the direct physical loss or direct physical damage caused by COVID-19, and the government orders related to the same that impacted the "attraction properties" nearby led Kemper to incur substantial losses at its Properties in an amount and for a duration to be proven at trial, thus triggering the Attraction Property coverage.

*ix.  Kemper is Entitled to Contingent Time Element Losses Under the AIG Form Policies*

104.    Due to the direct physical loss and/or direct physical damage at the properties of Kemper's visitors, customers, clients, and tenants, and the statewide government shutdown and stay home orders that accompanied the rise of the pandemic (and orders in various locations throughout the United States and elsewhere), Kemper's Claim involves loss resulting from damage to property that prevented visitors, customers, clients, and tenants from being able to accept the goods or services provided by Kemper and/or its tenants.

105.    In other words, and without limitation, individuals or businesses who would have otherwise patronized or rented the Properties could not do so due to the damage caused

FIRST AMENDED COMPLAINT –23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

by the COVID-19 and the related government orders.  This triggered the Contingent Time Element coverage under the AIG Form Policies.

### x.  Kemper is Entitled to Claims Preparation Costs Under the AIG Form Policies

106.    Kemper began incurring costs by, among other things, hiring BDO to assist with preparing and certifying the details of its Claim.  Despite sending a questionnaire requiring the assistance of BDO to complete, the Insurers refuse to acknowledge that the Claim triggers the policies and the Insurers will not agree that any "Claim Preparation Costs" are covered or necessary.

107.    Kemper is entitled to its "Claim Preparation Costs" under such policies in an amount to be established through proof.

### H.  Kemper's Claim for COVID-19-Related Losses Triggered The "All Risks" Zurich Policy and Various Coverages Therein

108.    The actual presence of SARS-CoV-2, the virus which causes the COVID-19 communicable disease, at the Properties first arose during the period of the Zurich Policy, and caused physical loss and/or physical damage at the Properties.

### i.  At a Minimum, COVID-19 Has Triggered the Communicable Disease Response and Interruption by Communicable Disease Coverages

109.    The Zurich Policy defines a "communicable disease" in relevant part as "disease which is . . .transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges." Ex. B, General Provisions, ¶ 13.

110.    COVID-19 is a "communicable disease" as defined in the Zurich Policy.

111.    The Zurich Policy's Communicable Disease Response Coverage and Interruption by Communicable Disease coverages contain substantially similar terms the AIG Form Policies.  Kemper thus incorporates by reference the foregoing paragraphs as if fully set

FIRST AMENDED COMPLAINT –24

forth herein and states that the presence of COVID-19 at its Properties has causes damage and/or loss that triggers both of these coverages.

### ii. Kemper is Not Limited to the Communicable Disease Sublimits

112. For the reasons discussed with respect to the AIG Form Policies, the Zurich Policy does not limit Kemper's Claim solely to the communicable disease coverage sublimits.

### iii. COVID-19 Triggered Zurich Policy's Property Damage Coverage

113. The Zurich Policy covers damage to "Real Property" and "Personal Property."

114. Kemper has interests in substantial real and personal property (the Properties) covered under Coverage 7(A) of the AIG Form Policies.

115. COVID-19's presence at the Properties caused physical loss and/or physical damage to such Properties, requiring, among other things, closure of the Properties, payment for extra cleaning, and payment for testing at the Properties. Such loss and/or damage triggered the Zurich Policy.

### iv. COVID-19 Triggered Zurich Policy's Business Interruption and Extra Expense (Time Element) Coverages

116. The Zurich Policy's insures "TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured: 1) to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below; 2) used by the Insured, . . . 3) while located as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof . . . during the Periods of Liability described in this section." Ex. B, Time Element, ¶ I.A.

117. The Zurich Policy also covers "expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy. The

FIRST AMENDED COMPLAINT –25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

amount of such recoverable expenses will not exceed the amount by which the loss has been reduced." *Id.* at ¶ I.C.

118.     As set forth in the Zurich Policy, Kemper has sustained "actual loss," including without limitation a loss of "Gross Earnings," that directly resulted from physical loss or damage to its Property caused by COVID-19.

119.     Due to COVID-19 and the government orders related to the same, Kemper has also incurred reasonable and necessary extra costs during the "PERIOD OF LIABILITY" to, among other things, "temporarily continue as nearly normal as practicable the conduct of [it's] business."

120.     Kemper's "Period of Liability" opened on or about early March 2020 and remains on-going as the Properties cannot be "(i) repaired or replaced: and (ii) made ready for operations, under the same or equivalent physical and operating conditions that existed prior to the damage" until the SARS-CoV-2 virus and the risks posed by COVID-19 are eradicated.

121.     Kemper's losses thus trigger the "Gross Earnings"/business interruption and extra expense coverages in the Zurich Policy in an amount to be proven at trial.

#### *v.  COVID-19 Triggered Zurich Policy's Rental Insurance*

122.     Kemper has hundreds of commercial tenants and over one thousand residential tenants in the Properties.

123.     The presence of COVID-19 in its Properties and the government orders related to the same has caused loss and/or damage, leading to a reduction in the income Kemper reasonably expected from its rentals.

124.     Such losses are covered under the Zurich Policy in an amount to be proven at trial.

#### *vi.  COVID-19 Triggered The Zurich Policy Civil or Military Authority Coverage*

FIRST AMENDED COMPLAINT –26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

125.     Starting in mid-March 2020, Washington Governor Jay Inslee issued a series of Proclamations recognizing the damage being caused by COVID-19; acknowledging that COVID-19 was spreading in and around King County, where the Properties are located, including within 5 miles of the Properties (amongst other locations, there were multiple confirmed COVID-19 cases reported at nearby hospitals and nursing homes); and acting to prevent further community spread by, among other things, prohibiting dine-in access to restaurants, bars, and coffee shops; banning gatherings and public events above a certain size, including in the operation of movie theaters; and ultimately ordering Washington residents to stay in their homes except for essential travel.

126.     These Proclamations and other orders from Washington state, county, and/or municipal officials, which were issued as a direct result of the physical loss or damage at the Properties or within 5 miles of the same, restricted or prohibited partial or total access to the Properties by Kemper, its tenants, their clients, and visitors.

127.     As a result of such orders, Kemper incurred an "Actual Loss Sustained" and "EXTRA EXPENSE" as those terms are defined in the Zurich Policy.

128.     This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Kemper in an amount and for a duration to be proven at trial.

*vii.  COVID-19 Triggered The Zurich Policy Attraction Property Coverage*

129.     On information and belief, COVID-19 was present at several major properties not owned by Kemper, but within one statute mile of the Kemper Properties, that attract business to Kemper's Properties.

130.     Such attraction properties include without limitation: Bellevue Downtown Park, KidsQuest Children's Museum, Meydenbauer Bay Park, and the Meydenbauer Convention Center.

FIRST AMENDED COMPLAINT –27

131.    The presence of COVID-19 and the government orders related to the same that impacted the "attraction properties" nearby led Kemper to incur an "Actual Loss Sustained" and "EXTRA EXPENSE" at its Properties in an amount and for a duration to be proven at trial, thus triggering the Attraction Property coverage.

*viii.  COVID-19 Triggered The Zurich Policy's Contingent Time Element Coverage*

132.    The Zurich Policy  provides Contingent Time Element Extended coverage for "the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy." *Id.*, Time Element, Supply Chain Time Element Coverage Extensions, ¶ B.

133.    The Zurich Policy defines "**contingent time element locations"** in relevant part as "any location . . . of a direct customer, supplier, contract manufacturer or contract service provider to the Insured. . .  [or] any location of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a location [of a direct customer, supplier, contract manufacturer or contract service provider to the Insured]." *Id.*, General Provisions, ¶ 13.

134.    The national presence of COVID-19 during the relevant time period caused physical loss or damage to property of Kemper and Kemper's tenants' direct customers, suppliers, and contract service providers.

135.    As a result of this damage, Kemper was deprived of, among other things, guests, visitors, and customers for its properties, thus triggering covering under the Zurich Policy.

FIRST AMENDED COMPLAINT –28

### ix.  *Kemper is Entitled to Claims Preparation Costs Under the Zurich Policy*

136.   Kemper began incurring Claim Preparation Costs as that term is used in the Zurich Policy by, among other things, hiring BDO to assist with preparing and certifying the details of its Claim.  Zurich also has refused to acknowledge that the Claim triggers the Zurich Policy and has refused to pay any Claim Preparation Costs.

137.   Since Kemper's Claim is covered under the Zurich Policy, Zurich must accept liability and – in so doing – agree to pay its share of Kemper's "Claim Preparation Costs" in an amount to be established through proof.

### x.  *COVID-19 Triggered The Zurich Policy Protection and Preservation of Property Coverages*

138.   The Zurich Policy provides for "reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property."  Ex. B, Property Damage, Other Additional Coverages, ¶ (U).  The "Protection and Preservation of Property" coverage also provides for "Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property injured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property."  *Id.* at Time Element, Additional Time Element Coverages, ¶ G.

139.   COVID-19 has caused and continues to cause physical damage and/or physical loss to Kemper's Properties.

140.   The risks posed by COVID-19's spread have led Kemper to take actions to temporarily protect or preserve its property, thereby triggering the aforementioned coverages.

FIRST AMENDED COMPLAINT –29

### I.  No Exclusions Bar Coverage

141.    No exclusions in the AIG Form Policies or Zurich Policy applies to bar coverage for the actual presence of COVID-19 at the Properties, direct physical loss or direct physical damage caused by COVID-19, or within applicable distance limitations set forth in the Policies, or for any other losses, costs, or expenses covered by the various coverage forms set forth above.

### V.  CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT - ALL DEFENDANTS

142.    Kemper realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

143.    Kemper entered into legally binding written contracts of insurance with each of the Insurers when the Insurers issued the Policies to Kemper.

144.    In the Policies, the Insurers each agreed to cover "all risks," including the specifically enumerated risk of a "communicable disease."

145.    Kemper made a Claim to each of the Insurers under their respective Policies for losses arising out of the COVID-19 pandemic and related government orders for each of its Properties.

146.    Among other things, Kemper's Claim seeks: (1) business interruption/time element coverage; (2) "EXTRA EXPENSE" coverage; (3) coverage for lost "Rental Value," known in the Zurich Policy as "Rental Insurance"; (4) the full aggregate limits for "Communicable Disease Response" and "Interruption by Communicable Disease"; (5) Civil and Military Authority coverage; (6) Ingress/Egress coverage; (7) loss arising out of Attraction Property; (8) Contingent Time Element loss; and (9) "Claim Preparation Costs" under the Policies.

FIRST AMENDED COMPLAINT –30

147.    Kemper also seeks recovery for its losses under the "Protection and Preservation of Property" Coverages in the Zurich Policy.

148.    Kemper's Claim for each of these forms of coverage is covered under each of the Policies as outlined herein and not excluded.

149.    Kemper has complied in all material respects with the conditions and requirements of the Policies and/or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law, by government orders issued due to the pandemic, or by the Insurers' conduct.  Such conditions or requirements include without limitation paying the premium, providing timely notice of its Claim, or submitting a proof of loss.

150.    Moreover, in the alternative, to the extent Kemper did not meet any conditions any of the Policies, the applicable Insurer suffered no prejudice as McLarens has conducted a very limited paper investigation of the Claim, has refused for over seven months to acknowledge the Claim even triggers the Policies, and no Insurer accepted any coverage or paid any amount under the Policies.

151.    By failing and refusing to provide coverage to Kemper under the Policies, each of the Insurers has breached their respective policy obligations to Kemper.

152.    As a direct and proximate result of such breaches, Kemper has been deprived of the benefit of its bargained-for insurance coverage and has incurred damages in excess of $30 million in an amount to be proven at trial.

## <u>COUNT II: DECLARATORY JUDGMENT– All DEFENDANTS</u>

153.    Kemper realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

FIRST AMENDED COMPLAINT –31

154.    Kemper provided the Insurers with timely notice of its Claim under the Policies and sought coverage under the multiple forms of coverage described herein, including through multiple submissions of information and via correspondence with the Insurers' assigned claims adjustor, McLarens.

155.    Acting by and through McLarens, the Insurers have reserved their rights to deny coverage and failed to acknowledge coverage for any aspect of the Claim under any of the Policies.

156.    Thus, an actual and justiciable controversy exists as between Kemper and each of its Insurers concerning the availability of coverage under the Policies for Kemper's Claim. Such controversy is ripe for judicial review.

157.    Accordingly, pursuant to RCW 7.24.010, *et seq.*, Kemper seeks the Court's declaration of the parties' rights and duties under the Policies with respect to Kemper's Claim and respectfully request that the Court issue a declaration that: (1) each of the coverage provisions identified herein is triggered by Kemper's Claim; (2) Kemper's Claim is not subject to any exclusion or limitation in the Policies; and (3) the Insurers are thus liable to cover Kemper's Claim.

## COUNT III: BAD FAITH – ALL DEFENDANTS

158.    Kemper realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

159.    Kemper's Insurers are obligated under Washington law to fulfill all duties under the Policies in good faith and deal fairly with their insured.

160.    The Insurers have individually and collectively failed to act in good faith to achieve a prompt, fair, and equitable settlement of Kemper's claims for losses arising out of the COVID-19 pandemic despite its liability being reasonably clear.

FIRST AMENDED COMPLAINT –32

161.    Indeed, the Insurers' issued Policies to Kemper that **specifically cover** property damage and business interruption losses arising out of a "communicable disease" like COVID-19.

162.    Despite this, over a seven-month period the Insurers: (1) undertook no independent investigation of the claims beyond sending paper questionnaires; (2) sought irrelevant information from Kemper in their questionnaires that did not arise from the terms of the Policies; (3) failed for months to acknowledge that any portion of the Claim was covered under the Policies; and (4) failed to provide a coverage opinion beyond bare-bones reservation of rights letters sent by McLarens.

163.    Indeed, even the communications from McLarens were not on behalf of the Insurers.  As explained in the McLarens April 28, 2020 "reservation of rights" letter: "[t]he Insurers specifically reserve the right to themselves to make all coverage decisions with respect to your claim, and only the authorized communications concerning coverage are those conveyed in in a writing signed by the Insurers or expressly saying that the writing has been authorized by the Insurers. McLarens . . . do not have authority to interpret the Policy for the Insurers or otherwise decide coverage for it."  The Insurers have thus not communicated a coverage decision of any kind either directly from themselves or by an "authorized communication."

164.    Each of these actions violates numerous applicable regulations with respect to proper claims handling, including without limitation:  WAC 284-30-330(1), (2), (3), (4), (6), (7), and (13); WAC 284-30-360; and WAC 284-30-370.

165.    Through their course of conduct, the Insurers have each violated their duty of good faith and placed their interests ahead of those of their insured, in what could only be an

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

intentional effort to delay complying with their obligations under Policies issued to cover the exact type of losses incurred here.

166.    The Insurers' bad faith conduct has directly and proximately caused damage to Kemper, including without limitation by losing the time value of its Claim proceeds and by forcing Kemper to hire counsel to pursue the Insurers and now file this action due to the Insurers' dilatory, unreasonable conduct.

167.    The Insurers are thus legally obligated to pay all damages caused by their conduct performed in bad faith or in violation of applicable statutes and resolutions.

**COUNT IV: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

168.    Kemper realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

169.    By virtue of being issued in the Washington to a Washington-based insured and insuring property based in Washington, the Policies are each subject to the WCPA, RCW 19.86, *et seq.*, and insurance claims handling regulations.

170.    For the reasons described above, the Insurers have engaged in unfair and deceptive acts and practices in their investigation and resolution Kemper's Claim, in violation of numerous insurance regulations for proper claims handling, including but not limited to WAC 284-30-330(1), (2), (3), (4), (6), (7), and (13); WAC 284-30-360; and WAC 284-30-370.

171.    The Insurers' individual and collective breaches of the covenant of good faith and fair dealing and violations of the above-referenced claims handling regulations are unfair and deceptive business practices that violate the WCPA.

172.    Kemper has been damaged by the Insurers' individual and collective violations of the WCPA, including without limitation by losing the time value of its Claim proceeds and

FIRST AMENDED COMPLAINT –34

by having to hire counsel to pursue the Insurers and now file this action due to the Insurers' dilatory and unreasonable conduct.

173.    Kemper is thus is entitled to recovery of all of its damages, exemplary or multiplier damages, and attorneys' fees from each of the Insurers as a result of their respective violations of the WCPA.

## COUNT V: VIOLATION OF WASHINGTON INSURANCE FAIR CONDUCT ACT

174.    Kemper realleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

175.    Based on the above-described conduct, the Insurers have violated the IFCA, RCW 48.30.010, by, among other things:

A.    misrepresenting pertinent facts or insurance policy provisions, in violation of WAC 284-30-330(1) and WAC 284-30-350;

B.    failing to acknowledge and act reasonably promptly upon communications with respect to the claims, in violation of WAC 284-30-330(2) and WAC 284-30-360;

C.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, in violation of WAC 284-30-330(3) and WAC 284-30-360;

D.    failing to complete its investigation of each claim within thirty days after notification of claim while providing no justification for any potential belief that its investigation cannot reasonably be completed within that time, in violation of WAC 284-30-370;

E.    refusing to pay claims without conducting a reasonable investigation, in violation of WAC 284-30-330(4);

F.    failing to affirm or deny coverage within a reasonable period of time, in violation of WAC 284-30-330(5);

G.    not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, in violation of WAC 284-30-330(6);

FIRST AMENDED COMPLAINT –35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

H.   compelling a first party claimant to initiate litigation to recover amounts due under the Policy, in violation of WAC 284-30-330(7); and

I.   failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, in violation of WAC 284-30-330(13).

176.   Kemper has been damaged by the Insurers' violations of the IFCA, including without limitation by losing the time value of its insurance claim proceeds and by having to hire counsel to pursue the Insurers and now file this action due to the Insurers' unfair and deceptive investigation and wrongful, unreasonable denial of coverage.

177.   Kemper has complied with all obligations under the IFCA, including without limitation, providing the Insurers and the Washington Office of the Insurance Commissioner with 20-day written notice of the basis for this cause of action.

178.   The Insurers have failed to resolve the basis for this action within the statutorily required time period.

179.   The Insurers are liable to Kemper for actual damages, plus statutory exemplary or multiple and/or treble damages, caused by the Insurers' violations of IFCA, together with all attorneys' fees and other expenses.

## VI.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kemper Holdings, LLC prays for the following relief:

A.   Enter a judgment in favor of Kemper and against the Insurers, as requested herein, on each of the Counts in Kemper's Complaint;

B.   Award Kemper its actual and consequential damages sustained as a result of the Insurers' individual and collective breaches of the Policies in an amount to be established through proof;

FIRST AMENDED COMPLAINT –36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

C.      Enter a declaration of the rights of the parties under the Policies with respect to Kemper's Claim that includes, but may not be limited to, declaring that: (1) each of the coverage provisions identified herein is triggered by Kemper's Claim; (2) Kemper's Claim is not subject to any exclusion or limitation in the Policies; and (3) the Insurers are thus liable to cover Kemper's Claim.

D.      Enter a judgment awarding Kemper all damages suffered or incurred arising from the Insurers' individual and collective bad faith conduct.

E.      Enter a judgment awarding Kemper all damages suffered or incurred as a result of or arising from the Insurers' individual and collective violations of the WCPA, including actual damages, plus statutory exemplary or multiple and/or treble damages, together with all attorneys' fees and other expenses.

F.      Enter a judgment awarding Kemper all damages suffered or incurred as a result of or arising from the Insurers' violations of the IFCA, including actual damages, plus statutory treble damages, together with all attorneys' fees and other expenses.

G.      Enter a judgment awarding Kemper pre-judgment interest and post-judgment interest under applicable law; and

H.      Enter a judgment awarding Kemper its costs of court and any other and further relief to which it may justly be entitled.

## <u>JURY DEMAND</u>

Kemper hereby demands a trial by jury of all issues so triable that are raised herein or which may be raised in this action.

FIRST AMENDED COMPLAINT –37

DATED:  November 30,  2020

s/ Nicholas P. Gellert, WSBA No. 18041
NGellert@perkinscoie.com
James M. Davis, WSBA No. 32696
JamesDavis@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Bradley H. Dlatt (*pro hac vice to be filed*)
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Phone: 312.324.8400
BDlatt@perkinscoie.com

Attorneys for Plaintiff
Kemper Holdings, LLC

FIRST AMENDED COMPLAINT –38

# EXHIBIT A


**Ed.**

Parker,Smith & Feek, Inc.
2233 112TH Avenue N.E.
Bellevue
Wa 98004
USA

Ed Broking LLP
52 Leadenhall Street
London
EC3A 2EB

+44 (0) 20 7480 7322

**www.edbroking.com**

# Evidence of Cover

**Insured: Kemper Holdings, LLC**
**Risk No: B0702PN304770n**

**31 July 2019**

Please find attached evidence of the cover that has been placed with Insurers in accordance with your instructions. Standard registered market clauses may be referred to within the contract documentation but not attached to the contract. If you require a copy of any clause(s) referred to, these will be provided upon request.

Please review the attached documentation carefully to confirm that it accurately reflects the cover, limits and terms that you instructed us to place. If you have any questions about the contract described or if any of the terms and conditions are unclear or do not meet your requirements, or if any of the details are incorrect you must advise us immediately.

**Warranties / Subjectivities / Conditions Precedent**

Insurers may have imposed specific and possibly restrictive terms on your contract that need to be strictly complied with.

In particular, please note those terms contained under the Express Warranties, Conditions Precedent and Subjectivities headings on the attached document. These have been expressly added by underwriters in addition to or possibly instead of other warranties, conditions precedent and onerous terms included in the contract. Please be advised that warranties and conditions precedent may be included but may not be necessarily labelled as such. Please make sure that you understand all such terms fully and are able to comply with their requirements exactly. Failure to comply with warranties and/or conditions precedent and/or subjectivities may lead to cancellation of cover and/or denial of claims.

If you are in any doubt as to compliance with any such terms, please contact us immediately.

**Premium Payment Terms**

Your attention is drawn to the premium payment terms in the contract. It is important that these terms are complied with in order to avoid the risk of your cover being cancelled for failure to pay on time. Premium payments need to be made to us no later than the 18th September 2019 in order that we can pay Insurers by the required date. Where further instalments are due the premium payment dates can be determined from the debit notes that we send you.

If you have any queries about your obligations in this respect please advise us immediately.

Page 1 of 4

Risk No: B0702PN304770n

**Notification of Claims**

Claims must be advised to your usual contact(s) at Ed Broking, which cannot be held liable for its lack of action regarding a claim notified to an email address which does not specify an individual representative of Ed Broking.

Please note any special obligations for reporting and handling claims in the contract. It is important that these are complied with in order not to prejudice cover. It is essential that all actual, threatened or potential claims are immediately notified to us or the party identified in the contract so that Insurers can be advised promptly. Failure to comply may mean that a claim will not be paid.

**Duty of Disclosure**

This contract of insurance is subject to the law of the State of Washington, United States of America. Please ensure that all applicable legal and regulatory requirements in relation to this contract, including requirements for disclosure of information to Insurers in relation to it, are drawn to your client's attention.

**Other Information**

Please notify us promptly if you require any amendments to the cover under this contract. Amendments will be provided to you as an endorsement to this document, subject to agreement by your Insurers where required.

**Security**

Please also check the attached list of Insurers that have underwritten the contract and contact us immediately if you have any queries.

Risk No: B0702PN304770n

100% of 40%     American International Group UK Ltd T/A LEX-London
of 100%

**100% of 40%**   of 100% Order

31/7/2019.

**Ed Broking LLP**
**Authorised Signatory**

Risk No: B0702PN304770n

# FATCA Declaration

Risk No: B0702PN304770n                                              31 July 2019

To the best of Ed Broking's knowledge and belief, the following Insurers are FATCA compliant and the following links have been provided by Insurers:

American International Group UK Ltd T/A LEX-London

Form available upon request. Ed filesite ref: 23,654,007

To the best of Ed Broking's knowledge and belief, the following Insurers are NOT FATCA compliant:



**Ed Broking LLP**
52 Leadenhall Street
London, EC3A 2EB
+44 (0)20 7480 7322
www.edbroking.com

DEBIT NOTE

PARKER,SMITH & FEEK, INC.
2233 112TH AVENUE N.E.                OUR RISK NO : PN304770n
BELLEVUE                              TRANS NO    : OP7054604
WA 98004                              DATE        : 31ST JULY 2019
USA

ASSURED        : KEMPER HOLDINGS, LLC

TYPE           : ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE

PERIOD         : 31ST JULY 2019 TO 31ST JULY 2020


DETAILS        : ORIGINAL PREMIUM

                                      ----------------
AMOUNT                          USD 1,057,540.00DB
                                      ================

DUE TO US BY 14TH SEPTEMBER 2019

IMPORTANT: PLEASE ENSURE THE TRANSACTION REFERENCE IS QUOTED
WHEN REMITTING FUNDS.

PREMIUM PAYMENTS NEED TO BE MADE TO ED BROKING LLP NO LATER THAN THE
"DUE TO US" DATE ABOVE IN ORDER THAT WE CAN PAY UNDERWRITERS BY THE
REQUIRED DATE OF 28TH SEPTEMBER 2019. IT IS IMPORTANT THAT THIS DATE
IS MET AS YOUR (RE)INSURANCE CONTRACT WILL BE TERMINATED FOR FAILURE
TO PAY ON TIME.

Authorised and regulated by the Financial Conduct Authority
Registered Office: 52 Leadenhall Street, London EC3A 2EB   Reg No. OC359735 England

Broker at LLOYD'S



**Ed Broking LLP**
52 Leadenhall Street
London, EC3A 2EB
+44 (0)20 7480 7322
**www.edbroking.com**

CONTINUATION

PARKER,SMITH & FEEK, INC.
2233 112TH AVENUE N.E.          OUR RISK NO : PN304770n
BELLEVUE                        TRANS NO    : OP7054604
WA 98004                        DATE        : 31ST JULY 2019
USA


US Dollars
Account Name:    Ed Broking LLP
Bank Name:       The Royal Bank of Scotland PLC
Bank Address:    London Corporate Service Centre
                 Level 7
                 Aldgate Union
                 10 Whitechapel High Street
                 London    E1 8DX
Bank Sort Code:  16-01-01
Bank Swift BIC:  RBOS GB 2L
Account No/Code: NEWMAR USD 1
IBAN Number:     GB43 RBOS 1663 0000 1612 37

Authorised and regulated by the Financial Conduct Authority
Registered Office: 52 Leadenhall Street, London EC3A 2EB   Reg No. OC339735 England

Broker at  LLOYD'S



# MARKET REFORM CONTRACT
## PROPERTY & CASUALTY DIVISION

### INSURED: KEMPER HOLDINGS, LLC

### POLICY NO.: PN304770N

ED BROKING LLP
52 LEADENHALL STREET
LONDON, EC3A 2EB

DocumentID: ED3BADKTNQV23412187 9

**UMR:** | **B0702  PN304770n**

## RISK DETAILS – SECTION I

**UNIQUE MARKET
REFERENCE:**          B0702PN304770n

**TYPE:**                   All Risks of direct physical loss or damage, as defined in the Policy
                          Form

**NAMED INSURED:**          **Kemper Holdings, LLC** as defined in the policy

**ADDRESS OF THE
INSURED:**                  575 Bellevue Square,
                          Bellevue,
                          Washington,
                          98804

**PERIOD:**                 From: 31ˢᵗ July, 2019 to: 31ˢᵗ July, 2020
                          Both dates at 12.01 a.m. Local Standard Time at the location of
                          the property involved.

**INTEREST:**               Real and Personal Property and Time Element Coverages as
                          defined in the Policy

**LIMIT OF LIABILITY:**     USD 1,000,000,000  each Loss Occurrence including
                          USD 200,000,000 each Loss Occurrence and in the annual
                          aggregate in respect of the peril of Flood
                          USD 200,000,000 each Loss Occurrence and in the annual
                          aggregate in respect of the peril of Earthquake
                          Which applies in excess of the Deductibles, as per the attached
                          Schedule.

**DEDUCTIBLES:**            As per the attached Schedule in SECTION IV – SCHEDULE OF
                          PROGRAM DEDUCTIBLES

**SUBLIMITS:**              As per the attached Schedule in SECTION III – SCHEDULE OF
                          PROGRAM SUBLIMITS

**TERRITORY:**              Worldwide.

ED BROKING Broker

ED BROKING Acct Exec

Slip Leader

| UMR: | B0702 PN304770n |

**CONDITIONS:**   Policy Wording as attached, except as defined herein.

NMA 464 War and Civil War Exclusion Clause

NMA 2962 Biological or Chemical Materials Exclusion

NMA 1191 Radioactive Contamination Exclusion Clause – Physical Damage – Direct – USD1,000,000 sublimit to apply

LMA 5062 Fraudulent Claims Clause

LMA 5219 U.S. Terrorism Risk Insurance Act of 2002 as amended Not Purchased Clause

LMA 5130 Application of Sublimits Endorsement

LMA 3100 Sanction Limitation & Exclusion Clause

NMA 2914 Electronic Data Endorsement (Amended)

NMA 2802 Electronic Date Recognition Exclusion (EDRE)

LMA 5018 Mold Exclusion

Pollution, Contamination, Debris Removal Exclusion Endorsement.

Agree, if required, to allow agent to issue Certificates and / or Verifications and / or Evidence of Insurance without advice.

**Nominated Loss Adjuster:** Jeff Hellman, McLarens Seattle, 19324 40th Avenue West, Suite C, Lynnwood, WA, 98036

Earthquake and Tier 1 wind county list to apply in respect of any additions to the schedule, as attached.

**EXPRESS WARRANTIES:**   None – other than as may exist in this slip or in the standard policy wording and as contained under the Premium Payment Terms.

**CONDITIONS PRECEDENT:**   None – other than as may exist in this slip or in the standard policy wording.

**SUBJECTIVITIES:**   None



| UMR: | B0702  PN304770n |
|------|------------------|

**CHOICE OF LAW &**
**JURISDICTION:**      This Policy is governed by the laws of the state of Washington
Jurisdiction as per other service of Suit Clause NMA 1998 naming
Mendes and Mount (Attorneys), 750th Seventh Avenue, New York,
NY, 10019 – 6870

**PREMIUM:**           USD 2,643,850      (100%) annual

~~Additional Premium in respect of TRIA, if required:~~
~~USD. _____ (100%) annual~~

**PREMIUM PAYMENT**
**TERMS:**             Premium Payment Condition (Time on Risk) 4/86.
It is a condition of this contract of Insurance that the premium
due at inception must be paid to and received by Insurers on or
before midnight on **28th September 2019.**
If this condition is not complied with, then this contract of
Insurance shall terminate on the above date until the Insured
hereby agreeing to pay premium calculated as not less than pro
rata temporis.

**TAXES PAYABLE BY**
**INSURED AND**
**ADMINISTERED BY**
**INSURERS:**          None

**RECORDING**
**TRANSMITTING &**
**STORING**
**INFORMATION:**       ED BROKING LLP may maintain all files in relation to this insurance
electronically.

**INSURER CONTRACT**
**DOCUMENTATION:**     This document details the Contract terms entered into by the
Insurer(s) and constitutes the Contract Document. Insured(s) are
advised that if any terms, clauses or conditions are unclear they
should contact Ed Broking, LLP immediately.

Unless otherwise specified below, no further insurer contract
documentation will be issued.

Any further documentation changing this contract, agreed in
accordance with the contract change provisions set out in this
contract, shall form the evidence of such a change.

Document ID: EDBROKINGA22842297.9

| ED BROKING Broker | ED BROKING Acct Exec | Slip Leader |
|-------------------|----------------------|-------------|

| UMR: | B0702  PN304770n |
|---|---|

**NOTICES:** This contract is subject to US State Surplus Lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to insurers. In the event that the surplus lines notice is not affixed to the contract the insured should contact the surplus lines broker.

DocumentID: 30063C6CD0052642757.9

| | |
|---|---|
| ꝗ Ꝗꝗ | ꝗꝗ |
| ED BROKING Broker | ED BROKING Acct Exec |



Slip Leader

Page 4 of 24

| UMR: | B0702  PN304770n |
|------|------------------|

### INFORMATION – SECTION II

The following Information was provided to Insurer(s) to support the assessment of the risk at the time of underwriting:

**Total Sum Insured:** USD 2,292,726,725

Breakdown of values as per Schedule attached hereto which noted and agreed by Insurer(s) as per email received from Parker, Smith & Feek on 24th July 2019 @ 21:10

**Loss Record:** as per Loss Runs attached hereto which noted and agreed by Insurer(s) as per email received from Parker, Smith & Feek on 11th May 2019 @ 23:18

| ED BROKING Broker | ED BROKING Acct Exec |  |
|---|---|---|

| UMR: | B0702  PN304770п |
|------|------------------|

### SCHEDULE OF PROGRAM SUBLIMITS– SECTION III

| | |
|---|---|
| Ammonia contamination | USD 500,000 |
| Attraction property | 30 consecutive days, maximum USD25,000,000, 1 mile limitation |
| Automatic coverage | 120 day period but not to exceed a USD50,000,000 limit, per **location** |
| Civil or military authority | 30 consecutive days, maximum USD25,000,000, 5 mile limitation |
| Claims preparation costs | ~~USD100,000,000~~ USD 1,000,000 |
| Communicable disease response | USD1,000,000 in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations, coverages or **occurrences** involved. |
| Computer systems non physical damage and data, programs or Software combined | USD10,000,000 (PER NMA 2914) |
| Contingent time element extended | USD25,000,000 (No further than Tier 2) |
| **Earth movement** | USD 200,000,000 in the **aggregate during any policy year** |
| Errors and omissions | USD100,000,000 |
| Expediting costs and extra Expense combined | USD100,000,000 |
| Extended period of liability | 365 day period |
| Fine arts | USD100,000,000 but not to exceed a USD10,000 limit per item for **irreplaceable fine arts** not on a schedule on file with the Company |

Downloaded:

| | |
|---|---|
| ED BROKING Broker | ED BROKING Acct Exec |



Slip Leader

UMR:   B0702  PN304770n

| | |
|---|---|
| Fines or penalties for breach of contract or for late or noncompletion of orders combined | USD100,000 |
| Flood | USD 200,000,000 |
| Ingress/egress | 30 day period, maximum USD25,000,000, 5 mile limitation |
| Interruption by communicable disease | 12 month period but not to exceed a USD1,000,000 limit in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for COMMUNICABLE DISEASE RESPONSE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations, coverages or **occurrences** involved. |
| Land and water contaminant cleanup, removal and disposal | USD250,000 in the **aggregate during any policy year** |
| Logistics extra cost | 180 day period but not to exceed 200% of the **normal cost** |
| Miscellaneous property | As respects property at a **location**:<br><br>a)    USD50,000,000 per **location**<br><br>As respects property not at a **location**: a)  USD50,000,000 |
| Off premises data services property damage and off premises data services time element Combined | USD5,000,000 |
| Ordinary payroll | 60 day period |
| Service interruption | USD10,000,000, 24 hour waiting period |

Document ID: a619fa424b412297.9

ED BROKING Broker    ED BROKING Acct Exec


Slip Leader



| UMR: | B0702 PN304770n |
| --- | --- |

| Terrorism | USD5,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year:** |
| --- | --- |
|  | a) USD5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY and TEMPORARY REMOVAL OF PROPERTY combined |
|  | b) USD5,000,000 for **flood** when caused by or resulting from **terrorism** |
|  | Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this Policy. |
|  | For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism. |
|  | The limits for TERRORISM shall not include the **actual cash value** portion of fire damage caused by **terrorism**. |

Document ID: ECBROKING928478279

| ED BROKING Broker | ED BROKING Acct Exec |
| --- | --- |



SITE Leader

**UMR:   B0702   PN304770n**

| Valuable papers and records | USD100,000,000 but not to exceed a USD100,000 limit per item for **Irreplaceable valuable papers and records** not on a schedule on file with the Company |
|---|---|
| Landscape gardening, car parks, parking lots, pavement, roadways, railways, transformer enclosures or walkways. ~~Fill beneath car parks, parking lots, pavements, roadways, railways, transformer enclosures, walkways, or buildings or structures~~ | USD 1,000,000 |
| Water that is contained within any enclosed tank, piping system or any other processing equipment | USD 1,000,000 |
| Accidental interruption of services and consequential loss | USD 5,000,000 |
| Debris removal | USD 100,000,000 |
| Deferred payments | USD 25,000,000 |
| Accounts receivable | USD 50,000,000 |
| Soft costs | USD 50,000,000 |
| Transit | USD 25,000,000 |
| Ordinance or law<br><br>Combined Coverage A, B & C<br><br>Undamaged Portion, Demolition & Increased Cost of Construction | USD 200,000,000 |
| Coverage D<br>Increased Period of Restoration | USD  25,000,000 |
| Fire brigade charges | USD 50,000,000 |
| Impounded water | 30 day period |
| Radioactive Contamination | USD 1,000,000  (PoR NMA 1191) |

| J W P | | |
|---|---|---|
| ED BROKING Broker | ED BROKING Acct Exec | |





| UMR: | B0702 PN304770n |
|------|-----------------|

### SCHEDULE OF PROGRAM DEDUCTIBLES– SECTION IV

Subject to the deductible general provisions stated below, in each case of loss covered by this Policy the following deductibles apply:

| Earthquake | Property Damage: |
|------------|------------------|
| | **2% per Unit of Insurance** as defined below |
| | Time element: |
| | **2% per Unit of Insurance** as defined below |
| | The above are subject to a minimum deductible of USD 100,000 for Property Damage and Time Element combined, per **location.** |
| **Flood** | USD 100,000 combined all coverages, per **location** |
| **100 Year Flood** | USD 250,000 per **location** |
| **Logistics Extra Cost** | USD100,000 per **occurrence** |
| **All other Loss** | USD 100,000 combined all coverages, per **occurrence** |
| **Service Interruption** | 24 hour Waiting Period |

The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of insurance:

(1) Each building or structure, not including the value of its foundations, which has sustained loss or damage;
(2) Personal property within each building or structure if that personal property sustains loss or damage;
(3) Personal property in the open that sustains loss or damage;
(4) The Time Element values impacted by insured loss or damage to said property that sustains loss or damage.

**Unit(s) of Insurance:**

Property Damage Values (1), (2) and (3) above to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the Insurer or, if not so specified (or property under construction), the values will be determined at the time of loss.



| UMR: | B0702 PN304770n |
|---|---|

Time Element Values to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the Insurer or, if not so specified, based upon the twelve (12) months following the date of loss, with consideration for the most probable experience of the business for the Location, had no loss occurred.

Time Element as used above refers to the following coverages:

a. Gross Earnings
b. Loss of Profits
c. Rental Value and Rental Income



| UMR: | B0702  PN304770n |
|------|------------------|

## WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

NMA0464

01/01/1938

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

06/02/03
NMA2962

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE - DIRECT (U.S.A.)

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA1191

| <br>J. We<br>ED BROKING Broker | <br>ED BROKING Acct Exec | <br>Slip Leader |
|---|---|---|



| UMR: | B0702 PN304770n |
| --- | --- |

### FRAUDULENT CLAIM CLAUSE

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this contract shall become void and all claim hereunder shall be forfeited.

LMA5062
04/06/2006
Form approved by Lloyd's Market Association

### U.S TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED

### Not Purchased Clause

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the insured has declined or not confirmed to purchase this coverage.

This insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this insurance.

LMA5219
12 January 2015



| ED BROKING Broker | ED BROKING Acct Exec | Slip Leader |
| --- | --- | --- |

**UMR:** | **B0702  PN304770n**

## APPLICATION OF SUBLIMITS ENDORSEMENT

1. **Application To Insured Interests.** Each sublimit stated in this policy applies as part of, and not in addition to, the overall policy limit for an occurrence insured hereunder. Each sublimit is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to that aspect of the occurrence, including but not limited to type of property, construction, geographic area, zone, location, or peril.

2. **Application Within Perils.** If insured under this policy, any sublimit for earthquake, earth movement, flood, windstorm, named storm, or named windstorm is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to such an occurrence. If flood occurs in conjunction with a windstorm, named storm, named windstorm, earthquake or earth movement, the flood sublimit applies within and erodes the sublimit for that windstorm, named storm, named windstorm, earthquake or earth movement.

   This endorsement takes precedence over and, if in conflict with any other wording in the contract bearing on the application of sublimits, replaces that wording.

05/03/09
LMA5130

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (Re)insurer shall be deemed to provide cover and no (Re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (Re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

15/09/10
LMA3100

Document ID: EDBROKING42294228719

| ED BROKING Broker | ED BROKING Acct Exec | Slip Leader |

UMR: | B0702  PN304770n

### ELECTRONIC DATA ENDORSEMENT A

**1. Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

(a) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

(b) However, in the event that a peril listed below results from any of the matters described in paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils

Fire
Explosion

**2. Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed

| ED BROKING Broker | ED BROKING Acct Exec | Slip Leader |


**UMR:** | **B0702  PN304770n**

USD10,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

25/01/01
NMA2914

## ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a)   the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b)   any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**EDRE**

NMA2802

17/12/1997

Document ID: [illegible]

ED BROKING Broker | ED BROKING Acct Exec | Slip Leader

| UMR: | B0702  PN304770n |
|---|---|

## MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This Exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters.

14/09/2005
LMA5018
Form approved by Lloyd's Market Association

ED BROKING Broker

ED BROKING Acct Exec

Slip Leader



**UMR:** **B0702 PN304770n**

## New Madrid Seismic Zone:
### Arkansas, United States of America counties of:
Arkansas, Clay, Craighead, Crittenden, Cross, Fulton, Greene, Independence, Izard, Jackson, Lawrence, Lee, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Randolph, Sharp, St. Francis, White, Woodruff

### Illinois, United States of America, counties of:
Alexander, Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Franklin, Gallatin Hamilton, Hardin, Jackson, Jasper, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Richland, Saline, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson

### Indiana, United States of America, counties of:
Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick

### Kentucky, United States of America, Counties of:
Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Henderson Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Todd, Trigg, Union, Webster

### Mississippi, United States of America, Counties of:
Alcorn, Benton, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Tate, Tippah, Tunica

### Missouri, United States of America, Counties of:
Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Francois, St. Louis, City of St. Louis, Ste. Genevieve, Stoddard, Washington, Wayne

### Tennessee, United States of America, counties of:
Benton, Carroll, Chester, Crockett, Decatur, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, Weakley

## Pacific Northwest Seismic Zone:
### Oregon, United States of America, counties of:
Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

### Washington, United States of America, counties of:
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom

### British Columbia (includes Vancouver Island) Canada:
South of 50° N latitude and west of 120° W longitude

UMR: B0702 PN304770n

| | |
|---|---|
| Alabama | Counties: Baldwin, Mobile |
| Georgia | Counties: Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| Hawaii | Entire State |
| Louisiana | Parishes: Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion |
| Mississippi | Counties: Hancock, Harrison, Jackson |
| North Carolina | Counties: Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| Puerto Rico | Entire Territory |
| South Carolina | Counties: Beaufort, Berkley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry, Jasper |
| Texas | Counties: Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kennedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy |
| U.S. Virgin Islands | Entire Territory |

ED BROKING Broker

ED BROKING Acct Exec

Slip Leader

UMR:  B0702  PN304770n

| | |
|---|---|
| Connecticut | Counties: Fairfield, Middlesex, New Haven, New London |
| Delaware | Counties: Sussex |
| Maine | Counties: Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York |
| Maryland | Counties: Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Counties: Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Counties: Rockingham, Strafford |
| New Jersey | Counties: Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Counties: Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester |
| Rhode Island | Counties: Bristol, Kent, Newport, Providence, Washington |
| Virginia | Counties: Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Surry, York, Westmoreland Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Prince George, Suffolk, Sussex, Virginia Beach, Williamsburg |

| | |
|---|---|
| Florida | Entire State |

ED BROKING Broker     ED BROKING Acct Exec     Slip Leader



| UMR: | B0702  PN304770n |
|------|------------------|

### SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.   Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Mendes and Mount (Attorneys), 750th Seventh Avenue, New York, NY, 10019 – 6870 and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998

24/04/1986



| UMR: | B0702  PN304770n |
|---|---|

## SECURITY DETAILS- SECTION V

**INSURER'S
LIABILITY:**

**(RE)INSURER'S LIABILITY CLAUSE**

**(Re)Insurer's liability several not joint**
The liability of a (Re)Insurer under this contract is several and not joint with other (Re)Insurers party to this contract. A (Re)Insurer is liable only for the proportion of liability it has underwritten. A (Re)Insurer is not jointly liable for the proportion of liability underwritten by any other (Re)insurer. Nor is a (Re)Insurer otherwise responsible for any liability of any other (Re)Insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (Re)Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (Re)Insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (Re)Insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**
Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (Re)Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".
Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (Re)Insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

| | |  |
|---|---|---|
| J W | VX | |
| ED BROKING Broker | ED BROKING Acct Exec | Slip Leader |

**UMR:** | **B0702  PN304770n**

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333

**ORDER HEREON:** 40 % of 100%

**WRITTEN LINES:** (Re)Insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

**BASIS OF WRITTEN LINES:** Percentage of whole.

**BASIS OF SIGNED LINES:** Percentage of whole.

**SIGNING PROVISIONS:** In the event that the written lines hereon exceed 100% of the order, any lines written 'to stand' will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (Re)Insurers.
However:

a) in the event that the placement of the order is not completed by the commencement date of the period of (Re)Insurance then all lines written by that date will be signed in full;

b) the disproportionate signing of (Re)Insurers lines can be effected without further specific agreement of (Re)Insurers, providing that lines written 'to stand' may not be varied without the documented agreement of those Insurers;

c) the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the Insured and all Insurers whose lines are to be varied. The variation to the contracts will take effect only when all such Insurers have agreed, with the resulting variation in signed lines commencing from the date set out in the agreement.

UMR:   B0702  PN304770n

| Signed Line % | Written Line |
|---|---|

*Lex-London a Division of*
American International Group UK Limited

REF 8707276-2019

LINE TO STAND
ALL CONTRACT AMENDMENTS
TO BE AGREED BY LEX-LONDON
PREMIUM PAYMENT ~~40 DAYS~~
PER SLIP

40%

30/7/19

ED BROKING Broker

ED BROKING Acct Exec

Slip Leader

Page 24 of 24

**Kemper Holdings, LLC** and any financial and/or managerial controlled subsidiary, division, trust, associated or allied company or foundation of the named insured, (or subsidiary thereof) and any interest in any partnership or joint venture in which Kemper Holdings, LLC or its subsidiaries (or subsidiaries thereof has management control or ownership, or for which they have assumed the responsibility for insuring, as now or hereafter constituted or acquired, and any antecedent companies for which Kemper Holdings, LLC (or subsidiaries therefor) may be or become liable; herein referred to as "the insured".

## 1.   TERM OF INSURANCE

In consideration of the US$ 2,643,850 (100%) annual premium, this policy attaches and covers for a period of 12 months, from 07/31/2019 to 07/31/2020, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy (ies) replaced or renewed by this policy.

## 2.   PARTICIPATION

This policy covers for the percent interest in this insurance shown elsewhere in this Policy, and the Underwriters shall not be liable for more than its proportion of the limits of liability set forth herein.

## 3.   LIMITS OF LIABILITY

This Company shall not be liable for more than its proportion of US$1,000,000,000 for any one occurrence, except:

A. With respect to the perils of Flood and Earthquake as defined elsewhere in the policy, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of US$200,000,000 for earthquake and US$200,000,000 for flood, which shall apply separately to each peril as referred to in Section 13. Even if the peril of flood or earthquake is the predominant cause of loss or damage, any ensuing loss or damage caused by fire, explosion, water damage or leakage from fire protective equipment not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause, except:

| | |
|---|---|
| Ammonia Contamination | US$ 500,000 |
| Attraction Property | 30 consecutive days, maximum US$ 25,000,000, 1 mile limitation |
| Automatic Coverage | 120 day period but not to exceed a US$50,000,000 limit per **location** |
| Civil or Military Authority | 30 consecutive days, maximum US$25,000,000 5 mile limitation |



| | |
|---|---|
| Claims Preparation Costs | US$1,000,000 |
| Communicable Disease Response | US$ 1,000,000 in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed US$1,000,000 in the **aggregate during any policy period** year regardless of the number of location, coverages or **occurrences** involved. |
| Computer Systems Non Physical Damage and Data, Programs or Software Combined | US$ 10,000,000 (PER NMA2914) |
| Contingent Time Element Extended | US$ 25,000,000 (No Further than Tier 2) |
| **Earth Movement** | US$ 200,000,000 in the **aggregate during any policy period** |
| Errors and Omissions | US$ 100,000,000 |
| Expediting Costs and Extra Expense Combined | US$ 100,000,000 |
| Extended Period of Liability | 365 day period |
| Fine Arts | US$ 100,000,000 but not to exceed a USD10,000 limit per item for **Irreplaceable fine arts** not on a schedule on file with the company |
| Fines or Penalties for breach of contract or for late or non completion of orders combined | US$ 100,000 |
| Flood | US$ 200,000,000 in the **aggregate during any policy period** |
| Ingress/ Egress | 30 day period, maximum US$25,000,000 5 mile limitation |
| Interruption by Communicable Disease | 12 month period but not to exceed a US$ 1,000,000 limit in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for **COMMUNICABLE DISEASE RESPONSE** and this coverage combined shall not exceed US$ 1,000,000 in the **aggregate during any policy period year** regardless of the number of locations, coverages or **occurrences** involved. |



| | |
|---|---|
| Land and Water Contamination Cleanup, Removal and Disposal | US$250,000 in the **aggregate during any policy period year** |
| Logistics Extra Cost | 180 day period but not to exceed 200% of the **normal cost** |
| Miscellaneous Property | As respects property at a **location:** **a)** US$ 50,000,000 **per location** As respects property not at a **Location a)** US$ 50,000,000 |
| Off Premises Data Services Property Damage and Off Premises Data Services Time Element Combined | US$ 5,000,000 |
| Ordinary Payroll | 60 day period |
| Service Interruption | US$ 10,000,000, 24 hour waiting period |
| Terrorism | US$ 5,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year:** a) US$5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY AND TEMPORARY REMOVAL OF PROPERTY combined b) US$ 5,000,000 for **Flood** when caused by or resulting from **terrorism** Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this Policy. For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism. The limits for TERRORISM shall not include **actual cash value** portion of fire |



| | |
|---|---|
| | damage caused by **terrorism.** |
| Valuable Papers and Records | US$ 100,000,000 but not to exceed a US$100,000 limit per item for **Irreplaceable valuable paper and records** not on a schedule on file with the company |
| Landscape Gardening, Car Parks, Parking Lots, Pavement, Roadways, Railways, Transformer Enclosure or Walkways. | US$1,000,000 |
| Water that is Contained Within Any Enclosed Tank, Piping System or Any other Processing Equipment | US$1,000,000 |
| Accidental Interruption of Services and Consequential Loss | US$ 5,000,000 |
| Debris Removal | US$ 100,000,000 |
| Deferred Payments | US$ 25,000,000 |
| Accounts Receivable | US$ 50,000,000 |
| Soft Costs | US$ 50,000,000 |
| Transit | US$ 25,000,000 |
| Ordinance of Law Combined Coverage A,B & C<br><br>Undamaged Portion, Demolition & Increased Cost of Construction<br><br>Coverage D<br><br>Increased Period of Restoration | US$ 200,000,000<br><br><br><br>US$  25,000,000 |
| Fire Brigade Charges | US$ 50,000,000 |
| Impounded Water | 30 day period |
| Radioactive Contamination | US$1,000,000 |



### 4.    DEDUCTIBLES

| Earthquake | Property Damage |
|---|---|
| | 2% per unit of Insurance as defined below Time element : 2% per Unit of Insurance as defined below The above are subject to a minimum deductible of US$ 100,000 for Property Damage and Time Element Combined, per Location |
| Flood | US$ 100,000 Combined all coverages, per Location |
| 100 Year Flood | US$ 250,000 per Location |
| Logistics Extra Cost | US$ 100,000 per Occurrence |
| All Other Loss | US$ 100,000 Combined all coverages, per Occurrence |
| Service Interruption | 24 hour Waiting Period |

Deductible General Provisions:

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single occurrence greater than the applicable deductible: specified above and only for its share of that greater amount.

A. For SERVICE INTERRUPTION loss, when a deductible is not specifically stated as applying to SERVICE INTERRUPTION the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured location that sustains the interruption of the specified services.

B. For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the contingent time element location was an insured location under this Policy.

C. The stated earthquake deductible will be applied to earthquake loss. The stated flood deductible will be applied to flood loss. The stated wind deductible will be applied to wind loss. The provisions of Item E below will also be applied to each.

D. When this Policy insures more than one Location, the deductible will apply against the total loss covered by this Policy in an occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage happened regardless of the number of locations involved in the occurrence.



E. Unless stated otherwise, if two or more deductibles apply to an occurrence, the total to be deducted will not exceed the larges deductible applicable. For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible. If two or more deductibles apply on a per location basis in an occurrence, the largest deductible applying to each location will be applied separately to each such location.

F. The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of Insurance:

(1) Each building or structure, not including the value of its foundations, which has sustained loss or damage;
(2) Personal property within each building or structure if that personal property sustains loss or damage;
(3) Personal property in the open that sustains loss or damage;
(4) The Time Element values impacted by insured loss or damage to said property that sustains loss or damage.

Unit(s) of Insurance:

Property Damage Values (1), (2) and (3) above to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified (or property under construction), the values will be determined at the time of loss.

Time Element Values to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified, based upon the twelve (12) months following the date of loss, with consideration for the most probable experience of the business for the Location, had no loss occurred.

Time Element as used above refers to the following coverages:
a. Gross Earnings
b. Loss of Profits
c. Rental Value and Rental Income



G. For insured  physical loss or damage:

    1) to insured tire protection equipment; or

    2) from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items I or 2 above only will be reduced by fifty percent (50%), per occurrence. However, this provision will not apply to loss or damage resulting from fire or earth movement regardless of whether claim is made for such fire or earth movement.

H. Any property damage or time element extensions provided herein are subject to the deductible provisions that would have applied had a physical loss or damage occurred

**5.**    **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to Insured, or order whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

**6.**    **TERRITORY**

Coverage as provided under this Policy applies Worldwide.



7.   **COVERAGE**

Except as hereinafter excluded, this policy covers:

A. **Real and Personal Property**

(1) The interest of the Insured in all real and personal property including but not limited to property owned, used, leased or intended for use by the Insured, or hereafter constructed, erected, installed, or acquired, including while in course of construction, erection, installation, and assembly. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2) The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

(3) Real and personal property which the Insured is responsible for or has agreed to insure.

(4) At the sole option of the Insured, this policy covers in any given instance personal property, except automobiles, of the Insured's officials and employees while on the premises of the Insured.

(5) Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

B. **Business Interruption**

(1) Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause **7.A.**

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business including 90 days ordinary payroll and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3) In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A., which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained



of the continuing fixed charges and expenses, including 90 days ordinary payroll, directly attributable to such research and development activities.

(4) However, this Company shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock or for the time required reproducing said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5) Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:
   (a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or
   (b) by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6) Experience of the Business: In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7, A. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

## C. Extra Expense

(1) Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2) "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

## D. Rental Value

(1) Rental Value loss sustained by the Insured resulting directly from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2) "Rental Value" is defined as the sum of:

   (a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and



(b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3) Experience of the Business:

(a) In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 7.A.

(b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

## E. Royalties

(1) Loss of Income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3) Resumption of Operations: The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by this Company.

(4) Experience of the Business: In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.



**F. Time Element Extensions**

(1) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against:

(a) Service Interruption: electrical, steam, gas, water, sewer, telephone, or any other utility or service transmission lines and related plants, substations and equipment situated on or outside of the premises;

(b) Contingent Time Element: Property that prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the policy territory;

(c) Impounded Water: Dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

(d) Attraction Property: Property not owned or operated by the Insured, located within 1 mile of the Insureds location which attracts business to the Insured.

(2) Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained during the period of time when as a direct result of a peril insured against, access to real or personal property is thereby prohibited by order of civil or military authority. A 30-day sub-limit will apply for business interruption.

(3) Ingress/Egress: This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, access to or egress from real or personal property is thereby prevented. A 30-day sub-limit will apply for business interruption.

**G. Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1) Period of Recovery: The length of time for which loss may be claimed:
(a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;
(b) and such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:
   i.  the date on which the liability of the Company for loss or damage would otherwise terminate; or
   ii.  the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;
but in no event for more than one year from said later commencement date;

(c) with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

(d) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2) Special Exclusions: This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

(3) Expense to Reduce Loss: This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

## H. Transit

(1) Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2) This insurance is extended to cover loss or damage to property;

(a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

(c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

(d) at the Insured's option, which is incoming to the Insured.

(3) (a) The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

(b) With respect to shipments made under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured.

(4) The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5) Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

### I. Accounts Receivable

(1) All sums due the Insured from direct customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3) Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4) Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1) The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2) The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.



### J. Leasehold Interest

(1) Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

    a. the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

    b. improvements and betterments to real property which are not covered under any other section of this policy;

    c. the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2) a. "The Interest of the Insured as Lessee or Lessor" when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

b. "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3) Definitions:

The following terms, wherever used in this section shall mean:

a. "The Interest of the Insured as Lessee" is defined as:

    (i) the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    (ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

b. "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

c. "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."



(3) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

### K. AUTOMATIC COVERAGE

This Policy covers insured physical loss or damage to insured property at any **location** purchased leased or rented by the Insured after the inception date of this Policy. This Additional Coverage applies:

1) from the date of purchase, lease or rental,

2) until the first of the following:

   a) the **location** is bound by the Company.

   b) agreement is reached that the **location** will not be insured under this Policy.

   c) the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached. The time limit begins on the date of purchase, lease or rental.

### L. COMMUNICABLE DISEASE RESPONSE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**communicable disease** and access to such **location** is limited, restricted or prohibited by:

3) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease;** or

4) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease,**

this Policy covers the reasonable and necessary costs incurred by the Insured at such

**location** with the actual not suspected presence of **communicable disease** for the:

1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and



2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease.**

COMMUNICABLE DISEASE RESPONSE Exclusions: As respects COMMUNICABLE DISEASE RESPONSE , the following additional exclusion applies :

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss;

I) **terrorism.**

## M. INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**Communicable disease** and access to such **location** is limited, restricted or prohibited by:

a. an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease ;** or

b. a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease,**

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease.**

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions: As respects INTERRUPTION BY COMMUNICABLE DISEASE, the following additional exclusions apply:

This Policy does not insure loss resulting from:

I) the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease.**

2) loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will

be:

The period of time:

1) starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,
this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

## N. LOGISTICS EXTRA COST

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

a. directly between insured **locations;** or

b. directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss:

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1) extra costs to temporarily continue as nearly **normal** as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for **earth movement** and/or **flood** and/or **wind.**

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1) any loss resulting from disruption in the movement of goods or materials between **contingent time element locations.**

2) any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.



3) any loss of income.

4) costs that usually would have been incurred in conducting the business during the same period had there been no disruption of **normal** movement of goods or materials.

5) costs of permanent repair or replacement of property that has been damaged or destroyed.

6) any expense recoverable elsewhere in this Policy.

7) any loss resulting from disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

8) any loss resulting from disruption caused by loss or damage from **earth movement** in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

9) any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will

be:

The period of time:

1) starting at the time of physical loss or damage causing the disruption of the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and

2) ending not later than
   a) when with due diligence and dispatch the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

   b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.



**O.    MISCELLANEOUS PROPERTY**

This Policy covers Insured physical loss or damage to:

1) Insured property;

2) property of the type insured that is under contract to be used in a construction project at an insured **location:**

    a) from the time such property is delivered to the Insured or their contractor(with respect to the property under construction) by the manufacturer or supplier;

    b) while such property is located at a storage site; and

    c) while such property is in transit from a storage site to another storage site or to a construction project at an insured **location,** that does not include any such property owned or rented by the contractor; while anywhere within this Policy's TERRITORY, including while in transit.

This Additional Coverage excludes property covered elsewhere in this Policy

MISCELLANEOUS PROPERTY Exclusions: As respects MISCELLANEOUS PROPERTY, the following additional exclusions apply:

    1) This Policy excludes:

        a) **transmission and distribution systems** not at a **location.**

        b) property insured under import or export ocean marine insurance.

        c) property shipped between continents.

        d) airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

        e) property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

    2) This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

**earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**



**8.**   **COVERAGE EXTENSIONS**

### A. Ordinance Of Law

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for;

(1) i) the cost of demolishing the undamaged property including the cost of clearing the site;

ii) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(2) i) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

ii) any increase in the business interruption, extra expense, rental value, royalties or soft costs loss arising out of the additional time required to comply with said law or ordinance.

### B. Debris Removal

This policy covers the following expenses resulting from a covered loss:
(1) the cost of removal of debris of property covered hereunder;

(2) the cost of removal of debris of property not covered hereunder from the premises of the Insured;

### C. Expediting Costs

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

### D. Claims Preparation Costs

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.



### E. **Fire Brigade Charges and Extinguishing Expenses**

This policy covers the following expenses resulting from a covered loss:

(1) fire brigade charges and any extinguishing expenses which the Insured incurs;
(2) loss and disposal of fire extinguishing materials expended.

### F. **Defense Costs**

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and /or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

### G. **Consequential Loss**

(1) In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which cause physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2) This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded.

(3) This policy also insured the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or toher classifications due to a cause of loss not otherwise excluded.

### H. **Control of Damaged Merchandise**

The Insured, exercising a reasonable discretion, shall be the sole judge as to. whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.



I. **Brands or Trademarks**

In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

**9.** **PERILS INSURED AGAINST**

This policy insures against all risks of direct physical loss of or damage to property described herein including general average salvage and all other charges on shipments covered hereunder, including Flood, Earthquake and Terrorism except as hereinafter excluded.

**10.** **PERILS EXCLUDED**

This policy does not insure:

A. against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

(1) cause the Insured to sustain such loss, and

(2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B. against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, if a peril not specifically excluded elsewhere in this policy ensues, then this Company shall be liable for only the ensuing loss or damage to property covered.

C. against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D. against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E. against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;



F.  against moth, vermin, termites and other insects, inherent vice, latent defect, contamination, rust, or dampness of atmosphere.

G.  against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; or be in whole or in part caused by, contributing to, or aggravated by the peril(s) insured against in this policy, except: as otherwise covered by this policy and if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

H.  (1) against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    (a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;
    (b) or by military, naval, or air forces;

    (c) or by an agent of any such government, power, authority, or forces;

    (2) against any weapon employing atomic fission or fusion;

    (3) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

    (4) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

    (5) against risks of contraband or illegal trade.

Notwithstanding the above provisions, K. (1), (3), (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

Exclusions C, D and E do not apply to alterations, additions and property while in the course of construction, erection, installation, or assembly.

Exclusions C and D do not apply to electronic data processing systems, valuable papers and records, and accounts receivable.



**11.**   **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.   Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams, and additions to land such as pavements, roadways, or similar works;

B.   Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C.   Money and securities;

D.   Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber and animals.

E.   Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this exclusion shall not apply to contractor's equipment;

F.   Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G.   Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel, watercraft or aircraft until the ocean marine insurance terminates, whichever occurs last;

H.   Property sold by or under encumbrance to the Insured after it leaves the custody of the Insured or an employee of the Insured;

I.   Furs, jewelry, jewels, precious or semiprecious stones, gold, silver and platinum or other precious alloys;

J.   Contractor's and subcontractor's machinery, tools and equipment used in erection of property covered unless the total capital value of such property is directly and specifically charged to the job;

K.   Personal property left in the open, when loss is caused by exposure to rain, sleet, snow, sand or dust;

L.   Property illegally acquired;

M.   Transmission and distribution lines beyond  1,000ft from the Insured's premises;

N.   Property more specifically insured elsewhere.

O.   Loss of Market, Loss of Use, Delay of Use

P.   Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.



Q. Indirect or remote loss or damage.

## 12. VALUATION

In case of loss, the basis of adjustment shall be as follows:

### A. Stock

(1) Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2) Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and un-incurred expenses to which the sales price would have been subject.

(3) Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts, rebates, and un-incurred expenses to which such sales price would have been subject.

### B. Real and Personal Property

(1) Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2) Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

(3) Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information.

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, paper, tapes, cards, electronic memory circuits, and magnetic or optical storage devices.



"Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means. It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4) Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5) Fine Arts shall be valued at the appraised value; or if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(6) Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7) Permission is granted for the Insured to replace the damaged property with any property at the same site or at another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site, ifproperty damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

(8) Mobile Equipment shall be valued at actual cost value at the time of loss.

## 13.   **EARTHQUAKE AND FLOOD**

A. Each loss by earthquake or flood shall constitute a single occurrence hereunder if:

   (1) more than one earthquake shock occurs within any period of 72 hours during the term of this policy, the beginning of which 72 hour period may be determined by the Insured; or

   (2) any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the subsidence of same within the banks of such river(s) or stream(s); or

   (3) any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

Flood: The term "flood" is defined as waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.



Earthquake: The term "earthquake" is defined as a movement or shaking of the earth that is seismic in origin. Landslide, mudflow, volcanic eruption, earth sinking, subsidence, rock fall shall not be considered an earthquake under this definition.

B. Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C. This Company shall not be liable, however, for any loss caused by any earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

## 14. CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

## 15. EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 16. UNDERLYING INSURANCE

A. Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.



**17. OTHER INSURANCE**

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly covering the same property against the same causes of loss. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance. Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Company guarantees prompt payment in full of the amount of loss which would have been otherwise recoverable hereunder in the absence of such other collectible insurance and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other collectible insurance minus the cost of recovery. As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

**18. SUBROGATION**

A. Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant of the Insured, is waived.

B. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other Company (ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

C. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

**19. SALVAGE AND RECOVERIES**

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.



**20.  MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

**21.  ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

**22.  NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Office of Risk Management, the Insured shall report such loss or damage to Parker, Smith & Feek, 2233 112th NE, Bellevue, WA 98004 for transmission to this Company. Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

**23.  PROOF OF LOSS**

The Insured, at the request of the Company, will render a signed and sworn proof of loss to the Company or its appointed representative stating; the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

**24.  PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company.

**25.  ASSIGNED ADJUSTER**

It is agreed that Jeff Hellman at McLarens Young, Inc., 19324 40th Avenue W, Suite C, Lynnwood, WA 98036 will represent the Company in the investigation and adjustment of all losses reported under this policy.

**26.  APPRAISAL**

If the Insured and this Company fail to agree on the amount of the loss, each, upon written demand of either the Insured or this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such

appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

**27.   PAIR AND SET**

Except as provided under the Machinery clause and paragraph (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.  the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.  the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

**28.   ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall reasonably cooperate with this Company and, at this Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

**29.   SUE AND LABOR**

In case of actual or imminent loss or damage covered by this policy, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

**30.   PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

**31.   REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**32.   SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all

the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with Clause 22 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

**33.   CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein. Such certificates are to be forwarded to the Company within 30 days of issuance.

The Company hereby authorizes Parker, Smith & Feek, Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

**34.   CANCELLATION**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at:

Risk Manager –xyz Company
Office of Risk Management.
Post Office Box
Seattle, WA

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.



B. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D. In the event of non-payment of premium this policy may be canceled by the Company by mailing to the Insured at the address shown in A. above stating when, not less than 10 days thereafter, such cancellation shall be effective. Reinstatement of coverage shall be effective immediately upon receipt of premium by the Company.

**35. <u>VALUES</u>**

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

**36. <u>TITLES OF PARAGRAPHS</u>**
The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

**37. <u>CONFORMANCE</u>**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.



**DEFINITIONS:**

**Accidental Interruption Of Services**
This Policy covers physical damage resulting from changes in temperature or relative humidity to insured property at an insured location when such changes in temperature or relative humidity result from the interruption of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at the insured location.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

**Actual cash value:**
the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

**Aggregate during any policy year:**
the Company's maximum amount payable during any policy year.

**Ammonia Contamination**
In the event of direct physical loss of or damage to Covered Property caused by a breakdown of covered equipment at a Location covered hereunder, the Company will pay for resulting Ammonia Contamination.

Ammonia Contamination shall mean the loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one occurrence.

**Automatic Coverage**

This Policy covers property of the type insured by this Policy at any Location rented, leased or purchased by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease or purchase.

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1) The Location is agreed to be insured by the Underwriters.

2) Agreement is reached that the Location will not be insured under this Policy.

3) The Time Limit specified in the Schedule has been reached. The Time Limit begins on the date of rental, lease or purchase.

**Contamination:**
any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**Contingent time element location:**

**Direct (Tier 1 Supplier/Customer):**

Supplier:  A supplier that supplies products or services directly to the Insured,

Customer:  A customer that receives products or services directly from the Insured.

**Indirect (Tier 2 Supplier/Customer):**

Supplier:  A supplier that supplies products or services directly to a Tier 1 supplier of the Insured,

Customer:  A customer that receives products or services directly from a Tier 1 customer of the Insured

**Date or time recognition:**

the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or

processing of data involving one or more dates or times, including the Year 2000.

**Deferred Payments**

This Policy covers insured physical loss or damage to Personal Property of the type insured by this Policy sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of such loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1)  pertaining to products recalled including, but not limited to, the costs to recall,  test or to advertise such recall by the Insured.

2)  from theft or conversion by the buyer of the property after the buyer has taken  possession of such property.

3)  to the extent the buyer continues payments.

4)  not within the Territory of this Policy.



**Earth movement:**
any natural or man-made earth movement including, but not limited to
earthquake or landslide, regardless of any other cause or event contributing
concurrently or in any other sequence of loss. However, physical loss or
damage by fire, explosion, sprinkler leakage, or flood resulting from earth
movement will not be considered to be loss by earth movement within the
terms and conditions of this Policy.

**Electronic data processing equipment or media:**
any computer, computer system or component, hardware, network,
microprocessor, microchip,

Integrated circuit or similar devices or components in computer or non-
computer equipment, operating systems, data, programs or other software
stored on electronic, electro-mechanical, electro-magnetic data processing or
production equipment, whether the property of the Insured or not.

**Extended Period Of Liability**

The Business Interruption coverage is extended to cover the reduction in sales:

1) resulting from the interruption of business as covered by Business
Interruption;

2) for such additional length of time as would be required with the exercise of
due diligence and dispatch to restore the Insured's business to the condition
that would have existed had no loss occurred; and

3) commencing with the date on which the liability of the Underwriters for loss
resulting from interruption of business would terminate if this Extension had
not been included herein.

Extended Period of Liability Exclusions: As respects Extended Period of Liability,
the Time Element Exclusions B of this section does not apply and the following
applies instead:

This Policy does not insure against any increase in loss due to fines or
damages for breach of contract or for late or non completion of orders, or
penalties of any nature.

Coverage under this Extension for the reduction in sales due to contract
cancellation will include only those sales that would have been earned under the
contract during the extended Period of Liability.

Coverage under this Extension does not apply for more than the number of
consecutive days specified in the Schedule.

**Fine arts:**
paintings; etchings; pictures; tapestries; rare or art glass; art glass windows;
valuable rugs; statuary;

sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and
similar property of rarity, historical value, or artistic merit excluding
automobiles, coins, stamps, furs, jewelry, precious stones, precious
metals, watercraft, aircraft, money, securities.

**Fines Or Penalties**

This policy covers fines or penalties imposed by a governmental agency and arising from a Regulatory Action, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty. This policy also insures fines or penalties resulting from a breach of contract by the Insured. This Policy shall pay for the amount of loss in excess of the Policy Deductible, but not to exceed the sublimit as stated in the Declarations applying to this Coverage.

**Flood:**

flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from flood associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be flood within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from flood is not considered to be loss by flood within the terms and conditions of this Policy.

**Land And Water Contaminant Or Pollutant Cleanup; Removal And Disposal**

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of contaminants or pollutants from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of contaminants or pollutants is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of contaminants or pollutants from such property:

1)      at any location insured for Personal Property only.

2)      at any property insured under Automatic Coverage, Errors And Omissions or Miscellaneous Unnamed Location coverage provided by this Policy.

when the Insured fails to give written notice of loss to the Underwriters within 180 days after inception of the loss.



**Location:**

A.    as specified in the Schedule of Locations, or

B.    if not so specified in the Schedule of Locations:

       I) a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing)

       a) bounded on all sides by public streets, clear land space or open waterways, each not less than 50 feet/15 metres wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

## LOGISTICS EXTRA COSTS

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the normal movement of goods or materials;

1)    directly between insured locations; or
2)    directly between an insured location and a location of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss;
The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1)    .extra costs to temporarily continue as nearly normal as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for earth movement and/or flood and "or wind.

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1)    any loss resulting from disruption in the movement of goods or materials between contingent time element locations.
2)    any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.
3)    any loss of income.
4)    costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials.

5) costs of permanent repair or replacement of property that has been damaged or destroyed.
6) any expense recoverable elsewhere in this Policy.
7) any loss resulting from disruption caused by or resulting from terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.
8) any loss resulting from disruption caused by loss or damage from earth movement in California, in the New Madrid Seismic Zone or in the Pacific Northwest
9) any loss resulting from disruption caused by physical loss or damage lo personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:
1) starting at the time of physical loss or damage causing the disruption of the normal movement of goods or materials directly between insured locations; or directly between the insured location and the location of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and
2) ending not later than:
a) when with due diligence and dispatch the normal movement of goods or materials directly between insured locations; or directly between the insured location and the location of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or
b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

### Miscellaneous Unnamed Location

This Policy covers all real and personal property at a Miscellaneous Unnamed Location.

A Miscellaneous Unnamed Location as used herein shall be defined as a location at which the Insured has property of the type insured hereunder which has not been reported to the Insurers. Upon report to the Insurers of said location, the Policy Limit shall apply.

**Normal:**
the condition that would have existed had no physical loss or damage happened.

**Normal cost:**
the cost associated with the movement of goods or materials suffering the disruption that the

Insured would have incurred had no physical loss or damage causing disruption happened.



### Off Premises Data Services

1. PROPERTY DAMAGE—This Policy covers insured physical loss or damage to insured property at an insured location when such physical loss or damage results from the interruption of off-premises data processing or data transmission services by reason of any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

2. TIME ELEMENT—This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption at an insured location of off-premises data processing or data transmission services, when the interruption is caused by any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

### CONDITIONS

A. For the purposes of these Off Premises Data Services coverages:
   1) facilities of the provider of off-premises data processing or data transmission services can be located worldwide except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine, and
   2) an accidental event to satellites will be considered an accidental event at the facilities of the provider

B. This Additional Coverage will apply when the period of interruption of off-premises data processing or data transmission services as described below is in excess of 24 hours.

C. The period of interruption of off-premises data processing or data transmission services is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored.

D. Additional General Provisions:
   1) The Insured will immediately notify the company providing off-premises data processing or data transmission services of any interruption of such services.
   2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

E. This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:
   1) movement for property located in California, in the New Madrid earth Seismic Zone or in the Pacific Northwest Seismic Zone.
   2) terrorism.

F. As used above, the period of interruption of off-premises data processing or data transmission services:
   1) is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the

service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

2) is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

3) does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

**Occurrence:**
the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

A. terrorism: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of terrorism during a continuous period of seventy-two (72) hours.

B. earth movement: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all earth movement(s) during a continuous period of seventy-two (72) hours.

**Off-premises data processing or data transmission services:**

The storage or processing of data performed off-premises of the Insured's property, including the

Transmission of voice, data or video over a single, or combination of, computer or communication networks.

**Physical loss or damage to electronic data, programs or software:**
the destruction, distortion or corruption of electronic data, programs or software.

**Representative company:**
Lex London a Division of American International Group UK Limited



**Soft costs:**

costs over and above those that are normal at an insured location undergoing renovation or in the course of construction, limited to the following:

A.  construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

B.  commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

C.  additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

D.  property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**Terrorism:**

any act, involving the use or threat of: force, violence, dangerous conduct, interference with the

operations of any business, government or other organization or

institution, or any similar act, when the effect or apparent purpose

is:

A.  to influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or

B.  to further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**Transmission and distribution systems:**

transmission and distribution systems including but not limited to electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data, and video. Such systems shall include poles, towers and fixtures, overhead conductors and devices, underground and underwater conduit, underground and underwater conductors and devices, line transformers, service meters, street lighting and signal systems.



**Valuable papers and records:**

This Policy covers insured physical loss or damage to Valuable Papers and Records while anywhere within this Policy's Territory, including in transit.

1) This Additional Coverage excludes loss or damage to:

a) property described below, if such property cannot be replaced with other of like kind and quality, unless specifically declared to the Underwriters.

b) currency, money or securities.

c) property held as samples or for sale or for delivery after sale.

2) Valuable Papers and Records Exclusions:

In addition to the exclusions in the Exclusions clause of this section, as respects Valuable Papers And Records, this Policy does not insure errors or omissions in processing, or copying; all unless physical damage not excluded by this Policy results, in which event, only that resulting damage is insured.

3) The term Valuable Papers and Records wherever used in this Policy means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

**Wind:**
direct action of wind including substance driven by wind. Wind does not mean or include anything defined as flood in this Policy.



## ELECTRONIC DATA ENDORSEMENT A

### 1. Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

a) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b) However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
Fire, Explosion

### 2. Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed US$ 10,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

NMA 2914 - (25.1.01)



**ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)**

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**NMA 2802 - 17/12/1997**

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010



## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such Suit may be made upon

> Messrs Mendes & Mount
> 750 Seventh Avenue,
> New York N.Y. 10019-6829

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking **to** the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998



**Short Form Privacy Notice – Commercial Lines**

American International Group UK Limited Privacy Policy is available at
https://www.aig.co.uk/privacy-policy or by requesting a copy from: Data Protection
Officer American International Group UK Limited The AIG Building, 58 Fenchurch Street,
London EC3M 4AB, UK] or by email dataprotectionofficer.uk@aig.com

Before providing us with Personal Information about another individual you must (unless
we agree otherwise): (a) inform the individual about the content of this notice and our
Privacy Policy; and (b) obtain their permission (where possible) to share their Personal
Information with us in accordance with the Privacy Policy.

## FRAUDULENT CLAIM CLAUSE

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as
regards amount or otherwise, then this contract shall become void and all claim
hereunder shall be forfeited.

**LMA5062**
04/06/2006

## MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly
or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or
> description, including but not limited to any substance whose presence poses an
> actual or potential threat to human health.

This Exclusion applies regardless whether there is:

(i)     any physical loss or damage to insured property;

(ii)    any insured peril or cause, whether or not contributing concurrently or in any
        sequence;

(iii)   any loss of use, occupancy, or functionality; or

(iv)    any action required, including but not limited to repair, replacement, removal,
        cleanup, abatement, disposal, relocation, or steps taken to address medical or
        legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides
insurance, in whole or in part, for these matters.

**LMA5018 – 14/09/2005**



## WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**NMA464 - 1/1/38**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - PHYSICAL DAMAGE - DIRECT (U.S.A.)

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this Policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this Policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA1191

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**NMA2962 - 06/02/03**



## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**1.      Property Not Covered**

   This Policy does not cover land, land values or water.

**2.      Pollution and Contamination Exclusion.**

   This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

   Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

   CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3.      Asbestos, Dioxin or Polychlorinated Biphenyls Exclusions**

   This Policy does not cover –

   a)   Asbestos, dioxin or polychlorinated biphenyls (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from automatic fire protective system.

   b)   Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

   c)   Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's

property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above,  does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property that can no longer be used for the purpose for which it was intended

## 4. Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a) Extract contaminants or pollutants from the debris; or

b) Extract contaminants or pollutants from land or water; or

c) Remove, restore or replace contaminated or polluted land or water; or

d) Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

## 5. Authorities Exclusion

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of the Policy remain the same.



## SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured Locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

### Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.

In consideration of a premium charged of USD**96,000**, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein. This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under the LIMITS OF LIABILITY clause of the DECLARATIONS section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD100,000,000,000. If the aggregate insured losses for all insurers exceed USD100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law.

Under this formula, the United States pays 85% (and beginning on January 1, 2016, shall then decrease by

1 percentage point per calendar year until equal to 80 percent) of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of

Terrorism. Reference and Application: The following term(s) means:

Certified Act of Terrorism:



A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and

extended in 2005, 2007, and in 2015. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

a. The act resulted in aggregate losses in excess of USD5,000,000; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.



## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**1.    Property Not Covered**

This Policy does not cover land, land values or water.

**2.    Pollution and Contamination Exclusion.**

This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3.    Asbestos, Dioxin or Polychlorinated Biphenyls Exclusions**

This Policy does not cover –

a)    Asbestos, dioxin or polychlorinated biphenyls (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from automatic fire protective system.

b)    Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

c)    Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.



The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property that can no longer be used for the purpose for which it was intended

4.   **Debris Removal Exclusion**

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a)   Extract contaminants or pollutants from the debris; or

b)   Extract contaminants or pollutants from land or water; or

c)   Remove, restore or replace contaminated or polluted land or water; or

d)   Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5.   **Authorities Exclusion**

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of the Policy remain the same.

Authorized Representative

PR6015 (04/16)
LX1093

©2016 American International Group, Inc.
All Rights Reserved.

Page 2 of 2

FG 16/07/19

FM Global

# Account Loss History By Year

Start Yr Reported: 1990
Acct No: [illegible]

End Yr Reported: 2019
[illegible] LLC

[redacted]

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2000<br>14-Aug-2000 | 02545<br>Sprinkler Leakage | [illegible]<br>10500 8th Street (ne) | Bellevue | WA<br>MO* | [illegible]<br>120109 | $19,000<br>0% | $0 |
| | | | | Sub Total for Year: 2000 | | 1 Losses | $0 |
| 2002<br>11-Jan-2002 | 01516<br>Sprinkler Leakage | 000471.48<br>575 Bellevue Square | Bellevue | WA<br>MO* | 30708<br>130727 | $25,000<br>0% | $0 |
| | | | | Sub Total for Year: 2002 | | 1 Losses | $0 |
| 2005<br>12-Jul-2005 | 02330<br>Fire | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>Closed | 62722<br>150831 | $43,759<br>100% | $250,000 |
| 2005<br>25-Oct-2005 | 04657<br>Fire | [illegible]<br>604 Bellevue Way NE | Bellevue | WA<br>MO* | 68423<br>164123 | $50,000<br>100% | $0 |
| | | | | Sub Total for Year: 2005 | | 2 Losses | $250,000 |
| 2006<br>05-Dec-2004 | 01242 | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>Closed | 60706 | | |
| 2006<br>08-Dec-2004 | 01460<br>Wind and Hail | 000068.59<br>600-700 Bellevue Way Northeast | Bellevue | WA<br>Closed | 61068<br>158858 | $50,000<br>100% | $128,390 |
| 2006<br>01-Sep-2005 | 03258<br>Miscellaneous | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>MO* | 64113<br>160683 | $50,000<br>100% | $0 |
| 2006<br>10-Oct-2005 | 03060<br>Impact | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>MO* | 62022<br>158881 | $50,000<br>100% | $0 |
| 2006<br>04-Feb-2006 | 02695<br>Wind and Hail | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>FIO* | 63485 | | |
| 2006<br>25-Oct-2005 | 03670<br>Escaped Liquids Damage | 000068.59<br>604 Bellevue Way NE | Bellevue | WA<br>MO* | 65180<br>161536 | $50,000<br>100% | $0 |
| 2006<br>14-Dec-2006 | 04441<br>Wind and Hail | 000068.59<br>600-700 Bellevue Way Northeast | Bellevue | WA<br>Closed | 68119<br>162351 | $50,000<br>100% | $39,486 |
| | | | | Sub Total for Year: 2006 | | 7 Losses | $167,876 |
| 2007<br>23-Mar-2007 | 01150<br>Miscellaneous | 000068.59-02<br>600-700 Bellevue Way NE | Bellevue | WA<br>MO* | 63472<br>134270 | $50,000<br>100% | $0 |
| | | | | Sub Total for Year: 2007 | | 1 Losses | $0 |
| 2008<br>20-Dec-2008 | [illegible]<br>Escaped Liquids Damage | 000068.59-02<br>[illegible] & 600 Bellevue Way Northeast | Bellevue | WA<br>MO* | 85977<br>172018 | $50,000<br>100% | $0 |
| | | | | Sub Total for Year: 2008 | | 1 Losses | $0 |

This report is provided to you for informational purposes only to reduce the possibility of loss to insured property by bringing to your attention certain potential hazards or conditions. Life, safety, or health issues are not addressed. You must make the decision whether to take any action. FM Global undertakes no duty to you or any other party by providing this report or the activities on which it is based.

6/19/19 [illegible]

FM Global

## Account Loss History By Year

Start Yr Reported: 1994
Avail thru: 02/2018

Prospect/Client Name: Hedger Hedger, LLC

| Year / Date | Claim | Cause | Location | City | State | Claim # | Amount | Pct | Paid |
|---|---|---|---|---|---|---|---|---|---|
| 2009 05-Jul-2009 | 02768 | Sprinkler Leakage | 800 and 900 Bellevue Way Northeast(10500 Northeast 8th | Bellevue | WA MO* | 91006 183729 | $0 100% | $0 |
| 2009 05-Jul-2009 | 02822 | Sprinkler Leakage | 800-700 & 800 Bellevue Way Northeast | Bellevue | WA Closed | 91844 183784 | $30,000 100% | $1,280,555 |
| 2009 10-Dec-2009 | 02871 | Sprinkler Leakage | 700 Bellevue Way Northeast | Bellevue | WA FIO* | 95705 | | |
| | | | | | | **Sub Total for Year: 2009** | **3 Losses** | | **$1,280,385** |
| 2010 01-Apr-2010 | 03131 | Electrical Breakdown | 800 and 900 Bellevue Way Northeast(10500 Northeast 8th | Bellevue | WA Closed | 182006 192458 | $50,000 100% | $5,703 |
| | | | | | | **Sub Total for Year: 2010** | **1 Losses** | | **$5,703** |
| 2011 05-Apr-2011 | 02201 | Escaped Liquids Damage | 800 Bellevue Way Northeast | Bellevue | WA Closed | 112503 201653 | $90,000 100% | $49,853 |
| | | | | | | **Sub Total for Year: 2011** | **1 Losses** | | **$49,853** |
| 2012 14-May-2012 | 03603 | Sprinkler Leakage | 700 Bellevue Way Northeast | Bellevue | WA MO* | 312641 413597 | $35,000 100% | $0 |
| 2012 06-Sep-2012 | 03670 | Escaped Liquids Damage | 700 Bellevue Way Northeast | Bellevue | WA MO* | 315055 414650 | $32,000 100% | $0 |
| 2012 22-Sep-2012 | 03650 | Escaped Liquids Damage | 629 Bellevue Way Northeast | Bellevue | WA Closed | 317421 415511 | $75,000 100% | $269,026 |
| 2012 08-Dec-2012 | 03784 | Mechanical Breakdown | 675 Bellevue Way Northeast | Bellevue | WA FIO* | 323962 | | |
| | | | | | | **Sub Total for Year: 2012** | **4 Losses** | | **$269,026** |
| 2013 25-Jun-2013 | 03842 | Escaped Liquids Damage | 975 Bellevue Way Northeast | Bellevue | WA Closed | 327275 422670 | $80,000 100% | $20,729 |
| 2013 04-Jul-2013 | 03826 | Escaped Liquids Damage | 800 Bellevue Way Northeast | Bellevue | WA MO* | 327766 424423 | $80,000 100% | $0 |
| 2013 04-Sep-2013 | 00026 | Escaped Liquids Damage | 800 Bellevue Way Northeast | Bellevue | WA MO* | 329504 426160 | $80,000 100% | $0 |
| 2013 04-Sep-2013 | 03362 | Escaped Liquids Damage | 400 Bellevue Way Northeast | Bellevue | WA MO* | 329853 426228 | $25,000 100% | $0 |
| 2013 27-Oct-2013 | 06263 | Escaped Liquids Damage | 800 Bellevue Way Northeast | Bellevue | WA MO* | 331474 427654 | $38,000 100% | $0 |
| | | | | | | **Sub Total for Year: 2013** | **5 Losses** | | **$20,729** |

This report is provided to you for informational purposes only to lessen the possibility of loss to insured property by bringing to your attention certain potential hazards or conditions. Life, safety, or health losses are not addressed. Viewpoint under the decision whether to take any action. FM Global undertakes no duty to you or any other party by providing this report or the activities on which it is based.

# Account Loss History By Year

Start Yr Reported: 1996 | End Yr Reported: 2019
Acct No: 32906 | Prospect/Client Name: [illegible], LLC

[redacted]

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2014<br>28-Jan-2014 | 00440<br>Vehicle | [illegible]<br>[illegible] Bellevue Way Northeast | Bellevue | WA<br>Closed | 340063<br>436170 | $50,000<br>100% | $58,973 |
| | | | | Sub Total for Year: 2014 | | 1 Losses | $58,973 |
| 2015<br>29-Jun-2015 | 04398<br>Pressure Equipment Breakdown | 000088.59-02<br>800 Bellevue Way Northeast | Bellevue | WA<br>Closed | 352320<br>448642 | $50,000<br>100% | $191,221 |
| 2015<br>[illegible]-Nov-2015 | 06798<br>Escaped Liquids Damage | 078844.87-05<br>800 & 900 Bellevue Way Northeast, 10500 & 10520 Northeast 8th Street | Bellevue | WA<br>MO* | 358084<br>449820 | $50,000<br>100% | $0 |
| | | | | Sub Total for Year: 2015 | | 2 Losses | $191,221 |
| 2016<br>[illegible]-2016 | 01704<br>Riot and Civil Commotion | 000088.59-03<br>800 Bellevue Way Northeast | Bellevue | WA<br>MO* | 360271<br>453494 | $50,000<br>100% | $0 |
| 2016<br>25-Jul-2016 | 04605<br>Water – Liquid Damage | 078844.05-28<br>300, 400 & 578 Bellevue Way Northeast | Bellevue | WA<br>Closed | 364449<br>458113 | $50,000<br>100% | $130,651 |
| 2016<br>19-Aug-2016 | 05057<br>Escaped Liquids Damage | [illegible]<br>[illegible] & 700 Bellevue Way Northeast, 10401 Northeast 8th Street | Bellevue | WA<br>MO* | 365402<br>459946 | $50,000<br>100% | $0 |
| | | | | Sub Total for Year: 2016 | | 3 Losses | $130,651 |
| 2017<br>23-Jan-2017 | 00520<br>Escaped Liquids Damage | 000088.59-03<br>700 Bellevue Way Northeast | Bellevue | WA<br>MO* | 370541<br>461376 | $50,000<br>100% | $0 |
| 2017<br>06-Nov-2017 | 00254<br>Escaped Liquids Damage | 000088.59-02<br>800 Bellevue Way Northeast | Bellevue | WA<br>Closed | 382737<br>470182 | $50,000<br>100% | $178,859 |
| | | | | Sub Total for Year: 2017 | | 2 Losses | $178,859 |
| 2018<br>07-Jul-2018 | 05084<br>Sprinkler Leakage | 078844.28-01<br>500-608 Bellevue Way Northeast, 10400 Northeast 4th Street, 10633 Northeast 6th Place, 10455 Northeast 8th Street | Bellevue | WA<br>Closed | 393764<br>481601 | $25,000<br>100% | $169,959 |
| | | | | Sub Total for Year: 2018 | | 1 Losses | $169,959 |
| | | | | Grand Total: [illegible] Losses | | | [illegible] |

*FIO - Loss reported for information only. A claim was never established.
*MO - Claim has been closed as a Mark Off due to one of the following: No Liability, No Coverage, Less than Ded, Claim Cancelled, 3rd Party Paid.
PIT* Deductible: = Sum of actual PD and TE deductibles applied to loss.
Total Payable PIT* FM Loss = Sum of actual PD and TE payment amounts made against the loss.
Note - Monetary data is in USD equivalent and based on the exchange rate at date of loss or the negotiated exchange rate.
Payment data will not display for any payments made against losses prior to year 2005.
**Open Loss: $ not yet available

This report is provided to you for informational purposes only to reduce the possibility of loss to insured property by bringing to your attention certain potential hazards or conditions. Life, safety, or health issues are not addressed. You must make the decision whether to take any action. FM Global undertakes no duty to you or any other party by providing this report or the activities on which it is based.

6/10/19

# EXHIBIT B

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# Property Insurance Policy



Zurich North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am – 4pm |C T |)
Email: info.source@zurichna.com

**Insured Name:**   Kemper Holdings, LLC
**Policy Number:**  ERP-0851426-01
**Effective Date:**  07/31/2019


**ZURICH**

### THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

#### SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

**Not Applicable – Terrorism Exclusion**

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

#### A.  Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

#### B.  Disclosure of Federal Participation in Payment of Terrorism Losses

The United States Government may pay a share of insured losses resulting from an act of terrorism. The federal share will decrease by 5% from 85% to 80% over a five year period while the insurer share increases by the same amount during the same period. The schedule below illustrates the decrease in the federal share.

January 1, 2015 – December 31, 2015 federal share: 85%

January 1, 2016 – December 31, 2016 federal share: 84%

January 1, 2017 – December 31, 2017 federal share: 83%

January 1, 2018 – December 31, 2018 federal share: 82%

January 1, 2019 – December 31, 2019 federal share: 81%

January 1, 2020 – December 31, 2020 federal share: 80%

#### C.  Disclosure of $100 Billion Cap on All Insurer and Federal Obligations

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury

#### D.  Availability

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

#### E.  Definition of Act of Terrorism under TRIA

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1.  To be an act of terrorism;

2   To be a violent act or an act that is dangerous to human life, property or infrastructure,

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office Inc., with its permission



# SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

IL 09 83 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WASHINGTON – AMENDMENT OF TERRORISM EXCLUSIONS

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    STANDARD PROPERTY POLICY

**A.** If this policy (or an endorsement to this policy) excludes loss or damage caused by a "certified act of terrorism" or "terrorism", the following paragraph is added to such exclusion(s) and supersedes any provision to the contrary:

Loss or damage will be considered to have been caused by such excluded event if the occurrence of that event:

    **1.** Directly and solely results in loss or damage; or

    **2.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

Wolters Kluwer Financial Services | Uniform Forms™

# Important Notice — In Witness Clause



**ZURICH**

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                          Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours: 8am - 4pm [CT])
Email: info.source@zurichna.com

# Property Declarations



**ZURICH**

**Policy Number**
ERP-0851426-01

**Named Insured and Mailing Address**
Kemper Holdings, LLC
575 Bellevue Square
Bellevue, WA 98004

The following are all hereafter referred to as the Insured including legal representatives.

The Named Insured; and

Any subsidiary of the Named Insured, the Named Insured's interest in any partnership, joint venture, or other legal entity in which the Named Insured has management control or ownership as now constituted or may hereafter be constituted or acquired.

The inclusion of more than one (1) Insured under this Policy will not operate to increase the total limit of insurance beyond the total limit of insurance stated in this Policy.

**The Stock Company (providing insurance)**

American Guarantee and Liability Insurance Company
Administrative Offices: Schaumburg, IL 60196

**Producer**
Parker Smith & Feek, Inc.
2233 112th Avenue NE
Bellevue, WA 98004

**Policy Period**
Coverage begins July 31, 2019 at 12:01 AM.      Coverage ends July 31, 2020 at 12:01 AM.

**Insuring Agreement**

In consideration for the premium charged and subject to all the terms and conditions, this Policy insures the Named Insured (hereinafter called the Insured) during the Policy Period and for an amount not exceeding its proportionate share of the Limit(s) of Insurance specified in the forms and endorsements attached.

Insurance provided under this policy applies to loss or damage caused by or resulting from risks of direct physical loss of or damage from any external cause to covered property occurring at a premises described within the Territory of the policy, unless excluded.

**Proportionate Share**

This Policy's proportionate share for loss or damage after the application of any deductible is:

**25** % Quota       Being $ 250,000,000 part of a $ 1,000,000,000 primary loss layer
Share

**Premium**

| Annual Policy Premium | Surcharges, Taxes & Fees | Total Policy Premium |
|---|---|---|
| $ 568,628.00 | $ 710.79 | $ 569,338.79 |

**Forms Applicable to This Policy**

| Form Name | Form Number | Edition Date |
|---|---|---|
| Disclosure Statement | U-GU-873-A CW | 06/11 |
| Disclosure Statement | U-GU-874-A CW | 06/11 |
| Property Insurance Policy (Cover Page) | U-CP-D-MAN CW | 11/17 |
| Disclosure of Important Information Relating to Terrorism Risk Insurance Act | U-GU-630-D CW | 01/15 |
| Sanctions Exclusion Endorsement | U-GU-1191-A CW | 03/15 |
| WASHINGTON – AMENDMENT OF TERRORISM EXCLUSIONS | IL 09 83 | 01/08 |
| Important Notice – In Witness Clause | U-GU-319-F | 01/09 |
| Property Declarations | U-CP-D-MAN CW | 11/17 |
| Kemper Holdings, LLC 2019 Property Manuscript Form | N/A | N/A |
| WASHINGTON AMENDATORY ENDORSEMENT | FMG3061 | 05/16 |
| Exclusion of Loss Resulting from Certified Acts of Terrorism with Exceptions and Sub-Limits | U-GU-685-C CW | 01/15 |
| ELECTRONIC DATA ENDORSEMENT A | NMA 2914 | N/A |
| Policy Changes Endorsement | EDGE 303-A | 08/16 |

## DECLARATIONS

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

### 1.   NAMED INSURED AND MAILING ADDRESS

Kemper Holdings LLC and any subsidiary, and Kemper Holdings LLC interest in any partnership or joint venture in which Kemper Holding LLC has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured," including legal representatives.

575 Bellevue Square
Bellevue, Washington 98004

### 2.   POLICY DATES

> TERM:   One Year
>
> FROM:   31 July, 2019 at 12:01 a.m., Standard Time;
> TO:     31 July, 2020 at 12:01 a.m., Standard Time,

at the location of property involved as provided in this Policy.

### 3.   INSURANCE PROVIDED

The coverage under this Policy applies to property described on the Schedule of Locations or covered under the terms and conditions of the AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or MISCELLANEOUS PROPERTY provisions, unless otherwise provided.

Schedule of Locations are as listed on the Schedule of Locations attached to this Policy.

### 4.   PREMIUM

This Policy is issued in consideration of an initial premium.

### 5.   PREMIUM PAYABLE

Parker Smith & Feek, Inc pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of Parker, Smith & Feek, Inc.

### 6.   LOSS ADJUSTMENT/PAYABLE

Loss, if any, will be adjusted with and payable to Kemper Holdings LLC or as may be directed by Kemper Holdings LLC

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with the Company or named below.

When named on a Certificate of Insurance or other evidence of insurance, such additional interests are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## 7.   TERRITORY

Coverage as provided under this Policy applies in the United State of America

## 8.   JURISDICTION

This Policy will be governed by the laws of the United States of America.

Any disputes arising hereunder will be exclusively subject to United States of America jurisdiction.

## 9.   CURRENCY

All amounts, including deductibles, premiums and limits of liability, indicated in this Policy shall be in the currency represented by the three letter currency designation shown. This three letter currency designator is defined in Table A.1–Currency and funds code list, International Organization for Standardization (ISO) 4217, edition in effect at the inception of this Policy.

## 10.   PARTICIPATION

The Company's liability under this Policy will not exceed the following percentages of any limits of liability as provided in the LIMITS OF LIABILITY clause in this section, nor the same percentage share of the recoverable loss in any one occurrence:

A.   25% Quota Share   being USD250,000,000 part of USD1,000,000,000  primary

## 11.   LIMITS OF LIABILITY

The Company's maximum limit of liability in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the Policy limit of liability of USD1,000,000,000 subject to the following provisions:

A.   Limits of liability and time limits stated below or elsewhere in this Policy are part of, and not in addition to, the Policy limit of liability.

B.   Limits of liability in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

1) when a limit of liability applies in the **aggregate during any policy year**, the Company's maximum amount payable will not exceed such limit of liability during any policy year.

2) when a limit of liability applies to a **location** or other specified property, such limit of liability will be the maximum amount payable for all loss or damage at all **locations** arising from physical loss or damage at such **location** or to such other specified property.

C.   Should an **occurrence** result in liability payable under more than one policy issued to the Named Insured by the Company, or its **representative companies**, the maximum amount payable in the aggregate under all such policies will be the applicable limit(s) of liability indicated in this Policy.

Applicable Limits of Liability/Time Limits:

| | |
|---|---|
| ACCIDENTAL INTERRUPTION OF SERVICES | USD5,000,000 |
| Ammonia Contamination | USD500,000 |
| ATTRACTION PROPERTY | 30 consecutive days |
| AUTOMATIC COVERAGE | 90 day period but not to exceed a USD100,000,000 limit, per **location** |
| CIVIL OR MILITARY AUTHORITY | 30 consecutive days |
| CLAIMS PREPARATION COSTS | USD100,000 plus 50% of the amount recoverable under this coverage in excess of USD 100,000 |
| COMMUNICABLE DISEASE RESPONSE | USD1,000,000 in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations or coverages involved. |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE combined | USD1,000,000 in the **aggregate during any policy year** |
| CONTINGENT TIME ELEMENT EXTENDED | USD25,000,000 (no further than tier 2) |

| | |
|---|---|
| CRISIS MANAGEMENT | No Coverage Provided |
| **earth movement** | USD200,000,000 in the **aggregate during any policy year** per Appendix A<br><br>No Coverage Provided for all other locations |
| ERRORS AND OMISSIONS | USD100,000,000 |
| EXPEDITING COSTS and EXTRA EXPENSE combined | USD100,000,000 |
| EXTENDED PERIOD OF LIABILITY | 545 day period |
| **fine arts** | USD100,000,000 but not to exceed a USD10,000 limit per item for **irreplaceable fine arts** not on a schedule on file with the Company |
| fines or penalties for breach of contract or for late or noncompletion of orders combined | USD100,000 |
| **flood** | USD250,000,000 limit in the **aggregate during any policy year** per Appendix A<br><br>No Coverage Provided for all other locations |
| INGRESS/EGRESS | 30 day period |
| INTERRUPTION BY COMMUNICABLE DISEASE | 12 month period but not to exceed a USD1,000,000 limit in the **aggregate during any policy year**<br><br>The Company's maximum limit of liability for COMMUNICABLE DISEASE RESPONSE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations or coverages involved. |
| LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL | USD250,000 in the **aggregate during any policy year** |
| LOGISTICS EXTRA COST | 180 day period but not to exceed 200% of the **normal cost** |

| MISCELLANEOUS PROPERTY | As respects property at a location: |
| | a)   USD100,000,000 per location |
| | As respects property not at a location: |
| | a)   USD100,000,000 |
| OFF PREMISES DATA SERVICES PROPERTY DAMAGE and OFF PREMISES DATA SERVICES TIME ELEMENT combined | USD1,000,000 in the aggregate during any policy year |
| Ordinary Payroll | 60 day period |
| SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT combined | USD10,000,000 |
| TERRORISM | USD5,000,000 in the aggregate during any policy year but not to exceed the following limits in the aggregate during any policy year: |
| | a)   USD5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY and TEMPORARY REMOVAL OF PROPERTY combined |
| | b)   USD5,000,000 for flood when caused by or resulting from terrorism |
| | The limits for TERRORISM shall not include the actual cash value portion of fire damage caused by terrorism. |
| | The limits for TERRORISM do not apply to the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S). |
| valuable papers and records | USD100,000,000 but not to exceed a USD10,000 limit per item for irreplaceable valuable papers and records not on a schedule on file with the Company |

| | |
|---|---|
| Landscape gardening, car parks, parking lots, pavement, roadways, railways, transformer enclosures or walkways.  Fill beneath car parks, parking lots, pavement, roadways, railways transformer enclosures, walkways, or buildings or structures | USD1,000,0000 |
| Water that is contained within any enclosed tank, piping systems or any other processing equipment | USD1,000,000 |

## 13.   DEDUCTIBLES

Subject to the deductible general provisions stated below, in each case of loss covered by this Policy the following deductibles apply:

| | |
|---|---|
| earthquake | a)   As respects locations in Washington<br><br>Property Damage: 2% will be applied to loss to that type of property on the following basis:<br><br>i)   Each separate building or structure where the direct physical loss or damage occurs;<br><br>ii)   All personal property within each building or structure where the direct physical loss or damage occurs;<br><br>iii)   All personal property in the open at each **location** where the direct physical loss or damage occurs.<br><br>Time Element: 2%, per **location**<br><br>Where a separate individual address is specified in the most current schedule of values, that will be considered one location or one building. |
| flood | USD100,000 combined all coverage, per **location** |
| LOGISTICS EXTRA COST | USD100,000 per **occurrence** |

| All Other Loss | USD100.000 combined all coverages. per occurrence |
|---|---|

Deductible General Provisions:

In each case of loss covered by this Policy. the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified above, and only for its share of that greater amount.

A.   For SERVICE INTERRUPTION loss. when a deductible is not specifically stated as applying to SERVICE INTERRUPTION, the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured **location** that sustains the interruption of the specified services.

B.   For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the **contingent time element location** was an insured **location** under this Policy.

C.   The stated earthquake deductible will be applied to earthquake loss. The stated **flood** deductible will be applied to **flood** loss. The stated **wind** deductible will be applied to **wind** loss. The provisions of item E below will also be applied to each.

D.   When this Policy insures more than one **location**, the deductible will apply against the total loss covered by this Policy in an **occurrence** except that a deductible that applies on a **per location** basis, if specified. will apply separately to each **location** where the physical damage happened regardless of the number of **locations** involved in the **occurrence.**

E.   Unless stated otherwise. if two or more deductibles apply to an **occurrence**, the total to he deducted will not exceed the largest deductible applicable. For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible. If two or more deductibles apply on a per **location** basis in an **occurrence**. the largest deductible applying to each **location** will be applied separately to each such **location**.

F.   When a % deductible is stated above. whether separately or combined, the deductible is calculated as follows:

Property Damage – % of the values per the Valuation clause(s) of PROPERTY DAMAGE section of the property insured at a **Location** where the physical damage happened..

Time Element – % of the full Time Element values that would have been earned in the 12 month period following the **occurrence** by use of the facilities at the **location** where the physical damage happened. plus that proportion of the full Time Element values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12 month period following the **occurrence.**

H.   For insured physical loss or damage:

1)   to insured fire protection equipment; or

2)   from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items 1 or 2 above only will be reduced by fifty percent (50%), per **occurrence**.  However, this provision will not apply to loss or damage resulting from fire or **earth movement** regardless of whether claim is made for such fire or **earth movement**.

## PROPERTY DAMAGE

### 1.    INSURED PROPERTY

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, to the extent of the interest of the Insured in such property:

A.    Real Property, including new buildings and additions under construction, in which the Insured has an insurable interest.

B.    Personal Property·

    1)    owned by the Insured.

    2)    consisting of the Insured's interest as a tenant in improvements and betterments.  In the event of physical loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or lease to the contrary.

    3)    of officers and employees of the Insured.

    4)    of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

    5)    of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to Personal Property.  The Company will defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage. The Company may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction at an insured **location** or within 1,000 feet/300 metres thereof, to the extent of the Insured's legal liability for insured physical loss or damage to such property.  Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

### 2.    EXCLUDED PROPERTY

The following exclusions apply unless otherwise stated in this Policy:

This Policy excludes:

A.    currency, money, notes or securities.

B.    precious metal in bullion form.

C.    land and any substance in or on land.  However, this exclusion does not apply to:

        1)   landscape gardening.

        2)   car parks, parking lots, pavement, roadways, railways, transformer enclosures or walkways.

        3)   fill beneath car parks, parking lots, pavement, roadways, railways, transformer enclosures, walkways, or buildings and structures.

D.    water. However, this exclusion does not apply to:

        1)   water that is contained within any enclosed tank, piping system or any other processing equipment.

E.    animals, standing timber or growing crops.

F.    watercraft or aircraft, except when unfueled and manufactured by the Insured.

G.    vehicles of officers or employees of the Insured or vehicles otherwise insured for physical loss or damage.

H.    underground mines or mine shafts or any property within such mine or shaft.

I.    dams or dikes.

J.    property in transit, except as otherwise provided by this Policy.

K.    property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers, except as provided by the INSTALLMENT OR DEFERRED PAYMENTS coverage of this Policy

L.    electronic data, programs or software, except when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured, or as otherwise provided by the DATA, PROGRAMS OR SOFTWARE coverage of this Policy.

M.    personal property of condominium owners in Lincoln Square Condominiums in Bellevue Washington

## 3.   EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

A.    This Policy excludes:

        1)   indirect or remote loss or damage.

        2)   interruption of business, except to the extent provided by this Policy

        3)   loss of market or loss of use.

4) loss or damage or deterioration arising from any delay.

5) mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6) loss from enforcement of any law or ordinance:

    a) regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

    b) requiring the demolition of any property, including the cost in removing its debris;

    except as provided by the DECONTAMINATION COSTS and LAW AND ORDINANCE coverages of this Policy.

7) loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

B. This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) nuclear reaction or nuclear radiation or radioactive contamination. However:

    a) if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination.

    b) this Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the insured **location**, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the insured **location**. This coverage does not apply to any act, loss or damage excluded in item B2f of this EXCLUSIONS clause.

    This exclusion B1 and the exceptions in B1a and B1b do not apply to any act, loss or damage which also comes within the terms of exclusion B2b of this EXCLUSIONS clause.

2) a) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

      (i) government or sovereign power (de jure or de facto);

      (ii) military, naval or air force; or

      (iii) agent or authority of any party specified in i or ii above.

b) discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

c) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

d) seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

e) risks of contraband, or illegal transportation or trade.

f) **terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the TERRORISM coverage of the Policy. However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the **actual cash value** of the resulting direct loss or damage by fire to property insured. This coverage exception for such resulting fire loss or damage does not apply to:

(i) direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

(ii) any coverage provided in the TIME ELEMENT section of this Policy or to any other coverages provided in this Policy.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2a of this EXCLUSIONS clause then item B2a applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2b of this EXCLUSIONS clause then item B2b applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2c of this EXCLUSIONS clause then item B2c applies in place of this item B2f exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this item B2f exclusion applies in place of item B1 of this EXCLUSIONS clause.

3) any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. This coverage does not apply to any act excluded in B2f of this EXCLUSIONS clause. In no event does this Policy cover loss by theft by any individual specified in a or b above.

4) lack of the following services:

a) incoming electricity, fuel, water, gas, steam or refrigerant;

b) outgoing sewerage;

c) incoming or outgoing voice, data or video,

all when caused by an event off the insured **location**, except as provided in the SERVICE INTERRUPTION and OFF PREMISES DATA SERVICES coverages of this Policy. But, if the lack of such a service directly causes insured physical damage on the insured **location**, then only that resulting damage is insured.

C.  This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1) faulty workmanship, material, construction or design from any cause.

2) loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

3) deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

4) settling, cracking, shrinking, bulging, or expansion of:

a) foundations (including any pedestal, pad, platform or other property supporting machinery).

b) floors.

c) pavements.

d) walls.

e)   ceilings.

f)   roofs.

5)   a)   changes of temperature damage (except to machinery or equipment); or

b)   changes in relative humidity damage,

all whether atmospheric or not.

6)   insect, animal or vermin damage.

7)   loss or damage to the interior portion of buildings under construction from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

D.   This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1)   **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.  If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.  This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

2)   shrinkage.

3)   changes in color, flavor, texture or finish.

## 4.   APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

With respect to situations caused by any **date or time recognition** problem by **electronic data processing equipment or media** (such as the so-called Year 2000 problem), this Policy applies as follows.

A.   This Policy does not pay for remediation, change, correction, repair or assessment of any **date or time recognition** problem, including the Year 2000 problem, in any **electronic data processing equipment or media**, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property.  This Policy does not pay for any TIME ELEMENT loss resulting from the foregoing remediation, change, correction, repair or assessment.

B.   Failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not insured physical loss or damage.  This Policy does not pay for any such incident or for any TIME ELEMENT loss resulting from any such incident.

Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000. Such covered resulting physical loss or damage does not include any loss, cost or expense described in A or B above. If such covered resulting physical loss or damage happens, and if this Policy provides TIME ELEMENT coverage, then, subject to all of its terms and conditions, this Policy also covers any insured Time Element loss directly resulting therefrom.

5. **VALUATION**

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the place of the loss, and for no more than the interest of the Insured.

Unless stated otherwise in an Additional Coverage, adjustment of physical loss to property will be subject to the following:

A. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

B. On finished goods manufactured by the Insured, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no loss happened.

C. On raw materials, supplies or other merchandise not manufactured by the Insured:

  1) if repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

  2) if not repaired or replaced, the **actual cash value**.

D. On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

E. On property that is damaged by fire and such fire is the result of **terrorism**, the **actual cash value** of the fire damage loss. Any remaining fire damage loss shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy and shall be subject to the limit(s) of liability for TERRORISM, and if stated the limit of liability for SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT, as shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

F. On all other property, the lesser of the following:

  1) The cost to repair.

  2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

4) The selling price of real property or machinery and equipment, other than stock, offered for sale on the date of loss.

5) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

6) The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

7) The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

8) The actual cash value if such property is:

   a) useless to the Insured; or

   b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company.

The Insured may elect not to repair or replace the insured real or personal property lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an insured location under this Policy. This item does not extend to LAW AND ORDINANCE.

## 6. ADDITIONAL COVERAGES

This Policy includes the following Additional Coverages for insured physical loss or damage.

These Additional Coverages:

1) are subject to the applicable limit of liability;

2) will not increase the Policy limit of liability; and

3) are subject to the Policy provisions, including applicable exclusions and deductibles.

all as shown in this section and elsewhere in this Policy.

## CYBER ADDITIONAL COVERAGES

### A.   DATA, PROGRAMS OR SOFTWARE

This Policy covers insured **physical loss or damage to electronic data, programs or software**, including physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's TERRITORY, including while in transit.

With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this Additional Coverage will apply when the Period of Liability is in excess of 48 hours.

This Additional Coverage also covers:

1) the cost of the following reasonable and necessary actions taken by the Insured provided such actions are taken due to actual insured **physical loss or damage to electronic data, programs or software:**

   a) actions to temporarily protect and preserve insured electronic data, programs or software.

   b) actions taken for the temporary repair of insured **physical loss or damage to electronic data, programs or software.**

   c) actions taken to expedite the permanent repair or replacement of such damaged property.

2) the reasonable and necessary costs incurred by the Insured to temporarily protect or preserve insured electronic data, programs or software against immediately impending insured **physical loss or damage to electronic data, programs or software.**  In the event that there is no physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such physical loss or damage.

Costs recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage excludes loss or damage to data, programs or software when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured.

DATA, PROGRAMS OR SOFTWARE Exclusions: As respects DATA, PROGRAMS OR SOFTWARE, the following applies:

1) the exclusions in the EXCLUSIONS clause of this section do not apply except for A1, A2, A6, B1, B2, B3a and B4.

2) the following additional exclusions apply:

   This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

a) errors or omissions in processing or copying.

b) loss or damage to data, programs or software from errors or omissions in programming or machine instructions.

c) deterioration, inherent vice, vermin or wear and tear.

DATA, PROGRAMS OR SOFTWARE Valuation: On property covered under this Additional Coverage the loss amount will not exceed:

1) the cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer;

2) if not repaired, replaced or restored within two years from the date of loss, the blank value of the media.

## B.   OFF PREMISES DATA SERVICES PROPERTY DAMAGE

This Policy covers insured physical loss or damage to insured property at an insured **location** when such physical loss or damage results from the interruption of **off-premises data processing or data transmission services** by reason of any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

For the purposes of this Additional Coverage:

1) facilities of the provider of **off-premises data processing or data transmission services** must be located within the policy TERRITORY and

2) an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This Additional Coverage will apply when the period of interruption of **off-premises data processing or data transmission services** as described below is in excess of 24 hours.

The period of interruption of **off-premises data processing or data transmission services** is the period starting with the time when an interruption of provided services happens, and ending when with due diligence and dispatch the service could be wholly restored.

Additional General Provisions:

1) The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

OFF PREMISES DATA SERVICES PROPERTY DAMAGE Exclusions: As respects OFF PREMISES DATA SERVICES PROPERTY DAMAGE, the following applies:

1) Item B4 of the EXCLUSIONS clause in the PROPERTY DAMAGE section does not apply except for B4 with respect to:

   a) incoming electricity, fuel, water, gas, steam or refrigerant; and

   b) outgoing sewerage

2) The following additional exclusions apply:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a) **earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

   b) **terrorism.**

## OTHER ADDITIONAL COVERAGES

### A.   ACCIDENTAL INTERRUPTION OF SERVICES

This Policy covers physical damage resulting from changes in temperature or relative humidity to insured property at an insured **location** when such changes in temperature or relative humidity result from the interruption of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at the insured **location.**

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

The period of service interruption is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored.

### B.   ACCOUNTS RECEIVABLE

This Policy covers the following directly resulting from insured physical loss or damage to accounts receivable records while anywhere within this Policy's TERRITORY, including while in transit:

1) any shortage in the collection of accounts receivable.

2) the interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable

3) the reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

4) any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

Accounts receivable records will include accounts receivable records stored as electronic data.

In the event of loss, the Insured will:

1) use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

2) reduce loss by use of any suitable property or service:

    a) owned or controlled by the Insured; or

    b) obtainable from other sources.

3) reconstruct, if possible, accounts receivable records so that no shortage is sustained.

The settlement of loss will be made within 90 days from the date of physical loss or damage. All amounts recovered by the Insured on outstanding accounts receivable on the date of loss will belong and be paid to the Company up to the amount of loss paid by the Company. All recoveries exceeding the amount paid will belong to the Insured.

ACCOUNTS RECEIVABLE Exclusions: As respects ACCOUNTS RECEIVABLE, the following additional exclusions apply:

This Policy does not insure against shortage resulting from:

1) bookkeeping, accounting or billing errors or omissions; or

2) a) alteration, falsification, manipulation; or

    b) concealment, destruction or disposal.

    of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding

## C.   AUTOMATIC COVERAGE

This Policy covers insured physical loss or damage to insured property at any location purchased, leased or rented by the Insured after the inception date of this Policy.

This Additional Coverage applies:

1) from the date of purchase, lease or rental.

2) until the first of the following:

   a) the location is bound by the Company.

   b) agreement is reached that the location will not be insured under this Policy.

   c) the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached.  The time limit begins on the date of purchase, lease or rental.

## D.   BRANDS AND LABELS

If branded or labeled insured property is physically damaged and the Company elects to take all or any part of that property, the Insured may at the Company's expense:

1) stamp "salvage" on the property or its containers; or

2) remove or obliterate the brands or labels.

if doing so will not damage the property.

The Insured must relabel such property or its containers to be in compliance with any applicable law.

## E.   CLAIMS PREPARATION COSTS

This Policy covers the actual costs incurred by the Insured:

1) of reasonable fees payable to the Insured's: accountants, architects, auditors, engineers, or other professionals; and

2) the cost of using the Insured's employees.

for producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from insured loss payable under this Policy for which the Company has accepted liability

This Additional Coverage will not cover the fees and costs of:

1) attorneys, public adjusters, and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them.

2) loss consultants who provide consultation on coverage or negotiate claims.

This Additional Coverage is subject to the deductible that applies to the loss.

**F.   COMMUNICABLE DISEASE RESPONSE**

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1)   an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2)   a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:

1)   cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

2)   actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease**.

COMMUNICABLE DISEASE RESPONSE Exclusions: As respects COMMUNICABLE DISEASE RESPONSE, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1)   **terrorism**.

**G.   CONSEQUENTIAL REDUCTION IN VALUE**

This Policy covers the reduction in value of insured merchandise that is a part of pairs, sets, or components, directly resulting from insured physical loss or damage to other insured parts of pairs, sets or components of such merchandise. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such merchandise to the Company.

**H.   CONTROL OF DAMAGED PROPERTY**

This Policy gives control of physically damaged property consisting of finished goods manufactured by the Insured or manufactured by others and held by the Insured for resale as follows:

1) the Insured will have full rights to the possession and control of damaged property in the event of insured physical damage to such property provided proper testing is done to show which property is physically damaged.

2) the Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

3) property so judged by the Insured to be unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

4) any salvage proceeds received will go to the:

   a) Company at the time of loss settlement; or

   b) Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

## I.    DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an insured **location** that remains as a direct result of insured physical loss or damage.

This Additional Coverage does not cover the costs of removal of:

1) contaminated uninsured property; or

2) the **contaminant** in or on uninsured property,

whether or not the **contamination** results from insured physical loss or damage. This Additional Coverage covers the costs of removal of contaminated insured property or the **contaminant** in or on insured property only if the **contamination**, due to the actual not suspected presence of **contaminant(s)**, of the debris resulted directly from other physical damage not excluded by the Policy.

## J.    DECONTAMINATION COSTS

If insured property is contaminated as a direct result of insured physical damage and there is in force at the time of the loss any law or ordinance regulating **contamination** due to the actual not suspected presence of **contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This Additional Coverage applies only to that part of insured property so contaminated due to the actual not suspected presence of **contaminant(s)** as a direct result of insured physical damage

The Company is not liable for the costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** results from an insured event.

**K.    ERRORS AND OMISSIONS**

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

1)   in the description of where insured property is physically located;

2)   to include any **location**:

    a)   owned, leased or rented by the Insured on the effective date of this Policy; or

    b)   purchased, leased or rented by the Insured during the term of this Policy; or

3)   that results in cancellation of the property insured under this Policy;

this Policy covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Company when discovered and corrected.

4)   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

    a)   **earth movement** for property located in California, **New Madrid Seismic Zone** or in **Pacific Northwest Seismic Zone**

**L.    EXPEDITING COSTS**

This Policy covers the reasonable and necessary costs incurred:

1)   for the temporary repair of insured physical damage to insured property;

2)   for the temporary replacement of insured equipment suffering insured physical damage; and

3)   to expedite the permanent repair or replacement of such damaged property.

This Additional Coverage does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**M.   FINE ARTS AND VALUABLE PAPERS AND RECORDS**

This Policy covers insured physical loss or damage to **fine arts** and **valuable papers and records** while anywhere within this Policy's TERRITORY, including while in transit.

FINE ARTS AND VALUABLE PAPERS AND RECORDS Exclusions: As respects FINE ARTS AND VALUABLE PAPERS AND RECORDS, the following applies:

1)   the exclusions in the EXCLUSIONS clause of this section do not apply except for A1, A2, A6, A7, B1, B2, B3a and B4.

2)   the following additional exclusions apply:

This Policy excludes:

a)   currency, money, securities.

b)   errors or omissions in processing or copying of **valuable papers and records**, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured.

c)   deterioration, inherent vice, or wear and tear, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured.

d)   fungus, mold or mildew unless directly resulting from other physical damage not excluded by this Policy.

e)   loss or damage to **fine arts** from any repairing, restoration or retouching process.

FINE ARTS AND VALUABLE PAPERS AND RECORDS Valuation: On property covered under this Additional Coverage the loss amount will not exceed the lesser of the following:

1)   the cost to repair or restore such property to the physical condition that existed on the date of loss.

2)   the cost to replace.

3)   the value, if any, designated for the item on the schedule on file with the Company.

If a **fine arts** article is part of a pair or set, and a physically damaged article cannot be replaced, or repaired or restored to the condition that existed immediately prior to the loss, the Company will be liable for the lesser of the full value of such pair or set or the amount designated on the schedule.  The Insured agrees to surrender the pair or set to the Company.

**N.   INSTALLMENT OR DEFERRED PAYMENTS**

This Policy covers insured physical loss or damage to personal property of the type insured sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer.  Coverage is limited to the unpaid balance for such property.

In the event of loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1) pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.

2) from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3) to the extent the buyer continues payments.

4) not within the TERRITORY of this Policy.

INSTALLMENT OR DEFERRED PAYMENTS Valuation: On property covered under this Additional Coverage the loss amount will not exceed the lesser of the following:

1) total amount of unpaid installments less finance charges.

2) **actual cash value** of the property at the time of loss.

3) cost to repair or replace with material of like size, kind and quality.

**O.     LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL**

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of **contaminant(s)** from uninsured property consisting of land, water or any other substance in or on land at the insured **location** if the release, discharge or dispersal of such **contaminant(s)** is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of **contamination** from such property:

1) at any **location** insured for Personal Property only.

2) at any property insured under AUTOMATIC COVERAGE, ERRORS AND OMISSIONS or MISCELLANEOUS PROPERTY coverage provided by this Policy.

3) when the Insured fails to give written notice of loss to the Company within 180 days after inception of the loss.

**P.     LAW AND ORDINANCE**

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

1) such law or ordinance is enforced as a direct result of insured physical loss or damage at an insured location:

2) such law or ordinance is in force at the time of such loss or damage; and

3) such location was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

1) demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

2) repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

The Company's maximum liability for this Coverage A at each insured location in any occurrence will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

1) the reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

2) the cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

LAW AND ORDINANCE Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

1) the actual cash value; and

2) the cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

LAW AND ORDINANCE Exclusions: As respects LAW AND ORDINANCE, the following additional exclusions apply:

This Policy does not cover:

1) any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

2) any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

## Q.   LOSS PAYMENT INCREASED TAX LIABILITY

This Policy covers the increase in tax liability as described herein incurred by the Insured.

Coverage A:

The increase in tax liability from an insured loss at an insured **location** if the tax treatment of:

1) the profit portion of a loss payment under this Policy involving finished stock manufactured by the Insured; and/or

2) the profit portion of a TIME ELEMENT loss payment under this Policy:

is greater than the tax treatment of profits that would have been incurred had no loss happened.

## R.   MACHINERY OR EQUIPMENT STARTUP OPTION

After insured machinery or equipment that has sustained insured physical loss or damage is repaired or replaced and such machinery or equipment is undergoing startup, the following applies:

If physical loss or damage of the type insured directly results to such machinery or equipment from such startup, the Insured shall have the option of claiming such resulting insured damage as part of the original event of physical loss or damage or as a separate **occurrence**.

This Additional Coverage applies only:

1) to the first startup event after the original repair or replacement; and

2) when the first startup event happens during the term of this Policy or its renewal issued by the Company.

For the purposes of this Additional Coverage, startup means:

1)  the introduction into machinery or equipment of feedstock or other materials for processing or handling;

2)  the commencement of fuel or energy supply to machinery or equipment.

## S.   MISCELLANEOUS PROPERTY

This Policy covers insured physical loss or damage to:

1)  insured property;

2)  property of the type insured that is under contract to be used in a construction project at an insured location:

    a)  from the time such property is delivered to the Insured or their contractor (with respect to the property under construction) by the manufacturer or supplier;

    b)  while such property is located at a storage site; and

    c)  while such property is in transit from a storage site to another storage site or to a construction project at an insured location,

    that does not include any such property owned or rented by the contractor;

while anywhere within this Policy's TERRITORY, including while in transit.

This Additional Coverage excludes property covered elsewhere in this Policy.

MISCELLANEOUS PROPERTY Exclusions: As respects MISCELLANEOUS PROPERTY, the following additional exclusions apply:

1)  This Policy excludes:

    a)  **transmission and distribution systems.**

    b)  property insured under import or export ocean marine insurance.

    c)  property shipped between continents.

    d)  airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

    e)  property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

5)  This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

a) **earth movement** for property located in California, **New Madrid Seismic Zone** or in **Pacific Northwest Seismic Zone**

## T.    OPERATIONAL TESTING

This Policy covers insured physical loss or damage to insured property during the **period of operational testing**.

This Additional Coverage excludes property, including stock or material, manufactured or processed by the Insured.

## U.    PROTECTION AND PRESERVATION OF PROPERTY

This Policy covers:

1)  reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

2)  reasonable and necessary:

    a)  fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the insured property.

    b)  costs incurred of restoring and recharging fire protection systems following an insured loss.

    c)  costs incurred for the water used for fighting a fire in, on or exposing the insured property.

This Additional Coverage does not cover costs incurred for actions to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by TERRORISM coverage as provided in this section of the Policy.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## V.    SERVICE INTERRUPTION PROPERTY DAMAGE

This Policy covers insured physical loss or damage to insured property at an insured **location** when such physical loss or damage results from the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable service.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

The period of service interruption is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored.

Additional General Provisions:

1) The Insured will immediately notify the suppliers of services of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

SERVICE INTERRUPTION PROPERTY DAMAGE Exclusions: As respects SERVICE INTERRUPTION PROPERTY DAMAGE, the following applies:

1) The exclusions in the EXCLUSIONS clause in this section do not apply except for:

   a) A1, A2, A3, A6, B1, B2, and

   b) B4 with respect to incoming or outgoing voice, data or video, and

   c) D1 except with respect to fungus, mold or mildew.

2) The following additional exclusions apply:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a) **terrorism**

   b) **earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

## W.   TEMPORARY REMOVAL OF PROPERTY

When insured property is removed from an insured **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, this Policy covers such property:

1) while at the premises to which such property has been moved; and

2) for physical loss or damage as provided at the insured **location** from which such property was removed.

This Additional Coverage does not apply to property:

1) insured, in whole or in part, elsewhere in this Policy.

2)  insured, in whole or in part, by any other insurance policy.

3)  removed for normal storage, processing or preparation for sale or delivery.

## X.   TERRORISM

This Policy covers physical loss or damage to property as described in the INSURANCE PROVIDED provision caused by or resulting from **terrorism**.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion, or any other risk of physical loss or damage covered elsewhere in this Policy.

Amounts recoverable under this Additional Coverage are excluded from coverage elsewhere in this Policy.

This Additional Coverage does not cover loss or damage which also comes within the terms of either item B2a or B2c of the EXCLUSIONS clause in this section of the Policy.

This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy contributing concurrently or in any other sequence to the loss:

1)  that involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act; or

2)  that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3)  in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

4)  that involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**.

## Y.   TRANSPORTATION

This Policy covers the following personal property, except as excluded by this Policy, while in transit within the TERRITORY of this Policy:

1)  owned by the Insured.

2)  shipped to customers under F.O.B., C & F or similar terms. The Insured's contingent interest in such shipments is admitted.

3) of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

4) of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery including:

    a) when shipped by the Insured's direct contract service provider or by the Insured's direct contract manufacturer to the Insured or to the Insured's customer.

    b) when shipped by the Insured's customer to the Insured or to the Insured's contract service provider or to the Insured's contract manufacturer.

Coverage Attachment and Duration:

1) This Additional Coverage covers from the time the property leaves the original point of shipment for transit. It then covers continuously in the due course of transit:

    a) within the continent in which the shipment commences until the property arrives at the destination within such continent; or

    b) between Europe and Asia, for land or air shipments only, from when the shipment commences until the property arrives at the destination.

2) However, coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

This Additional Coverage:

1) covers general average and salvage charges on shipments covered while waterborne.

2) insures physical loss or damage caused by or resulting from:

    a) unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

    b) improper parties having gained possession of property through fraud or deceit.

Additional General Provisions:

1) This Additional Coverage will not inure directly or indirectly to the benefit of any carrier or bailee.

2) The Insured has permission, without prejudicing this insurance, to accept:

    a) ordinary bills of lading used by carriers;

    b) released bills of lading;

    c)  undervalued bills of lading; and

    d)  shipping or messenger receipts.

3)  The Insured may waive subrogation against railroads under side track agreements.

Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

TRANSPORTATION Exclusions: As respects TRANSPORTATION, the following applies:

1)  the exclusions in the EXCLUSIONS clause of this section do not apply except for A1 through A4, B1 through B4, C1, C3, C5, C6, D1 through D3.

2)  the following additional exclusions apply:

This Policy excludes:

a)  samples in the custody of salespeople or selling agents.

b)  property insured under import or export ocean marine insurance.

c)  waterborne shipments, unless:

    (i)  by inland water; or

    (ii) by roll-on/roll-off ferries operating between European ports; or

    (iii) by coastal shipments.

d)  airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

e)  property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

f)  any transporting vehicle.

g)  property shipped between continents, except by land or air between Europe and Asia.

TRANSPORTATION Valuation: On property covered under this Additional Coverage the loss amount will not exceed:

1)  Property shipped to or for the account of the Insured will be valued at actual invoice to the Insured. Included in the value are accrued costs and charges legally due. Charges may include the Insured's commission as selling agent

2) Property sold by the Insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount.  Prepaid or advanced freight costs are included.

3) Property not under invoice will be valued:

   a) for property of the Insured, at the valuation provisions of this Policy applying at the place from which the property is being transported, or

   b) for other property, at the actual cash market value at the destination point on the date of loss,

   less any charges saved which would have become due and payable upon arrival at destination.

## TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGE EXTENSIONS of this section of the Policy:

A.   is subject to the applicable limit of liability that applies to the insured physical loss or damage but in no event for more than any limit of liability that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGE EXTENSION; and

B.   will not increase the Policy limit of liability; and

C.   is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

## 1.   LOSS INSURED

A.   This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from physical loss or damage of the type insured:

1)   to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;

2)   used by the Insured, or for which the Insured has contracted use;

3)   while located as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, or as described in the TEMPORARY REMOVAL OF PROPERTY provision; or

4)   while in transit as provided by this Policy; and

5)   during the Periods of Liability described in this section.

provided such loss or damage is not at a **contingent time element location.**

B.   This Policy insures TIME ELEMENT loss only to the extent it cannot be reduced through:

1)   the use of any property or service owned or controlled by the Insured;

2)   the use of any property or service obtainable from other sources;

3)   working extra time or overtime; or

4)   the use of inventory.

all whether at an insured **location** or at any other premises. The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the TIME ELEMENT loss.

C.  This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this section of this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.  In determining the amount of loss payable, the Company will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. The probable experience will consider any increase or decrease in demand for the Insured's goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused physical loss or damage starting the PERIOD OF LIABILITY.

## 2.  TIME ELEMENT COVERAGES

### A.  GROSS EARNINGS

Measurement of Loss:

1)  The recoverable GROSS EARNINGS loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

a)  Gross Earnings;

b)  less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

c)  less ordinary payroll; and

d)  plus all other earnings derived from the operation of the business.

e)  Ordinary Payroll, including taxes and charges dependent on the payment of wages:

(i)  for a period of time of not more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section immediately following the interruption of production or suspension of business operations or services. and

(ii)  only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if an Insured reduces the daily loss payable under Ordinary Payroll. either by:

(i)  providing gainful employment for, or

(ii)  paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of Ordinary Payroll may be extended. However, this provision will not increase the total liability of this Company beyond the amount it would have been liable for Ordinary Payroll costs

without this provision. Ordinary Payroll does not cover any portion of salaries or wages included in Gross Earnings.

2) For the purposes of the Measurement of Loss, Gross Earnings is:

for manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

for mercantile or non-manufacturing operations: the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured.

Any amount recovered under property damage coverage at selling price will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

3) In determining the indemnity payable as the Actual Loss Sustained, the Company will consider the continuation of only those normal charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

4) If the Insured would have operated at a deficit had no interruption of production or suspension of business operations or services happened, the following applies:

   a) for Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

   b) for Ordinary Payroll, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

5) There is recovery hereunder to the extent that the Insured is:

   a) wholly or partially prevented from producing goods or continuing business operations or services;

   b) unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

   c) unable to continue such operations or services during the PERIOD OF LIABILITY; and

   d) able to demonstrate a loss of sales for the operations, services or production prevented.

## B.   EXTRA EXPENSE

Measurement of Loss:

The recoverable EXTRA EXPENSE loss will be the reasonable and necessary extra costs incurred by the Insured of the following during the PERIOD OF LIABILITY:

1) extra expenses to temporarily continue as nearly **normal** as practicable the conduct of the Insured's business;

2) extra costs of temporarily using property or facilities of the Insured or others; and

3) costs to purchase finished goods from third parties to fulfill orders when such orders cannot be met due to physical loss or damage to the Insured's finished goods, less payment received for the sale of such finished goods.

less any value remaining at the end of the PERIOD OF LIABILITY for property obtained in connection with the above.

The PERIOD OF LIABILITY for EXTRA EXPENSE coverage will be the PERIOD OF LIABILITY applicable to GROSS EARNINGS.

EXTRA EXPENSE Exclusions: As respects EXTRA EXPENSE, the following applies:

1) TIME ELEMENT EXCLUSIONS C does not apply to item 3 above.

2) The following additional exclusions apply:

   This Policy does not insure:

   a) any loss of income;

   b) costs that usually would have been incurred in conducting the business during the same period had no physical loss or damage happened.

   c) costs of permanent repair or replacement of property that has been damaged or destroyed. However, this exclusion does not apply to item 3 above.

   d) any expense recoverable elsewhere in this Policy.

## C.   LEASEHOLD INTEREST

Measurement of Loss:

The recoverable LEASEHOLD INTEREST incurred by the Insured of the following:

1) If the lease agreement requires continuation of rent; and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

2) If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law; the Lease Interest for the first three months following the loss; and the Net Lease Interest for the remaining unexpired term of the lease.

3) As used above, the following terms mean:

Net Lease Interest:
That sum which placed at 6% interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

Lease Interest:
The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

LEASEHOLD INTEREST Exclusions: As respects LEASEHOLD INTEREST, the following applies:

1) This Policy does not insure loss directly resulting from physical loss or damage to Personal Property.

2) TIME ELEMENT EXCLUSIONS A, B and C do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

## D.   RENTAL INSURANCE

Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

1) the fair rental value of any portion of the property occupied by the Insured;

2) the income reasonably expected from rentals of unoccupied or unrented portions of such property; and

3) the rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss.

all not to include noncontinuing charges and expenses.

RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS A does not apply and the following applies instead:

This Policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.

**3.    PERIOD OF LIABILITY**

A.    The PERIOD OF LIABILITY applying to all TIME ELEMENT COVERAGES, except LEASEHOLD INTEREST and as shown below or if otherwise provided under any TIME ELEMENT COVERAGE EXTENSION, and subject to any Time Limit provided in the LIMITS OF LIABILITY clause in the DECLARATIONS section, is as follows:

   1)   For building and equipment, the period:

        a)   starting from the time of physical loss or damage of the type insured: and

        b)   ending when with due diligence and dispatch the building and equipment could be:

             (i)   repaired or replaced: and

             (ii)  made ready for operations.

             under the same or equivalent physical and operating conditions that existed prior to the damage.

        c)   not to be limited by the expiration of this Policy.

   2)   For building and equipment under construction:

        a)   the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

        b)   due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

   3)   For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the time required with the exercise of due diligence and dispatch:

        a)   to restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services: and

        b)   to replace physically damaged mercantile stock.

        This item does not apply to RENTAL INSURANCE.

   4)   For raw materials and supplies, the period of time:

        a)   of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged: but

b) limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

5) If water:

    a) used for any manufacturing purpose, including but not limited to as a raw material or for power;

    b) stored behind dams or in reservoirs; and

    c) on any insured **location**,

is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, the Company's liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

This item does not apply to RENTAL INSURANCE.

6) For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

This item does not apply to RENTAL INSURANCE.

7) For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

This item does not apply to RENTAL INSURANCE.

D. The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations for any reason, including but not limited to:

1) making changes to the buildings, structures, machinery or equipment except as provided in the LAW AND ORDINANCE clause in the PROPERTY DAMAGE section.

2) restaffing or retraining employees. However, this item does not apply to additional time needed to train staff to use new machinery or equipment that replaces machinery or equipment that suffered insured physical loss or damage, provided such training is completed within 90 consecutive days after the new machinery or equipment has been installed.

If two or more Periods of Liability apply such periods will not be cumulative.

**4.    TIME ELEMENT EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

This Policy does not insure:

A.    Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

    1)    physical loss or damage not insured by this Policy on or off of the insured **location**.

    2)    planned or rescheduled shutdown.

    3)    strikes or other work stoppage.

    4)    any other reason other than physical loss or damage insured under this Policy.

B.    Any increase in loss due to:

    1)    suspension, cancellation or lapse of any lease, contract, license or orders.

    2)    damages for breach of contract or for late or noncompletion of orders.

    3)    fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

    4)    any other consequential or remote loss.

C.    Any loss resulting from physical loss or damage to finished goods manufactured by the insured, or the time required for their reproduction.

D.    Any loss resulting from the **actual cash value** portion of direct physical loss or damage by fire caused by or resulting from **terrorism**.

E.    Any Loss resulting from physical loss or damage to building and equipment under construction when the period of interruption is less than or equal to 10 days

**5.    TIME ELEMENT COVERAGE EXTENSIONS**

This Policy also insures TIME ELEMENT loss, as provided by the TIME ELEMENT COVERAGES of this Policy, for the TIME ELEMENT COVERAGE EXTENSIONS described below

## CYBER TIME ELEMENT COVERAGE EXTENSIONS

### A.   COMPUTER SYSTEMS NON PHYSICAL DAMAGE

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption directly resulting from:

1) the failure of the Insured's **electronic data processing equipment or media** to operate, provided that such failure is the direct result of a malicious act directed at the NAMED INSURED; or

2) the Insured's reasonable action to temporarily protect the Insured's **electronic data processing equipment or media** against an actual or immediately impending malicious act directed at the NAMED INSURED, provided such action is necessary to prevent failure of the Insured's **electronic data processing equipment or media** to operate.

For the purposes of this extension, the Insured's **electronic data processing equipment or media** must be located within the policy TERRITORY.

As respects item 1 above, this Extension will apply when the period of interruption is in excess of 48 hours.

As used above, the period of interruption:

1) is the period starting when the Insured's **electronic data processing equipment or media** fails to operate and ending when with due diligence and dispatch, the Insured's **electronic data processing equipment or media** could be restored to the same or equivalent operating condition that existed prior to the failure.

2) does not include the additional time to make changes to the Insured's **electronic data processing equipment or media.**

### B.   OFF PREMISES DATA SERVICES TIME ELEMENT

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption at an insured **location** of **off-premises data processing or data transmission services**, when the interruption is caused by any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

For the purposes of this Additional Coverage:

1) facilities of the provider of **off-premises data processing or data transmission services** must be located within the policy TERRITORY.

2) an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This Extension will apply when the period of interruption of **off-premises data processing or data transmission services** is in excess of 24 hours

Additional General Provisions:

1) The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Coverage provided in this Extension is excluded from coverage elsewhere in this Policy.

This Extension does not cover Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured covered by COMPUTER SYSTEMS NON PHYSICAL DAMAGE coverage as provided in this section of the Policy.

OFF PREMISES DATA SERVICES TIME ELEMENT Exclusions: As respects OFF PREMISES DATA SERVICES TIME ELEMENT, the following applies:

1) Item B4 of the EXCLUSIONS clause in the PROPERTY DAMAGE section does not apply except for B4 with respect to:

   a) incoming electricity, fuel, water, gas, steam or refrigerant; and

   b) outgoing sewerage.

2) The following additional exclusions apply:

   This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event. whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

   a) **earth movement** for property located in California. in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

   b) **terrorism**.

As used above. the period of interruption of **off-premises data processing or data transmission services:**

1) is the period starting with the time when an interruption of provided services happens: and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

2) is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

3) does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

## SUPPLY CHAIN TIME ELEMENT COVERAGE EXTENSIONS

### A.    CIVIL OR MILITARY AUTHORITY

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

This Extension does not apply to LEASEHOLD INTEREST.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of such physical damage; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

### B.    CONTINGENT TIME ELEMENT EXTENDED

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured at **contingent time element locations** located within the TERRITORY of this Policy.

As respects CONTINGENT TIME ELEMENT EXTENDED:

1) Time Element loss recoverable under this Extension is extended to include the following TIME ELEMENT COVERAGE EXTENSIONS:

CIVIL OR MILITARY AUTHORITY
CONTINGENT TIME ELEMENT EXTENDED
DELAY IN STARTUP
EXTENDED PERIOD OF LIABILITY
INGRESS/EGRESS
OFF PREMISES DATA SERVICES TIME ELEMENT
ON PREMISES SERVICES
SERVICE INTERRUPTION TIME ELEMENT

2) The Insured will influence and cooperate with the **contingent time element location** in every way and take any reasonable and necessary action to mitigate the loss payable hereunder.

3) TIME ELEMENT EXCLUSIONS C does not apply.

CONTINGENT TIME ELEMENT EXTENDED Exclusions: As respects CONTINGENT TIME ELEMENT EXTENDED. the following additional exclusions apply:

This Policy does not insure loss resulting from:

1) lack of incoming or outgoing transmission of voice. data or video.

2) physical loss or damage caused by or resulting from **terrorism**. regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence of loss.

3) **earth movement** as respects a direct or indirect customer. supplier. contract manufacturer or contract service provider located in California. in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**

## C.   INGRESS/EGRESS

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured **location**, whether or not the premises or property of the Insured is damaged. provided that such prevention is a direct result of physical damage of the type insured to property of the type insured.

INGRESS/EGRESS Exclusions: As respects INGRESS/EGRESS. the following additional exclusions apply:

This Policy does not insure loss resulting from:

1) lack of incoming or outgoing service consisting of electric. fuel. gas. water. steam. refrigerant. sewerage and voice. data or video.

2) picketing or other action by strikers except for physical damage not excluded by this Policy.

3) physical loss or damage caused by or resulting from **terrorism**. regardless of any other cause or event. whether or not insured under this Policy. contributing concurrently or in any other sequence to the loss.

This Policy does not provide coverage under this Extension for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

**D.    LOGISTICS EXTRA COST**

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

1)   directly between insured **locations**; or

2)   directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss:

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1)   extra costs to temporarily continue as nearly **normal** as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for **earth movement** and/or **flood** and/or **wind.**

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1)   any loss resulting from disruption in the movement of goods or materials between **contingent time element locations.**

2)   any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

3)   any loss of income.

4)   costs that usually would have been incurred in conducting the business during the same period had there been no disruption of **normal** movement of goods or materials.

5)   costs of permanent repair or replacement of property that has been damaged or destroyed

6)   any expense recoverable elsewhere in this Policy.

7)   any loss resulting from disruption caused by or resulting **from terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

8) any loss resulting from disruption caused by loss or damage from **earth movement** in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**.

9) any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of physical loss or damage causing the disruption of the **normal** movement of goods or materials directly between insured **locations**; or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and

2) ending not later than:

   a) when with due diligence and dispatch the **normal** movement of **goods or materials** directly between insured **locations**; or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

   b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

## E.   SERVICE INTERRUPTION TIME ELEMENT

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of service interruption at an insured **location** when the loss is caused by the interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration or from the lack of outgoing sewerage service by reason of any accidental event at the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable services.

This Extension will apply when the period of service interruption is in excess of 24 hours.

Additional General Provisions:

1) The Insured will immediately notify the suppliers of services of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

SERVICE INTERRUPTION TIME ELEMENT Exclusions: As respects SERVICE INTERRUPTION TIME ELEMENT, the following applies:

1) The exclusions in the EXCLUSIONS clause in the PROPERTY DAMAGE section do not apply except for:

    a)  A1, A2, A3, A6, B1, B2, and

    b)  B4 with respect to incoming or outgoing voice, data or video, and

    c)  D1 except with respect to fungus, mold or mildew.

2) The following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

    a)  **terrorism.**

    b)  **earth movement for** property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone**

As used above, the period of service interruption:

1) is the period starting with the time when an interruption of specified services happens; and ending when with due diligence and dispatch the service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

2) is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

3) does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

## ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS

## A.   ATTRACTION PROPERTY

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to an insured **location** and is within 1 statute mile/1.6 kilometres of the insured **location**.

ATTRACTION PROPERTY Exclusions: As respects ATTRACTION PROPERTY, the following additional exclusion applies:

This Policy does not insure loss resulting from:

1) physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of such physical damage; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

## B.   CRISIS MANAGEMENT

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location**, provided such order is a direct result of:

1) a violent crime, suicide, attempted suicide, or armed robbery; or

2) a death or bodily injury caused by a workplace accident;

at such insured **location**.

For the purposes of this Extension only, a workplace accident shall be considered a sudden, fortuitous event that happens during working hours and arises out of work performed in the course and the scope of employment.

This Extension of coverage will apply when the PERIOD OF LIABILITY is in excess of 4 hours.

CRISIS MANAGEMENT Exclusions: As respects CRISIS MANAGEMENT, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) **terrorism**.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting with the time the civil or military authority prohibits access; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

## C.   DELAY IN STARTUP

GROSS EARNINGS and EXTRA EXPENSE are extended to cover the Actual Loss Sustained incurred by the Insured during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations directly resulting from physical loss or damage of the type insured to insured property under construction at an insured **location.**

## D.   EXTENDED PERIOD OF LIABILITY

The GROSS EARNINGS coverage is extended to cover the reduction in sales resulting from:

1) the interruption of business as covered by GROSS EARNINGS;

2) for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and

3) commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Extension had not been included in this Policy.

However, this Extension does not apply to GROSS EARNINGS loss resulting from physical loss or damage caused by or resulting from **terrorism.**

EXTENDED PERIOD OF LIABILITY Exclusions: As respects EXTENDED PERIOD OF LIABILITY, the TIME ELEMENT EXCLUSIONS B of this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or noncompletion of orders, or fines or penalties of any nature except fines or penalties for breach of contract or for late or noncompletion of orders.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended period of liability.

Coverage under this Extension does not apply for more than the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

## E.   INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease;** or

2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease.**

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease.**

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions: As respects INTERRUPTION BY COMMUNICABLE DISEASE, the following additional exclusions apply:

This Policy does not insure loss resulting from:

1) the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease.**

2) loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

## F.   ON PREMISES SERVICES

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to the following property located within 1,000 feet/300 metres of the insured **location:**

1) Electrical equipment and equipment used for the transmission of voice, data or video.

2) Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission lines.

**G.   PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT**

This Policy covers the Actual Loss Sustained by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property.

This Extension does not cover the Actual Loss Sustained by the Insured to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by TERRORISM coverage as provided in the PROPERTY DAMAGE section.

This Extension is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**H.   RELATED REPORTED VALUES**

If reported TIME ELEMENT values include:

1)   **locations** used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and

2)   a TIME ELEMENT loss would result at such locations.

3)   from insured physical loss or damage at an insured **location**.

then this Policy provides coverage for such resulting TIME ELEMENT loss in accordance with the coverage applicable at such insured **location**.

**I.   RESEARCH AND DEVELOPMENT**

The GROSS EARNINGS coverage is extended to insure the Actual Loss Sustained by the Insured of continuing fixed charges and Ordinary Payroll directly attributable to the interruption of research and development activities that in themselves would not have produced income during the PERIOD OF LIABILITY.

The PERIOD OF LIABILITY for this Extension will be the period from the time of direct physical loss or damage of the type insured to the time when the property could be repaired or replaced and made ready for operations, but as respects Ordinary Payroll such period of time shall not exceed the period of time shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section. Such period of time shall not be limited by the date of expiration of this Policy.

**J.   SOFT COSTS**

This Policy covers the Actual Loss Sustained incurred by the Insured of **soft costs** during the PERIOD OF LIABILITY arising out of the delay of completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at an insured **location**.

## LOSS ADJUSTMENT AND SETTLEMENT

### I.   REQUIREMENTS IN CASE OF LOSS

The Insured will:

1)   give immediate written notice to the Company of any loss.

2)   protect the property from further loss or damage.

3)   promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, **actual cash value**, replacement value and amount of loss claimed.

4)   give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by the Company.  The proof of loss must state the knowledge and belief of the Insured as to:

    a)   the time and origin of the loss.

    b)   the Insured's interest and that of all others in the property.

    c)   the **actual cash value** and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

    d)   any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy.

    e)   by whom and for what purpose any **location** insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

5)   include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6)   further, the Insured, will as often as may be reasonably required:

    a)   exhibit to any person designated by the Company all that remains of any property;

    b)   submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

    c)   produce for examination at the request of the Company:

        (i) all books of accounts, business records, bills, invoices and other vouchers; or

        (ii) certified copies if originals are lost.

at such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

## 2. CURRENCY FOR LOSS PAYMENT

Losses will be adjusted and paid in the currency of the United States of America. except in Canada where losses will be paid in Canadian currency. unless directed otherwise by the Insured.

In the event of a loss adjustment involving currency conversion, the exchange selling rate will be calculated as follows:

A.   As respects the calculation of deductibles and limits of liability, the rate of exchange published in The Wall Street Journal on the date of loss.

B.   As respects loss or damage to insured real and personal property:

1)   the cost to repair or replace such property will be converted at the time the cost of repair or replacement is incurred based on the rate of exchange published in The Wall Street Journal.

2)   if such property is not replaced or repaired, the conversion will be based on the rate of exchange published in The Wall Street Journal as of the date of loss.

C.   As respects TIME ELEMENT loss the conversion will be based on the average of the rate of exchange published in The Wall Street Journal on the date of loss and the rate of exchange published in The Wall Street Journal on the last day of the Period of Liability.

If The Wall Street Journal was not published on the stipulated date. the rate of exchange will be as published on the next business day.

## 3. PARTIAL PAYMENT OF LOSS SETTLEMENT

In the event of insured physical loss or damage determined by the Company's representatives to be in excess of the applicable Policy deductible, the Company will advance mutually agreed upon partial payment(s), subject to the Policy's provisions.  To obtain such partial payments. the Insured will submit a signed and sworn Proof of Loss as described in this Policy. with adequate supporting documentation.

## 4. COLLECTION FROM OTHERS

The Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## 5. SUBROGATION

The Insured is required to cooperate in any subrogation proceedings. The Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of the Company's payment.

The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss, nor will such waiver affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

1)  any applicable deductible; and/or

2)  any provable uninsured loss,

bears to the entire provable loss amount.

6.  **COMPANY OPTION**

The Company has the option to take all or any part of damaged property at the agreed or appraised value. The Company must give notice to the Insured of its intention to do so within 30 days after receipt of Proof of Loss.

7.  **ABANDONMENT**

There may be no abandonment of any property to the Company.

8.  **APPRAISAL**

If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1)  the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and

2)  the Company has received a signed and sworn Proof of Loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or the Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss, stating separately the **actual cash value** and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for TIME ELEMENT loss, the amount of loss for each TIME ELEMENT coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

1)  pay its chosen appraiser; and

2)  bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.

9. **SUIT AGAINST THE COMPANY**

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1) the Insured has fully complied with all the provisions of this Policy; and

2) legal action is started within twelve months after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such twelve months' limitation is invalid, then any such legal action must be started within the shortest limit of time permitted by such laws.

10. **SETTLEMENT OF CLAIMS**

The amount of loss for which the Company may be liable will be paid within 30 days after:

A. proof of loss as described in this Policy is received by the Company; and

B. when a resolution of the amount of loss is made either by:

1) written agreement between the Insured and the Company; or

2) the filing with the Company of an award as provided in the APPRAISAL clause of this section.

## GENERAL PROVISIONS

1.  **CANCELLATION/NON-RENEWAL**

    This Policy may be.

    A.   cancelled at any time at the request of the Insured by surrendering this Policy to the Company or by giving written notice to the Company stating when such cancellation will take effect; or

    B.   cancelled by the Company by giving the Insured not less than:

    1)   60 days' written notice of cancellation; or

    2)   10 days' written notice of cancellation if the Insured fails to remit, when due, payment of premium for this Policy; or

    C.   non-renewed by the Company by giving the Insured not less than 60 days' written notice of non-renewal.

    Return of any unearned premium will be calculated on the customary short rate basis if the Insured cancels and on a pro-rata basis if the Company cancels this Policy.  Return of any unearned premium will be made by the Company as soon as practicable.

2.  **INSPECTIONS**

    The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.  The Company does not address life, safety or health issues.

    The Company's:

    A.   right to make inspections;

    B.   making of inspections; or

    C.   providing recommendations or other information in connection with any inspections.

    will not constitute an undertaking, on behalf of or for the benefit of the Insured or others.  The Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

    When the Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that jurisdictional inspections are performed as required, and to assure that required jurisdictional Operating Certificates are current for their pressure equipment.

3.  **PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS**

    A.   If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy

will be read so as to eliminate such conflict or deemed to include such provisions for insured **locations** within such jurisdictions.

B.      The Company will provide to the Insured copies of endorsements mandated for use by the laws of provinces in Canada.  The endorsements modify this Policy with respect to any insured property located in the province in which the endorsement applies.

C.      The Company will provide to the Insured copies of endorsements mandated for use by the laws of states in the United States of America.  The endorsements modify this Policy with respect to any insured property located in the state in which the endorsement applies.

D.      As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico, the definition of **terrorism** is declared null and void and it is agreed that an event defined as a Certified Act of Terrorism under the terms of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this Policy shall be considered an act of **terrorism** within the terms of this Policy.  Coverage recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT is excluded from any other coverage under this Policy.  Any difference in limit between loss recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT and this Policy is not recoverable under this Policy

## 4.      LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## 5.      MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

A.      willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

B.      made any attempt to defraud the Company.

C.      made any false swearing.

## 6.      LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

A.      The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

B.      The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

1) any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

2) foreclosure, notice of sale, or similar proceedings with respect to the property.

3) change in the title or ownership of the property.

4) change to a more hazardous occupancy.

The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard and, within 10 days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

C.  If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

1) sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

2) this Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

D.  The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

E.  The Company has the right to invoke this Policy's SUSPENSION clause. The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel, subject to the suspension. The Company will provide the Lender or Mortgagee at the last known address a copy of the suspension notice.

I   If the Company pays the Lender or Mortgagee for any loss, and denies payment to the debtor, mortgagor or owner, the Company will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At its option, the Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company, and the remaining debt or mortgage will be paid to the Company.

G.   If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within 60 days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, SETTLEMENT OF CLAIMS, and SUIT AGAINST THE COMPANY.

H.   Other provisions relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

## 7.   OTHER INSURANCE

A.   If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

B.   In no event will this Policy apply as contributing insurance.

C.   The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy. The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

D.   The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

E.   If this Policy is deemed to contribute with other insurance, the limit of liability applicable at each **location**, for the purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest **location** value on file with the Company.

## 8.   POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

A.   create a waiver, or change any part of this Policy; or

B.   prevent the Company from asserting any rights under the provisions of this Policy.

## 9.   REDUCTION BY LOSS

Claims paid under this Policy will not reduce its limit of liability, except claims paid will reduce any **aggregate during any policy year** limit.

**10.    SUSPENSION**

On discovery of a dangerous condition, the Company may immediately suspend this insurance on any machine, vessel or part thereof by giving written notice to the Insured. The suspended insurance may be reinstated by the Company. Any unearned premium resulting from such suspension will be returned by the Company.

**11.    TITLES**

The titles in this Policy are only for reference. The titles do not in any way affect the provisions of this Policy.

**12.    ASSIGNMENT**

Assignment of this Policy will not be valid except with the written consent of the Company.

**13.    DEFINITIONS**

The following terms when appearing in **boldface** in this Policy mean:

**actual cash value:**
the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

**aggregate during any policy year:**
the Company's maximum amount payable during any policy year.

**communicable disease:**
disease which is:

A.    transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or

B.    Legionellosis.

**contaminant:**
anything that causes **contamination**.

**contamination:**
any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**contingent time element location:**
A.    any **location:**

1)    of a direct customer, supplier, contract manufacturer or contract service provider to the Insured:

2)   of any company under a royalty, licensing fee or commission agreement with the Insured;

B.   any **location** of a company that is a direct or indirect customer, supplier, contract manufacturer or contract service provider to a **location** described in A1 above,

not including **locations** of any company directly or indirectly supplying to, or receiving from, the Insured, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**date or time recognition:**
the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

**earth movement:**
any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage, or **flood** resulting from **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

**electronic data processing equipment or media:**
any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

**fine arts.**
paintings, etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

**flood:**
flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy.

**irreplaceable:**
an item which cannot be replaced with other of like kind and quality.

**location:**
A.   as specified in the Schedule of Locations, or

B.    if not so specified in the Schedule of Locations:

    1)   a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing),

        a)   bounded on all sides by public streets, clear land space or open waterways, each not less than 50 feet/15 metres wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

**most current schedule of values:**
schedule of values on file with the Company dated 13 March 2018.


**New Madrid Seismic Zone:**
Arkansas, United States of America, counties of:
Arkansas, Clay, Craighead, Crittenden, Cross, Fulton, Greene, Independence, Izard, Jackson, Lawrence, Lee, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Randolph, Sharp, St. Francis, White, Woodruff


Illinois, United States of America, counties of:
Alexander, Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jasper, Jefferson, Johnson, Lawrence, Madison, Marion, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Richland, Saline, St. Clair, Union, Wabash, Washington, Wayne, White, Williamson


Indiana, United States of America, counties of:
Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick


Kentucky, United States of America, counties of:
Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Todd, Trigg, Union, Webster


Mississippi, United States of America, counties of:
Alcorn, Benton, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Tate, Tippah, Tunica


Missouri, United States of America, counties of:
Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Francois, St. Louis, City of St. Louis, Ste. Genevieve, Stoddard, Washington, Wayne


Tennessee, United States of America, counties of:
Benton, Carroll, Chester, Crockett, Decatur, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, Weakley


**normal:**
the condition that would have existed had no physical loss or damage happened.

**normal cost:**
the cost associated with the movement of goods or materials suffering the disruption that the Insured would have incurred had no physical loss or damage causing disruption happened.

**occurrence:**
the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

A.   **terrorism: occurrence** shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of **terrorism** during a continuous period of seventy-two (72) hours.

B.   **earth movement: occurrence** shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all **earth movement(s)** during a continuous period of one hundred sixty-eight (168) hours.

**off-premises data processing or data transmission services:**
the storage or processing of data performed off-premises of the Insured's property, including the transmission of voice, data or video over a single, or combination of, computer or communication networks.

**Pacific Northwest Seismic Zone:**
Oregon, United States of America, counties of:
Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill

Washington, United States of America, counties of:
Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom

British Columbia (includes Vancouver Island), Canada:
South of 50° N latitude and west of 120° W longitude

**period of operational testing:**
the period of time beginning 24 hours prior to the earlier of the following:

A.   introduction, into a system, of feedstock or other materials for processing or handling;

B.   commencement of fuel or energy supply to a system.

and ending with the earlier of the following:

A.   the expiration date or cancellation date of this Policy

B.   if specified, the number of consecutive days shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section.

**physical loss or damage to electronic data, programs or software:**
the destruction, distortion or corruption of electronic data, programs or software.

**representative company(ies):**
Zurich American Insurance Company or American Guarantee & Liability Company

**soft costs:**
costs over and above those that are **normal** at an insured **location** undergoing renovation or in the course of construction, limited to the following:

A.    construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

B.    commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

C.    additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

D.    property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**terrorism:**
any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act.

when the effect or apparent purpose is:

A.    to influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or

B.    to further or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**transmission and distribution systems:**
transmission and distribution systems including but not limited to electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data, and video.  Such systems shall include poles, towers and fixtures, overhead conductors and devices, underground and underwater conduit, underground and underwater conductors and devices, line transformers, service meters, street lighting and signal systems.

**valuable papers and records:**
written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

**wind:**
direct action of wind including substance driven by wind.  **Wind** does not mean or include anything defined as **flood** in this Policy.

**wind areas tier 1:**
Alabama, United States of America, counties of:
Baldwin, Mobile

Florida, United States of America, counties of:
Bay, Brevard, Broward, Calhoun, Charlotte, Citrus, Collier, Dixie, Duval, Escambia, Flagler, Franklin, Gulf, Hernando, Hillsborough, Indian River, Jefferson, Lee, Levy, Liberty, Manatee, Martin, Miami-Dade, Monroe, Nassau, Okaloosa, Palm Beach, Pasco, Pinellas, St. Lucie, St. Johns, Santa Rosa, Sarasota, Taylor, Volusia, Wakulla, Walton, Washington

Georgia, United States of America, counties of:
Bryan, Camden, Chatham, Glynn, Liberty, McIntosh

Hawaii, United States of America:
all islands

Louisiana, United States of America, parishes of:
Assumption, Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John Baptist, St. Martin (southern portion), St. Mary, St. Tammany, Terrebonne, Vermilion

Mississippi, United States of America, counties of:
Hancock, Harrison, Jackson

North Carolina, United States of America, counties of:
Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Gates, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington

South Carolina, United States of America, counties of:
Beaufort, Berkeley, Charleston, Georgetown, Horry, Jasper

Texas, United States of America, counties of:
Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy


**wind areas tier 2:**
Florida, United States of America, counties of:
Alachua, Baker, Bradford, Clay, Columbia, DeSoto, Gadsden, Gilchrist, Glades, Hamilton, Hardee, Hendry, Highlands, Holmes, Jackson, Lafayette, Lake, Leon, Madison, Marion, Okeechobee, Orange, Osceola, Polk, Putnam, Seminole, Sumter, Suwannee, Union

Georgia, United States of America, counties of:
Brantley, Charlton, Effingham, Long, Wayne

Louisiana, United States of America, parishes of:
Acadia, Ascension, Calcasieu, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, Livingston, St. Martin (northern portion), Tangipahoa, Washington, West Baton Rouge

Mississippi, United States of America, counties of:
George, Pearl River, Stone

North Carolina, United States of America, counties of:
Bladen, Columbus, Duplin, Hertford, Lenoir, Martin, Pitt

South Carolina, United States of America, counties of:
Colleton, Dorchester, Williamsburg

Texas, United States of America, counties of:
Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jim Wells, Liberty, Newton, Victoria, Wharton

# Schedule of Locations, Appendix A

| Loc. No | Index No | Description |
|---|---|---|
| 1 | 0000088.59 | WASHINGTON, BELLEVUE, 98004-4345<br><br>Bellevue Place described below.<br><br>Bank of America building and Kemper Development Office – 2nd Floor<br>10500 Northeast 8th Street<br><br>Winter Garden Atrium<br>10520 Northeast 8th Street<br><br>Winter Garden Atrium<br>10520 Northeast 8th Street<br>Corner Office Building<br>800 Bellevue Way Northeast<br><br>Hyatt Regency Hotel Towers<br>900 Bellevue Way Northeast<br><br>Hyatt Parking Garage and<br>Bellevue Place Parking Garage<br>900 Bellevue Way Northeast |
| 2 | 078844.06 | WASHINGTON, BELLEVUE, 98004-5031<br><br>Bellevue Square described below:<br><br>Bellevue Square Mall and<br>Parking Garage<br>575 Bellevue Way Northeast<br><br>Bellevue Square NE Corner Addition and<br>Northeast Corner Parking Garages<br>575 Bellevue Way Northeast<br><br>Kemper Development Office<br>575 Bellevue Square<br><br>Bellevue Square Mall – Macy's<br>400 Bellevue Square<br><br>Bellevue Square mall (former JC Penny box)<br>300 Bellevue Square |
| 3 | 078848.38 | WASHINGTON, BELLEVUE, 98004-5015<br><br>Lincoln Square North as described below<br><br>Lincoln Square North Retail and Parking Garage<br>700 Bellevue Way Northeast<br><br>Lincoln Square North Office<br>10401 Northeast 8th Street |

| | | |
|---|---|---|
| | | Lincoln Square North Office<br>10401 Northeast 8th Street<br><br>Lincoln Square North Condominiums<br>650 Bellevue Way Northeast<br><br>Westin Bellevue<br>600 Bellevue Way Northeast |
| 4 | 000000.00 | WASHINGTON, BELLEVUE, 98004-4209<br>821 Bellevue Way Northeast<br><br>Kaylen Ground Lease |
| 5 | 078848.38 | WASHINGTON, BELLEVUE, 98004-4209<br><br>Lincoln Square South as described below.<br><br>Lincoln Square South Parking Garage<br>410 Bellevue Way Northeast<br><br>Lincoln Square South Office Tower<br>10400 Northeast 4st street<br><br>Lincoln Square South Retail<br>400 -508 Bellevue Way Northwest<br><br>W Hotel<br>10455 Northeast 5th Place |

## WASHINGTON AMENDATORY ENDORSEMENT

With respect to any insured location in the State of Washington this Policy is amended:

The provision EXCLUSIONS is replaced by:

### EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

A.  This Policy excludes:

1)  indirect or remote loss or damage.

2)  interruption of business, except to the extent provided by this Policy.

3)  loss of market or loss of use.

4)  loss or damage or deterioration arising from any delay.

5)  mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6)  loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

B.  This Policy excludes loss or damage arising out of:

1)  nuclear reaction or nuclear radiation or radioactive contamination.   However:

   a)  if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination.

   b)  this Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the insured **location**, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the insured **location**.   This coverage does not apply to any act, loss or damage excluded in item B2f of this EXCLUSIONS clause.

   This exclusion B1 and the exceptions in B1a and B1b do not apply to any act, loss or damage which also comes within the terms of exclusion B2b of this EXCLUSIONS clause.

2)  a)  hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any

    (i)  government or sovereign power (de jure or de facto);

    (ii)  military, naval or air force; or

    (iii) agent or authority of any party specified in i or ii above.

b)  discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear  fission, fusion or radioactive force.   This exclusion applies whether in time of peace or war and  regardless of who commits the act.

c)  insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

d)  seizure or destruction under quarantine or custom regulation; or confiscation by order of any  governmental or public authority.

e)  risks of contraband or illegal transportation or trade.

f)  **terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the TERRORISM coverage of the Policy.   However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the **actual cash value** of the resulting direct loss or damage by fire to property insured.   This coverage exception for such resulting  fire loss or damage does not apply to:

    (i)  direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing  or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and  regardless of who commits the act.

    (ii)  any coverage provided in the TIME ELEMENT section of this Policy or to any other coverages provided in this Policy.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious  mischief, riot, civil commotion, or any  other risk of physical loss or damage covered elsewhere in this  Policy.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2a of this EXCLUSIONS clause then item B2a applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2b of this EXCLUSIONS clause then item B2b applies in place of this item B2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of item B2c of this EXCLUSIONS clause then item B2c applies in place of this item B2f exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this item B2f exclusion applies in place of item B1 of this EXCLUSIONS clause.

All whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, attributed to, or aggravated by the peril(s) insured against in this Policy.

3) lack of the following services:

    a) incoming electricity, fuel, water, gas, steam or refrigerant;

    b) outgoing sewerage;

    c) incoming or outgoing voice, data or video,

all when caused by an event off the insured **location**, except as provided in the SERVICE INTERRUPTION and OFF PREMESIS DATA SERVICES coverages of this Policy. But, if the lack of such a service directly causes insured physical damage on the insured **location**, then only that resulting damage is insured.

C. This Policy excludes loss or damage caused by any of the following excluded events. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

i. Directly and solely results in loss or damage; or

ii. Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

1) any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

    a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

    b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This exclusion does not apply to acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b. above, if done without the knowledge of an Insured. This coverage does not apply to any act excluded in B2f of this Exclusions clause. This exclusion does not apply to deny an insured's otherwise covered property loss if the property loss is caused by an act of domestic abuse by another insured under the policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. In no event does this policy cover loss by theft by any individual specified in a. and b. above

2) loss from enforcement of any law or ordinance:

    a) regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

    b) requiring the demolition of any property, including the cost in removing its debris; except as provided by the DECONTAMINATION COSTS and LAW AND ORDINANCE coverages of this section of this Policy.

3) **earth movement**, except as otherwise provided in this Policy. To the extent that this **earth movement** exclusion is inconsistent with such coverage, that coverage applies

4) **flood,** except as otherwise provided in this Policy. To the extent that this **flood** exclusion is inconsistent with such coverage, that coverage applies

D. This Policy excludes the following; however, if physical damage not excluded by this Policy results, then only that resulting damage is insured.

1) a) acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    b) faulty, inadequate, or defective:

       (1) planning, zoning, development, surveying, siting;

       (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

       (3) materials used in repair, construction, renovation or remodeling; or

       (4) maintenance; of part or all of any property on or off the described premises.

2) loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

3) deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

4) settling, cracking, shrinking, bulging, or expansion of;

    a) foundations (including any pedestal, pad, platform or other property supporting machinery).

    b) floors.

    c) pavements.

    d) walls.

    e) ceilings.

      f)   roofs.

5)  a)  changes of temperature damage (except to machinery or equipment); or

      b)  changes in relative humidity damage, all whether atmospheric or not.

6)  insect, animal or vermin damage.

7)  loss or damage to the interior portion of buildings under construction from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls and windows of such buildings has not been completed.

E.  This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:

1)  **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

2)  shrinkage.

3)  changes in color, flavor, texture or finish.

---

Any references to exclusions contained in this Policy or any Endorsements are replaced as follows:

      Any reference to Exclusion A6 in this Policy is replaced by Exclusion C2 in this endorsement.
      Any reference to Exclusion A7 in this Policy is replaced by Exclusion A6 in this endorsement.
      Any reference to Exclusion B3 in this Policy is replaced by Exclusion C1 in this endorsement.
      Any reference to Exclusion B4 in this Policy is replaced by Exclusion B3 in this endorsement.
      Any reference to Exclusion B5 in this Policy is replaced by Exclusion C3 in this endorsement.
      Any reference to Exclusion B6 in this Policy is replaced by Exclusion C4 in this endorsement.
      Any reference to Exclusion C1 in this Policy is replaced by Exclusion D1 in this endorsement.
      Any reference to Exclusion C2 in this Policy is replaced by Exclusion D2 in this endorsement.
      Any reference to Exclusion C3 in this Policy is replaced by Exclusion D3 in this endorsement.
      Any reference to Exclusion C4 in this Policy is replaced by Exclusion D4 in this endorsement.
      Any reference to Exclusion C5 in this Policy is replaced by Exclusion D5

in this endorsement.
Any reference to Exclusion C6 in this Policy is replaced by Exclusion D6 in this endorsement.
Any reference to Exclusion C7 in this Policy is replaced by Exclusion D7 in this endorsement.
Any reference to Exclusion D1 in this Policy is replaced by Exclusion E1 in this endorsement.
Any reference to Exclusion D2 in this Policy is replaced by Exclusion E2 in this endorsement.
Any reference to Exclusion D3 in this Policy is replaced by Exclusion E3 in this endorsement.

---

Wherever used in this Policy, the following paragraph:

This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

is replaced by:

This Policy excludes loss or damage caused by any of the following excluded events. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

i)   Directly and solely results in loss or damage; or

ii)  Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence:

Wherever used in this Policy, the following paragraph:

physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence of loss.

is replaced by:

physical loss or damage caused by **terrorism**. Loss or damage will be considered to have been caused by **terrorism** if the occurrence of **terrorism**:

i.   Directly and solely results in loss or damage; or

ii.  Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence:

Wherever used in this Policy, the following paragraph:

loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

is replaced by:

Loss caused by **terrorism**. Loss will be considered to have been caused by **terrorism** if the occurrence of **terrorism**:

i.   Directly and solely results in loss: or

ii.   Initiates a sequence of events that results in loss, regardless of the nature of any intermediate or final event in that sequence:

Wherever used in this Policy, the following paragraph:

any loss resulting from disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

is replaced by:

Loss caused by **terrorism**. Loss will be considered to have been caused by **terrorism** if the occurrence of **terrorism**:

i.   Directly and solely results in loss: or

ii.   Initiates a sequence of events that results in loss, regardless of the nature of any intermediate or final event in that sequence:

---

The definitions for **flood** and **earth movement** are replaced by:

**earth movement:**
any natural or man-made earth movement including, but not limited to earthquake or landslide, which directly and  solely results in loss or damage, or which initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in the sequence. However, physical loss or damage by fire, explosion, sprinkler leakage, or flood resulting from **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

**flood:**
flood; surface waters; rising waters; storm surge; sea surge; wave wash; waves; tsunami; tide or tidal water; the  release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing which directly and solely results in loss or damage, or which initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in the sequence .  Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy.  However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy

The provision SUBROGATION is replaced by:

SUBROGATION

The Insured is required to cooperate in any subrogation proceedings. The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefore is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived prior to loss nor shall such waiver affect the Insured's rights under this policy.

The Company's right to the proceeds of any such recovery shall be limited to such amount thereof remaining after the deduction of expenses incurred in obtaining the recovery is first taken and payment is made to the Insured of the amount of any provable uninsured loss.

The provision APPRAISAL is replaced by:

APPRAISAL

If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within 60 days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for 15 days to agree upon such umpire, then, on the request of the Insured or the Company,    such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally    the other expenses of the appraisal and umpire.

The provision CANCELLATION/NONRENEWAL is replaced by:

CANCELLATION/NONRENEWAL:

This Policy may be cancelled at any time at the request of the Insured, in which case the Company will, upon surrender of this Policy, refund the excess of paid premium above the customary short rates for the expired time. This Policy may be cancelled at any time by the Company by giving to the Insured not less than 45 days' written notice of cancellation with the excess of paid premium above the Company's normal earned premium for the expired time.
Notice of cancellation shall state the actual reason.

However, this Policy may be cancelled by the Company if the Insured fails to remit, when due, the payment of premium for this Policy, by giving the Insured not less than 10 days' written notice of cancellation. Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other person shown by this Policy to have an interest in any loss which may occur thereunder.
The Company will have to renew this Policy unless:

(a)  The Company gives at least 45 days' written notice that it proposes to refuse to renew the contract upon its expiration date, including therein the actual reason for the refusal; or

(b)  At least 20 days prior to the expiration date of this policy, the Company communicates its willingness to renew in writing to the named Insured including therein a statement of the amount of the premium or portion thereof required to be paid by the Insured to renew this Policy, but the Insured fails to discharge when due his or her obligation in connection with the payment; or

(c)  Equivalent coverage has been procured by the Insured prior to the expiration of the policy period; or

(d)  The contract is evidenced by a written binder containing a clearly stated expiration date which has expired according to its terms.

Any Company failing to include in the notice required the amount of any increased premium resulting from a change of rates and an explanation of any change in the contract provisions shall renew the policy if so required, according to the rates and contract provisions applicable to the expiring policy provided that renewal based on the rates and contract provisions applicable to the expiring policy shall not prevent the Company from making changes in the rates and/or contract provisions of this Policy once during the term of its renewal after at least 20 days' advance notice of such change has been given to the Insured

The provision INSPECTIONS is replaced by.

The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property. The Company does not address life, safety or health issues.

The Company's:

A.  right to make inspections;

B.  making of inspections; or

C.  providing recommendations or other information in connection with any inspections

will not constitute an undertaking, on behalf of or for the benefit of the Insured or others. The Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

For jurisdictional inspections, the Company's commissioned inspector inspects non exempt boilers and unfired pressure vessels as to their construction, installation, condition and operation, in compliance with the state's requirements regarding such activity.

When the Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that

A.  these inspections are performed as required; and

B.  required jurisdictional Operating Certificates are current for their pressure equipment

The provisions pertaining to mortgagees contained in the LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS are amended as follows:

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the Insured, such interest in this Policy may be cancelled by giving to such mortgagee 45 days' written notice of cancellation (10 days for nonpayment of premium).

If the Insured fails to render proof of loss, such mortgagee, upon notice, shall render proof of loss in the form herein specified within 60 days thereafter and shall be subject to the provisions hereon relating to appraisal and time of payment and of bringing suit. If the Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of the loss amount to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing the mortgagee's right to sue, or it may pay off the mortgagee debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

The provision OTHER INSURANCE is replaced by:

OTHER INSURANCE

The Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

The following paragraph of TERRORISM ENDORSEMENT:

This Additional Coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) that involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act; or

2) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

4) that involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism.**

is replaced by:

This Additional Coverage excludes loss or damage caused by any of the following excluded events. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

i.   Directly and solely results in loss or damage; or

ii.  Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

1) that involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion, or radioactive force, whether in time of peace or war and regardless of who commits the act; or

2) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

4) that involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism.**

With respect to any loss of or damage to real property, **actual cash value** includes proper deduction for depreciation.

# Exclusion of Loss Resulting from Certified
# Acts of Terrorism with Exceptions and Sub-Limits



**ZURICH**

| Insured Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Kemper Holdings, LLC | ERP-0851426-01 | 07/31/2019 | 02 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance:

**Property Insurance Policy**

The following exclusion and limitations apply to all loss or damage under all coverage(s) of the policy and for all locations (whether or not identified in this endorsement).

**A. Terrorism Exclusion**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism", including action in hindering or defending against an actual or expected "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**B. Exceptions to the Terrorism Exclusion**

1. **Fire Following Exception.** If the "certified act of terrorism" results in fire, we will pay for the direct physical loss or damage to Covered Property caused by that fire. This exception does not apply to any other loss or damage including but not limited to business income, extra expense, any additional coverage and any coverage extension. Regardless of the method of valuation otherwise stated for the property, we will value the property subject to this exception at actual cash value.

2. **Scheduled Locations Exception.** If locations are identified in the Schedule of Locations of this endorsement, the Terrorism Exclusion does not apply to loss or damage at those locations.

**C. Sub-Limits of Insurance Applicable to Terrorism**

These sub-limits apply to all loss or damage resulting from a "certified act of terrorism" to which the Terrorism Exclusion does not apply for any reason, whether by application of an exception or otherwise, and for which the policy provides coverage. Our total payment(s) for loss or damage caused directly or indirectly by a "certified act of terrorism", regardless of any other cause or event that contributes concurrently or in any sequence to the "certified act of terrorism", shall not exceed the lesser of the applicable limit(s), including sub-limits, stated in the policy or:

1. For the total amount of all loss or damage at a location identified in the Schedule of Locations of this endorsement, the applicable scheduled sub-limit stated in this endorsement for that location

2. For direct physical loss or damage to building and personal property at all other locations, the applicable Sub-Limit for All Other Locations stated in this endorsement.

3. For the total amount of all loss or damage in any one policy year under all coverage(s) regardless of the number of locations involved or number of "certified acts of terrorism", the Annual Aggregate Limit stated in this endorsement

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission

Schedule of Locations

| Location | | Sub-Limit per "certified act of terrorism" |
|---|---|---|
| 1. NCP | $ | NCP |
| 2. | $ | |
| 3. | $ | |
| 4 | $ | |
| 5. | $ | |

**Sub-Limit for All Other Locations:** $ 2,500,000 in the aggregate per "certified act of terrorism".

**Annual Aggregate Limit:** $ 2,500,000 regardless of the number of "certified acts of terrorism".

### D. Deductibles

We will not pay for any otherwise covered loss or damage subject to the sub-limits of this endorsement until the amount of that loss or damage exceeds the applicable deductible(s) stated in this endorsement. We will then pay the amount of that loss or damage in excess of the deductible(s) up to the applicable sub-limit of insurance. The deductible amounts are:

1. For loss or damage at locations identified in the Schedule of Locations of this endorsement, $_____ per location for each "certified act of terrorism".

2. For all other locations  $_____ per location and for each "certified act of terrorism".

   If no amount appears in the applicable line, the policy deductible(s) apply

### E. Definition

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

1  To be an act of terrorism;

2. To be a violent act or an act that is dangerous to human life, property or infrastructure;

3. To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

### F. Application of Other Exclusions

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-GU-685-C CW (01/15)
Page 2 of 3

**G. Cap on Losses From Certified Acts of Terrorism**

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

All other terms and conditions of this policy remain unchanged

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**NMA 2914 - ELECTRONIC DATA ENDORSEMENT A**

1. Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

a) This Policy does not insure, loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software, and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to Trojan Horses, worms and time or logic bombs.

b) However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:

- Fire

- Explosion

2. Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

# Policy Changes Endorsement



**ZURICH**

| Insured's Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| Kemper Holdings, LLC | ERP-0851426-01 | 07/31/2019 | 04 |

| PRODUCER NO | | | ADDITIONAL PREMIUM | RETURN PREMIUM |
|---|---|---|---|---|
| 73791000 | [x] | NO CHANGE IN PREMIUM | --- | --- |
| | [] | TO ADJUST PREMIUM AT AUDIT | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under your policy as indicated below. The modification(s) may result in a change in the premium as indicated above.

| Type(s) of Change(s) | | |
|---|---|---|
| [] Name of Insured | [] | Mailing Address of Insured |
| [] Policy Number | [] | Company |
| [] Effective/Expiration Date | [] | Legal Status of Insured/Business of Insured |
| [] Payment Plan | [] | Premium Determination |
| [] Additional Interested Parties | [x] | Coverage Forms and Endorsements |
| [x] Limits/Exposures | [] | Deductibles |
| [] Covered Property/Location Description | [] | Classification/Class Codes |
| [] Rates | [] | Underlying Insurance |

### CHANGE(S)

It is hereby understood and agreed upon that effective 07/31/2019, the following amendments are made to the Policy Declarations under Section 11, LIMITS OF LIABILITY:

| AUTOMATIC COVERAGE | 120 day period but not to exceed a USD100,000,000 limit, per location |
|---|---|

| CLAIMS PREPARATION COSTS | USD1,000,000 plus 50% of the amount recoverable under this coverage in excess of USD 100,000 |
|---|---|

All other terms, conditions and limitations of this Policy remain unchanged.

EDGE 303-A (08/16)

# EXHIBIT C



# NOTICE TO POLICYHOLDERS

### FRAUD NOTICE

| | |
|---|---|
| **Alabama** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

© 2019 X L America, Inc. All Rights Reserved.
May not be copied without permission.



# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**WARNING: All Workers Compensation Insurance:**
Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:
1.  obtaining any benefit or payment,
2.  increasing any claim for benefit or payment, or
3.  obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

PN CW 01 0719

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.



# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| Puerto Rico | Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years. |
| Rhode Island | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Tennessee | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2019 X L America, Inc  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## PRIVACY POLICY

The AXA XL insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the AXA XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services   The information we collect generally comes from the following sources:

*   Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
*   Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you   The information we collect will vary with the type of insurance you seek;

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

### Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

### Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

### Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

### Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

PN CW 02 0119

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2019 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDER

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1]. Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions embargoes or export controls applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions, embargoes or export controls law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC or the applicable regulator. Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 0519

©2019 X.L. America. Inc. All rights reserved. May not be copied without permission
Includes copyrighted material of Insurance Services Office, Inc.. with its permission.

## NOTICE TO POLICYHOLDERS

## PROPERTY CLAIMS LOSS NOTIFICATION

AXA XL has built a reputation for resolving property claims efficiently and fairly.  To deliver our world-class service and respond to our clients business needs in a timely manner, please contact our property claims specialists.

**For immediate service in the event of a loss:**

Loss notification can be made as follows:
Email   napropcasclaimnewnotices@axaxl.com
Fax     (866) 740-6067
Phone  (800) 688-1840 (during and after business hours)

We hope you never have to use this information.  In the event you do, however, you can expect AXA XL exceptional claims specialists to be ready to respond.

© 2019 X L America, Inc.  All Rights Reserved.
May not be copied without permission.



**XL Insurance**

## COMMON POLICY DECLARATIONS

DATE OF ISSUE:  October 24, 2019

| COMPANY PROVIDING COVERAGE | REGULATORY OFFICE | UNDERWRITING OFFICE |
|---|---|---|
| **XL Insurance America, Inc.**<br>(hereinafter referred to as "the Company") | Dept: Regulatory<br>505 Eagleview Blvd., Suite 100<br>Exton, PA 19341-0636<br>Telephone: 800-688-1840 | 101 California Street, Suite 1150<br>San Francisco, CA 94111<br>James Jennings<br>Telephone: 415-837-2488 |

POLICY NO.: US00085797PR19A    RENEWAL OF: US00085797PR18A

POLICY TERM:    FROM : July 31, 2019  TO: July 31, 2020    at the time specified in the policy wording

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, THE COMPANY AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY TO:

NAMED INSURED AND MAILING ADDRESS:  **Kemper Holdings, LLC**
(refer to policy for complete title)
575 Bellevue Square
Bellevue, WA 98004

PRODUCER AND MAILING ADDRESS:  Parker, Smith & Feek
2233 112th Avenue N.E.
Bellevue, WA 98004

This policy is issued in consideration of the following initial premium, inclusive of any premium shown on endorsements which are a part of the policy at the time of issue.

| Commercial Property Coverage | Premium Total: | $ 353,125.00 |
|---|---|---|
| Inclusive of Certified Acts of Terrorism Coverage Premium: | Included | |
| Inclusive of Brokerage Commission of 0%: | $ 0.00 | |
| **Surcharges** | Surcharge Total (as detailed in the State Surcharges table): | $ 0.00 |
| | **Total Premium and Surcharges** (payable at inception): | $ 353,125.00 |

THESE DECLARATIONS TOGETHER WITH THE COVERAGE FORM DECLARATIONS, COVERAGE FORM AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART HEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Form(s) and Endorsement(s) made a part of this policy at time of issue:

Coverage Form: Kemper Holdings, LLC – 2019 Property Policy Wording
Endorsement No. 01:  Certified Act(s) of Terrorism Endorsement [HFP-146 (01-15)]
Endorsement No. 02:  Terrorism Exclusion Endorsement [HFP-144 (01-08)]
Endorsement No. 03:  Asbestos Exclusion [PROP 501 (10-15)]
Endorsement No. 04:  Chemical, Biological & Radiological Exposures Exclusion [PROP 502 (10-15)]
Endorsement No. 05:  General Change Endorsement - High Hazard Zones
Endorsement No. 06:  General Change Endorsement – form revisions

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company

James Jennings,
AVP, Senior Underwriter, North America
Property

Joseph A. Tocco, President

Toni Ann Perkins  Secretary

Form: XLIA Common Dec (12March2019)

© 2010 X L America, Inc.  All Rights Reserved  May not be copied without permission.

# COMMON POLICY DECLARATIONS

COUNTERSIGNED (if required)

Date: _____          _____
                               Authorized Representative

| State Surcharges | |
|---|---|
| The above shown Surcharges Total is comprised of the following amounts: | |
| None | $ 0.00 |
| Surcharge Total: | $ 0.00 |

## Disclosures related to the Terrorism Risk Insurance Act (hereinafter "TRIA")

**Disclosure of Federal Participation in Payment of Terrorism Loss**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals (see table below) of that portion of the amount of such insured losses that exceeds the Company's applicable retention. However, if aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

| Calendar Year | 2015 | federal share equals | 85% |
|---|---|---|---|
| Calendar Year | 2016 | federal share equals | 84% |
| Calendar Year | 2017 | federal share equals | 83% |
| Calendar Year | 2018 | federal share equals | 82% |
| Calendar Year | 2019 | federal share equals | 81% |
| Calendar Year | 2020 | federal share equals | 80% |

**Disclosure of Cap on Company Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year and the Company has met its deductible under TRIA, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Disclosure of Premium for Certified Act(s) of Terrorism Coverage**

The premium charged for Certified Act(s) of Terrorism, if purchased, is shown in the above premium summary table, and does not include any charges for the portion of loss covered by the U.S. Federal Government as set forth in the federal Terrorism Risk Insurance Program established by TRIA.

© 2010 X.L. America, Inc  All Rights Reserved.  May not be copied without permission

**Kemper Holdings, LLC** and any financial and/or managerial controlled subsidiary, division, trust, associated or allied company or foundation of the named insured, (or subsidiary thereof) and any interest in any partnership or joint venture in which Kemper Holdings, LLC or its subsidiaries (or subsidiaries thereof has management control or ownership, or for which they have assumed the responsibility for insuring, as now or hereafter constituted or acquired, and any antecedent companies for which Kemper Holdings, LLC (or subsidiaries therefor) may be or become liable; herein referred to as "the insured".

1.   **TERM OF INSURANCE**

In consideration of the US$ 353,125 (15%) annual premium, this policy **attaches and** covers for a period of 12 months, from 07/31/2019 to 07/31/2020, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy (ies) replaced or renewed by this policy.

2.   **PARTICIPATION**

This policy covers for the percent interest in this insurance shown elsewhere in this Policy, and the Underwriters shall not be liable for more than its proportion of the limits of liability set forth herein.

3.   **LIMITS OF LIABILITY**

This Company shall not be liable for more than its proportion of US$1,000,000,000 for any one occurrence, except:

A.   With respect to the perils of Flood and Earthquake as defined elsewhere in the policy, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of US$200,000,000 for earthquake and US$200,000,000 for flood, which shall apply separately to each peril as referred to in Section 13. Even if the peril of flood or earthquake is the predominant cause of loss or damage, any ensuing loss or damage caused by fire, explosion, water damage or leakage from fire protective equipment not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause, except:

| Ammonia Contamination | US$ 500,000 |
|---|---|
| Attraction Property | 30 consecutive days, maximum US$ 25,000,000, 1 mile limitation |
| Automatic Coverage | 120 day period but not to exceed a US$50,000,000 limit per **location** |
| Civil or Military Authority | 30 consecutive days, maximum US$25,000,000 5 mile limitation |

| | |
|---|---|
| Claims Preparation Costs | US$1,000,000 |
| Communicable Disease Response | US$ 1,000,000 in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed US$1,000,000 in the **aggregate during any policy period** year regardless of the number of location, coverages or **occurrences** involved. |
| Computer Systems Non Physical Damage and Data, Programs or Software Combined | US$ 10,000,000 (PER NMA2914) |
| Contingent Time Element Extended | US$ 25,000,000 (No Further than Tier 2) |
| **Earth Movement** | US$ 200,000,000 in the **aggregate during any policy period** |
| Errors and Omissions | US$ 100,000,000 |
| Expediting Costs and Extra Expense Combined | US$ 100,000,000 |
| Extended Period of Liability | 365 day period |
| Fine Arts | US$ 100,000,000 but not to exceed a USD10,000 limit per item for **Irreplaceable fine arts** not on a schedule on file with the company |
| Fines or Penalties for breach of contract or for late or non completion of orders combined | US$ 100,000 |
| Flood | US$ 200,000,000 in the **aggregate during any policy period** |
| Ingress/ Egress | 30 day period, maximum US$25,000,000 5 mile limitation |
| Interruption by Communicable Disease | 12 month period but not to exceed a US$ 1,000,000 limit in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for **COMMUNICABLE DISEASE RESPONSE** and this coverage combined shall not exceed US$ 1,000,000 in the **aggregate during any policy period year** regardless of the number of locations, coverages or **occurrences** involved. |

| | |
|---|---|
| Land and Water Contamination Cleanup, Removal and Disposal | US$250,000 in the **aggregate during any policy period year** |
| Logistics Extra Cost | 180 day period but not to exceed 200% of the **normal cost** |
| Miscellaneous Property | As respects property at a **location:** a) US$ 50,000,000 **per location** As respects property not at a **Location** a) US$ 50,000,000 |
| Off Premises Data Services Property Damage and Off Premises Data Services Time Element Combined | US$ 5,000,000 |
| Ordinary Payroll | 60 day period |
| Service Interruption | US$ 10,000,000, 24 hour waiting period |
| Terrorism | US$ 5,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year:** a) US$5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY AND TEMPORARY REMOVAL OF PROPERTY combined b) US$ 5,000,000 for **Flood** when caused by or resulting from **terrorism** Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this Policy. For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism. The limits for TERRORISM shall not include **actual cash value** portion of fire |

| | |
|---|---|
| | damage caused by **terrorism.** |
| Valuable Papers and Records | US$ 100,000,000 but not to exceed a US$100,000 limit per item for **Irreplaceable valuable paper and records** not on a schedule on file with the company |
| Landscape Gardening, Car Parks, Parking Lots, Pavement, Roadways, Railways, Transformer Enclosure or Walkways. | US$1,000,000 |
| Water that is Contained Within Any Enclosed Tank, Piping System or Any other Processing Equipment | US$1,000,000 |
| Accidental Interruption of Services and Consequential Loss | US$ 5,000,000 |
| Debris Removal | US$ 100,000,000 |
| Deferred Payments | US$ 25,000,000 |
| Accounts Receivable | US$ 50,000,000 |
| Soft Costs | US$ 50,000,000 |
| Transit | US$ 25,000,000 |
| Ordinance of Law Combined Coverage A, B & C  Undamaged Portion, Demolition & Increased Cost of Construction  Coverage D  Increased Period of Restoration | US$ 200,000,000    US$   25,000,000 |
| Fire Brigade Charges | US$ 50,000,000 |
| Impounded Water | 30 day period |
| Radioactive Contamination | US$1,000,000 |

## 4.   **DEDUCTIBLES**

| Earthquake | Property Damage |
|---|---|
| | 2% **per unit of Insurance** as defined below Time element : 2% **per Unit of Insurance** as defined below The above are subject to a minimum deductible of US$ 100,000 for Property Damage and Time Element Combined, per **Location** |
| **Flood** | US$ 100,000 Combined all coverages, per **Location** |
| **100 Year Flood** | US$ 250,000 per **Location** |
| **Logistics Extra Cost** | US$ 100,000 per **Occurrence** |
| **All Other Loss** | US$ 100,000 Combined all coverages, per **Occurrence** |
| **Service Interruption** | 24 hour Waiting Period |

Deductible General Provisions:

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single occurrence greater than the applicable deductible: specified above and only for its share of that greater amount.

A. For SERVICE INTERRUPTION loss, when a deductible is not specifically stated as applying to SERVICE INTERRUPTION the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured location that sustains the interruption of the specified services.

B. For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the contingent time element location was an insured location under this Policy.

C. The stated earthquake deductible will be applied to earthquake loss. The stated flood deductible will be applied to flood loss. The stated wind deductible will be applied to wind loss. The provisions of item E below will also be applied to each.

D. When this Policy insures more than one Location, the deductible will apply against the total loss covered by this Policy in an occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage happened regardless of the number of locations involved in the occurrence.

E. Unless stated otherwise, if two or more deductibles apply to an occurrence, the total to be deducted will not exceed the larges deductible applicable. For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible. If two or more deductibles apply on a per location basis in an occurrence, the largest deductible applying to each location will be applied separately to each such location.

F. The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of Insurance:

(1) Each building or structure, not including the value of its foundations, which has sustained loss or damage;
(2) Personal property within each building or structure if that personal property sustains loss or damage;
(3) Personal property in the open that sustains loss or damage;
(4) The Time Element values impacted by insured loss or damage to said property that sustains loss or damage.

Unit(s) of Insurance:

Property Damage Values (1), (2) and (3) above to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified (or property under construction), the values will be determined at the time of loss.

Time Element Values to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified, based upon the twelve (12) months following the date of loss, with consideration for the most probable experience of the business for the Location, had no loss occurred.

Time Element as used above refers to the following coverages:
a. Gross Earnings
b. Loss of Profits
c. Rental Value and Rental Income

G. For insured physical loss or damage:

    1) to insured tire protection equipment; or

    2) from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items 1 or 2 above only will be reduced by fifty percent (50%), per occurrence. However, this provision will not apply to loss or damage resulting from fire or earth movement regardless of whether claim is made for such fire or earth movement.

H. Any property damage or time element extensions provided herein are subject to the deductible provisions that would have applied had a physical loss or damage occurred

**5.**    **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to Insured, or order whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

**6.**    **TERRITORY**

Coverage as provided under this Policy applies Worldwide.

7.   **COVERAGE**

Except as hereinafter excluded, this policy covers:

A.  **Real and Personal Property**

(1) The interest of the Insured in all real and personal property including but not limited to property owned, used, leased or intended for use by the Insured, or hereafter constructed, erected, installed, or acquired, including while in course of construction, erection, installation, and assembly. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2) The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

(3) Real and personal property which the Insured is responsible for or has agreed to insure.

(4) At the sole option of the Insured, this policy covers in any given instance personal property, except automobiles, of the Insured's officials and employees while on the premises of the Insured.

(5) Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

B.  **Business Interruption**

(1) Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business including 90 days ordinary payroll and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3) In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A., which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained

of the continuing fixed charges and expenses, including 90 days ordinary payroll, directly attributable to such research and development activities.

(4) However, this Company shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock or for the time required reproducing said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5) Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:
  (a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or
  (b) by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6) Experience of the Business: In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7, A. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

## C. Extra Expense

(1) Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2) "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

## D. Rental Value

(1) Rental Value loss sustained by the Insured resulting directly from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2) "Rental Value" is defined as the sum of:

  (a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b)the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3)  Experience of the Business:

(a) In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to rea  and personal property as described in Clause 7.A.

(b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

## E. Royalties

(1) Loss of income to the insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3) Resumption of Operations: The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by this Company.

(4) Experience of the Business: In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.

**F. Time Element Extensions**

(1) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against:

(a) Service Interruption: electrical, steam, gas, water, sewer, telephone, or any other utility or service transmission lines and related plants, substations and equipment situated on or outside of the premises;

(b) Contingent Time Element: Property that prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the policy territory;

(c) Impounded Water: Dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

(d) Attraction Property: Property not owned or operated by the Insured, located within 1 mile of the Insureds location which attracts business to the Insured.

(2) Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained during the period of time when as a direct result of a peril insured against, access to real or personal property is thereby prohibited by order of civil or military authority. A 30-day sub-limit will apply for business interruption.

(3) Ingress/Egress: This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, access to or egress from real or personal property is thereby prevented. A 30-day sub-limit will apply for business interruption.

**G. Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1) Period of Recovery: The length of time for which loss may be claimed:

(a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

(b) and such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

i. the date on which the liability of the Company for loss or damage would otherwise terminate; or

ii. the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

but in no event for more than one year from said later commencement date;

(c) with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

(d) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2) Special Exclusions: This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

(3) Expense to Reduce Loss: This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

## H. Transit

(1) Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2) This insurance is extended to cover loss or damage to property;

(a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

(c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

(d) at the Insured's option, which is incoming to the Insured.

(3) (a) The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

(b) With respect to shipments made under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured.

(4) The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5) Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

## I. Accounts Receivable

(1) All sums due the Insured from direct customers, provided the insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3) Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4) Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1) The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2) The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

**J.  Leasehold Interest**

(1) Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

   a.  the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;
   b.  improvements and betterments to real property which are not covered under any other section of this policy;
   c.  the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

   when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2) a.  "The Interest of the Insured as Lessee or Lessor" when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

   b.  "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3) Definitions:

   The following terms, wherever used in this section shall mean:

   a.  "The Interest of the Insured as Lessee" is defined as:

      (i)  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

      (ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

   b.  "The Interest of the Insured as Lessor"  is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

   c.  "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(3) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

## K. AUTOMATIC COVERAGE

This Policy covers insured physical loss or damage to insured property at any **location** purchased leased or rented by the Insured after the inception date of this Policy. This Additional Coverage applies:

1) from the date of purchase, lease or rental,

2) until the first of the following:

    a) the **location** is bound by the Company.

    b) agreement is reached that the **location** will not be insured under this Policy.

    c) the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached. The time limit begins on the date of purchase, lease or rental.

## L. COMMUNICABLE DISEASE RESPONSE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**communicable disease** and access to such **location** is limited, restricted or prohibited by:

3) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease;** or

4) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease,**

this Policy covers the reasonable and necessary costs incurred by the Insured at such

**location** with the actual not suspected presence of **communicable disease** for the:

1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease.**

COMMUNICABLE DISEASE RESPONSE Exclusions: As respects COMMUNICABLE DISEASE RESPONSE , the following additional exclusion applies :

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

I) **terrorism.**


## M. INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**Communicable disease** and access to such **location** is limited, restricted or prohibited by:

a. an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease ;** or

b. a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease,**

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease.**

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions : As respects INTERRUPTION BY COMMUNICABLE DISEASE; the following additional exclusions apply:

This Policy does not insure loss resulting from:

I) the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease.**

2) loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will

be:

The period of time:

1) starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,

this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

## N. LOGISTICS EXTRA COST

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

a. directly between insured **locations;** or

b. directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss:

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1) extra costs to temporarily continue as nearly **normal** as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for **earth movement** and/or **flood** and/or **wind.**

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1) any loss resulting from disruption in the movement of goods or materials between **contingent time element locations.**

2) any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water,

refrigeration, sewerage and voice, data or video.

3) any loss of income.

4) costs that usually would have been incurred in conducting the business during the same period had there been no disruption of **normal** movement of goods or materials.

5) costs of permanent repair or replacement of property that has been damaged or destroyed.

6) any expense recoverable elsewhere in this Policy.

7) any loss resulting from disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

8) any loss resulting from disruption caused by loss or damage from **earth movement** in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

9) any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:

1) starting at the time of physical loss or damage causing the disruption of the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct  customer,  supplier, contract manufacturer or contract service provider to the Insured, and

2) ending not later than
   a) when with due diligence and dispatch the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

   b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

**O.    MISCELLANEOUS PROPERTY**

This Policy covers insured physical loss or damage to:

1) insured property;

2) property of the type insured that is under contract to be used in a construction project at an insured **location:**

   a) from the time such property is delivered to the Insured or their contractor(with respect to the property under construction) by the manufacturer or supplier;
   b) while such property is located at a storage site; and

   c) while such property is in transit from a storage site to another storage site or to a construction project at an insured **location,** that does not include any such property owned or rented by the contractor; while anywhere within this Policy's TERRITORY, including while in transit.

This Additional Coverage excludes property covered elsewhere in this Policy

MISCELLANEOUS PROPERTY Exclusions: As respects MISCELLANEOUS PROPERTY, the following additional exclusions apply:

   1) This Policy excludes:

   a) **transmission and distribution systems** not at a **location.**

   b) property insured under import or export ocean marine insurance.

   c) property shipped between continents.

   d) airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

   e) property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

   2) This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

**earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

**8.**   **COVERAGE EXTENSIONS**

### A. Ordinance of Law

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for;

(1) i) the cost of demolishing the undamaged property including the cost of clearing the site;

ii) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(2) i) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

ii) any increase in the business interruption, extra expense, rental value, royalties or soft costs loss arising out of the additional time required to comply with said law or ordinance.

### B. Debris Removal

This policy covers the following expenses resulting from a covered loss:
(1) the cost of removal of debris of property covered hereunder;

(2) the cost of removal of debris of property not covered hereunder from the premises of the Insured;

### C. Expediting Costs

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

### D. Claims Preparation Costs

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

### E. Fire Brigade Charges and Extinguishing Expenses

This policy covers the following expenses resulting from a covered loss:

(1) fire brigade charges and any extinguishing expenses which the Insured incurs;
(2) loss and disposal of fire extinguishing materials expended.

### F. Defense Costs

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and /or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

### G. Consequential Loss

(1) In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which cause physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2) This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded.

(3) This policy also insured the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or toher classifications due to a cause of loss not otherwise excluded.

### H. Control of Damaged Merchandise

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.

### I. Brands or Trademarks
In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

## 9. PERILS INSURED AGAINST

This policy insures against all risks of direct physical loss of or damage to property described herein including general average salvage and all other charges

on shipments covered hereunder, including Flood, Earthquake and Terrorism except as hereinafter excluded.

**10.   PERILS EXCLUDED**

This policy does not insure:

A.  against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

>   (1) cause the Insured to sustain such loss, and
>
>   (2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

>   This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.  against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, if a peril not specifically excluded elsewhere in this policy ensues, then this Company shall be liable for only the ensuing loss or damage to property covered.

C.  against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D.  against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E.  against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F.  against moth, vermin, termites and other insects, inherent vice, latent defect, contamination, rust, or dampness of atmosphere.

G.  against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; or be in whole or in part caused by, contributing to, or aggravated by the peril(s) insured against in this policy, except: as otherwise covered by this policy and if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

H.  (1) against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

(a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

(b) or by military, naval, or air forces;

(c) or by an agent of any such government, power, authority, or forces;

(2) against any weapon employing atomic fission or fusion;

(3) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5) against risks of contraband or illegal trade.

Notwithstanding the above provisions, K. (1), (3). (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

Exclusions C, D and E do not apply to alterations, additions and property while in the course of construction, erection, installation, or assembly.

Exclusions C and D do not apply to electronic data processing systems, valuable papers and records, and accounts receivable.

11.  **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A.  Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams, and additions to land such as pavements, roadways, or similar works;

B.  Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C.  Money and securities;

D.  Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber and animals.

E.  Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this exclusion shall not apply to contractor's

equipment;

F.  Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G.  Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel, watercraft or aircraft until the ocean marine insurance terminates, whichever occurs last;

H.  Property sold by or under encumbrance to the Insured after it leaves the custody of the Insured or an employee of the Insured;

I.  Furs, jewelry, jewels, precious or semiprecious stones, gold, silver and platinum or other precious alloys;

J.  Contractor's and subcontractor's machinery, tools and equipment used in erection of property covered unless the total capital value of such property is directly and specifically charged to the job;

K.  Personal property left in the open, when loss is caused by exposure to rain, sleet, snow, sand or dust;

L.  Property illegally acquired;

M.  Transmission and distribution lines beyond  1,000ft from the Insured's premises;

N.  Property more specifically insured elsewhere.

O.  Loss of Market, Loss of Use, Delay of Use

P.  Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

Q.  Indirect or remote loss or damage.

12.  **VALUATION**
In case of loss, the basis of adjustment shall be as follows:

A.  **Stock**

(1) Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2) Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and un-incurred expenses to which the sales price would have been subject.

(3) Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts,

rebates, and un-incurred expenses to which such sales price would have been subject.

**B. Real and Personal Property**

(1) Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2) Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

(3) Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling nformation.

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, paper, tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

"Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means. It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4) Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5) Fine Arts shall be valued at the appraised value; or if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(6) Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7) Permission is granted for the Insured to replace the damaged property with any property at the same site or at another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site, if property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this

Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

(8) Mobile Equipment shall be valued at actual cost value at the time of loss.

### 13.   EARTHQUAKE AND FLOOD

A.  Each loss by earthquake or flood shall constitute a single occurrence hereunder if:

    (1) more than one earthquake shock occurs within any period of 72 hours during the term of this policy, the beginning of which 72 hour period may be determined by the Insured; or

    (2) any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the subsidence of same within the banks of such river(s) or stream(s); or

    (3) any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

Flood: The term "flood" is defined as waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.

Earthquake: The term "earthquake" is defined as a movement or shaking of the earth that is seismic in origin.  Landslide, mudflow, volcanic eruption, earth sinking, subsidence, rock fall shall not be considered an earthquake under this definition.

B.  Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C.  This Company shall not be liable, however, for any loss caused by any earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

### 14.   CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

### 15.   EXCESS INSURANCE

Excess Insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

### 16.   UNDERLYING INSURANCE

A. Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

## 17. OTHER INSURANCE

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly covering the same property against the same causes of loss. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance. Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Company guarantees prompt payment in full of the amount of loss which would have been otherwise recoverable hereunder in the absence of such other collectible insurance and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other collectible insurance minus the cost of recovery. As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

## 18. SUBROGATION

A. Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant of the Insured, is waived.

B. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other Company (ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

C. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

## 19. SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this

policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

**20.   MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

**21.   ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

**22.   NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Office of Risk Management, the Insured shall report such loss or damage to Parker, Smith & Feek, 2233 112th NE, Bellevue, WA 98004 for transmission to this Company. Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

**23.   PROOF OF LOSS**

The Insured, at the request of the Company, will render a signed and sworn proof of loss to the Company or its appointed representative stating; the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

**24.   PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company.

**25.   ASSIGNED ADJUSTER**

It is agreed that Jeff Hellman at McLarens Young, Inc., 19324 40th Avenue W, Suite C, Lynnwood, WA 98036 will represent the Company in the investigation and adjustment of all losses reported under this policy.

**26.   APPRAISAL**

If the Insured and this Company fail to agree on the amount of the loss, each, upon written demand of either the Insured or this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and

disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

### 27. PAIR AND SET

Except as provided under the Machinery clause and paragraph (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A. the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B. the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

### 28. ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall reasonably cooperate with this Company and, at this Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

### 29. SUE AND LABOR

In case of actual or imminent loss or damage covered by this policy, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

### 30. PAYMENT OF LOSS

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

### 31. REINSTATEMENT

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**32.** **SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with Clause 22 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

**33.** **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein. Such certificates are to be forwarded to the Company within 30 days of issuance.

The Company hereby authorizes Parker, Smith & Feek, Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

**34.** **CANCELLATION**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at:

Risk Manager –xyz Company
Office of Risk Management.
Post Office Box
Seattle, WA

and to the additional named insureds/loss payees indicated on the certificates

of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

B. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D. In the event of non-payment of premium this policy may be canceled by the Company by mailing to the Insured at the address shown in A. above stating when, not less than 10 days thereafter, such cancellation shall be effective. Reinstatement of coverage shall be effective immediately upon receipt of premium by the Company.

## 35.   **VALUES**

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 36.   **TITLES OF PARAGRAPHS**
The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 37.   **CONFORMANCE**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

## DEFINITIONS:

### Accidental Interruption Of Services
This Policy covers physical damage resulting from changes in temperature or relative humidity to insured property at an insured location when such changes in temperature or relative humidity result from the interruption of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at the insured location.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

### Actual cash value:
the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

### Aggregate during any policy year:
the Company's maximum amount payable during any policy year.

### Ammonia Contamination
In the event of direct physical loss of or damage to Covered Property caused by a breakdown of covered equipment at a Location covered hereunder, the Company will pay for resulting Ammonia Contamination.

Ammonia Contamination shall mean the loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one occurrence.

### Automatic Coverage

This Policy covers property of the type insured by this Policy at any Location rented, leased or purchased by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease or purchase.

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1)      The Location is agreed to be insured by the Underwriters.

2)      Agreement is reached that the Location will not be insured under this Policy.

3)      The Time Limit specified in the Schedule has been reached.  The Time Limit begins on the date of rental, lease or purchase.

### Contamination:
any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

## Contingent time element location:

### Direct (Tier 1 Supplier/Customer):

Supplier:   A supplier that supplies products or services directly to the Insured,

Customer:   A customer that receives products or services directly from the Insured.

### Indirect (Tier 2 Supplier/Customer):

Supplier:   A supplier that supplies products or services directly to a Tier 1 supplier of the Insured,

Customer:   A customer that receives products or services directly from a Tier 1 customer of the Insured

## Date or time recognition:

the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or

processing of data involving one or more dates or times, including the Year 2000.

## Deferred Payments

This Policy covers insured physical loss or damage to Personal Property of the type insured by this Policy sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of such loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1)   pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.

2)   from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3)   to the extent the buyer continues payments.

4)   not within the Territory of this Policy.

## Earth movement:

any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage, or flood resulting from earth movement will not be considered to be loss by earth movement within the terms and conditions of this Policy.

**Electronic data processing equipment or media:**
any computer, computer system or component, hardware, network, microprocessor, microchip,

integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

**Extended Period Of Liability**

The Business Interruption coverage is extended to cover the reduction in sales:

1) resulting from the interruption of business as covered by Business Interruption;

2) for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred; and

3) commencing with the date on which the liability of the Underwriters for loss resulting from interruption of business would terminate if this Extension had not been included herein.

Extended Period of Liability Exclusions:  As respects Extended Period of Liability, the Time Element Exclusions B of this section does not apply and the following applies instead:

> This Policy does not insure against any increase in loss due to fines or damages for breach of contract or for late or non completion of orders, or penalties of any nature.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended Period of Liability.

Coverage under this Extension does not apply for more than the number of consecutive days specified in the Schedule.

**Fine arts:**
paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary;

sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

**Fines Or Penalties**

This policy covers fines or penalties imposed by a governmental agency and arising from a Regulatory Action, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty.  This policy also insures fines or penalties resulting from a breach of contract by the Insured. This Policy shall pay for the amount of loss in excess of the Policy Deductible, but not to exceed the sublimit as stated in the Declarations applying to this Coverage.

**Flood:**

flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray there'from; all whether driven by wind or not; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from flood associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be flood within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from flood is not considered to be loss by flood within the terms and conditions of this Policy.

## Land And Water Contaminant Or Pollutant Cleanup, Removal And Disposal

This Policy covers the reasonable and necessary cost for the cleanup, removal and disposal of contaminants or pollutants from uninsured property consisting of land, water or any other substance in or on land at the Insured Location if the release, discharge or dispersal of contaminants or pollutants is a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of contaminants or pollutants from such property:

1)   at any location insured for Personal Property only.

2)   at any property insured under Automatic Coverage, Errors And Omissions or Miscellaneous Unnamed Location coverage provided by this Policy.

when the Insured fails to give written notice of loss to the Underwriters within 180 days after inception of the loss.

**Location:**

\.    as specified in the Schedule of Locations, or

B.    if not so specified in the Schedule of Locations:

l )  a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing)

a)  bounded on all sides by public streets, clear land space or open waterways, each not less than 50 feet/15 metres wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

## LOGISTICS EXTRA COSTS

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the normal movement of goods or materials;

1)    directly between insured locations; or
2)    directly between an insured location and a location of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss;
The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1)    extra costs to temporarily continue as nearly normal as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for earth movement and/or flood and "or wind.

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1)    any loss resulting from disruption in the movement of goods or materials between contingent time element locations.
2)    any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.
3)    any loss of income.
4)    costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials.
5)    costs of permanent repair or replacement of property that has been damaged or destroyed.
6)    any expense recoverable elsewhere in this Policy.
7)    any loss resulting from disruption caused by or resulting from terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.
8)    any loss resulting from disruption caused by loss or damage from earth movement in California, in the New Madrid Seismic Zone or in the Pacific Northwest
9)    any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.


The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:
1)    starting at the time of physical loss or damage causing the disruption of the normal movement of goods or materials directly between insured locations; or directly between the insured location and the location of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and
2)    ending not later than:
a)  when with due diligence and dispatch the normal movement of goods or materials directly between insured locations; or directly between the insured

location and the location of the direct customer, supplier, contract
manufacturer or contract service provider to the Insured could be resumed; or
b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of
the DECLARATIONS section.

### Miscellaneous Unnamed Location

This Policy covers all real and personal property at a Miscellaneous Unnamed
Location.

A Miscellaneous Unnamed Location as used herein shall be defined as a location
at which the Insured has property of the type insured hereunder which has not
been reported to the Insurers. Upon report to the Insurers of said location, the
Policy Limit shall apply.

#### Normal:
the condition that would have existed had no physical loss or damage
happened.

#### Normal cost:
the cost associated with the movement of goods or materials suffering the
disruption that the

Insured would have incurred had no physical loss or damage causing
disruption happened.

### Off Premises Data Services

1. PROPERTY DAMAGE—This Policy covers insured physical loss or damage to
   insured property at an insured location when such physical loss or damage
   results from the interruption of off-premises data processing or data
   transmission services by reason of any accidental event at the facilities of
   the provider of such services that immediately prevents in whole or in part
   the delivery of such provided services.

2. TIME ELEMENT—This Policy covers the Actual Loss Sustained and EXTRA
   EXPENSE incurred by the Insured during the period of interruption at an
   insured location of off-premises data processing or data transmission
   services, when the interruption is caused by any accidental event at the
   facilities of the provider of such services that immediately prevents in
   whole or in part the delivery of such provided services.

### CONDITIONS

A. For the purposes of these Off Premises Data Services coverages:
   1) facilities of the provider of off-premises data processing or data
      transmission services can be located worldwide except in Cuba, Iran,
      North Korea, Sudan, Syria or Crimea Region of Ukraine, and
   2) an accidental event to satellites will be considered an accidental event at
      the facilities of the provider

B. This Additional Coverage will apply when the period of interruption of off-premises data processing or data transmission services as described below is in excess of 24 hours.

C. The period of interruption of off-premises data processing or data transmission services is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored.

D. Additional General Provisions:
   1) The Insured will immediately notify the company providing off-premises data processing or data transmission services of any interruption of such services.
   2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

E. This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:
   1) movement for property located in California, in the New Madrid earth Seismic Zone or in the Pacific Northwest Seismic Zone.
   2) terrorism.

F. As used above, the period of interruption of off-premises data processing or data transmission services:
   1) is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.
   2) is limited to only those hours during which the Insured would or could have used service(s) if it had been available.
   3) does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

**Occurrence:**
the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

A. terrorism: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of terrorism during a continuous period of seventy-two (72) hours.

B. earth movement: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all earth movement(s) during a continuous period of seventy-two (72) hours.

**Off-premises data processing or data transmission services:**

The storage or processing of data performed off-premises of the Insured's property, including the

Transmission of voice, data or video over a single, or combination of, computer or communication networks.

**Physical loss or damage to electronic data, programs or software:**
the destruction, distortion or corruption of electronic data, programs or software.

**Representative company:**
Lex London a Division of American International Group UK Limited

**Soft costs:**
costs over and above those that are normal at an insured location undergoing renovation or in the course of construction, limited to the following:

A.    construction loan fees – the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

B.    commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

C.    additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

D.    property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**Terrorism:**

any act, involving the use or threat of: force, violence, dangerous conduct, interference with the

operations of any business, government or other organization or

institution, or any similar act, when the effect or apparent purpose

is:

A.    to influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or

B.    to further or to express support for, or opposition to, any political, religious, social, ideological' or similar type of objective or position.

**Transmission and distribution systems:**
transmission and distribution systems including but not limited to
electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data,
and video. Such systems shall include poles, towers and fixtures,
overhead conductors and devices, underground and underwater conduit,
underground and underwater conductors and devices, line transformers,
service meters, street lighting and signal systems.

**Valuable papers and records:**

This Policy covers insured physical loss or damage to Valuable Papers and Records
while anywhere within this Policy's Territory, including while in transit.

1)     This Additional Coverage excludes loss or damage to:

    a) property described below, if such property cannot be replaced with other
       of like kind and quality, unless specifically declared to the Underwriters.

    b) currency, money or securities.

    c) property held as samples or for sale or for delivery after sale.

2)     Valuable Papers and Records Exclusions:

In addition to the exclusions in the Exclusions clause of this section, as respects Valuable
Papers And Records, this Policy does not insure errors or omissions in processing, or
copying; all unless physical damage not excluded by this Policy results, in which event, only
that resulting damage is insured.

3)  The term Valuable Papers and Records wherever used in this Policy means written, printed
or otherwise inscribed documents and records, including books, maps, films, drawings,
abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.

**Wind:**
direct action of wind including substance driven by wind. Wind does
not mean or include anything defined as flood in this Policy.

## ELECTRONIC DATA ENDORSEMENT A

### 1.   Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

a)   This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b)   However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
Fire, Explosion

### 2.   Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed US$ 10,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

**NMA 2914 - (25.1.01)**

## ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a)  the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b)  any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**NMA 2802 - 17/12/1997**


## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such Suit may be made upon

> Messrs Mendes & Mount
> 750 Seventh Avenue,
> New York N.Y. 10019-6829

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking **to** the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998

**Short Form Privacy Notice – Commercial Lines**

American International Group UK Limited Privacy Policy is available at
https://www.aig.co.uk/privacy-policy or by requesting a copy from: Data Protection
Officer American International Group UK Limited The AIG Building, 58 Fenchurch Street,
London EC3M 4AB, UK] or by email dataprotectionofficer.uk@aig.com

Before providing us with Personal Information about another individual you must (unless
we agree otherwise): (a) inform the individual about the content of this notice and our
Privacy Policy; and (b) obtain their permission (where possible) to share their Personal
Information with us in accordance with the Privacy Policy.

### FRAUDULENT CLAIM CLAUSE

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as
regards amount or otherwise, then this contract shall become void and all claim
hereunder shall be forfeited.

**LMA5062**
04/06/2006

### MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly
or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or
> description, including but not limited to any substance whose presence poses an
> actual or potential threat to human health.

This Exclusion applies regardless whether there is:

(i)     any physical loss or damage to insured property;

(ii)    any insured peril or cause, whether or not contributing concurrently or in any
        sequence;

(iii)   any loss of use, occupancy, or functionality; or

(iv)    any action required, including but not limited to repair, replacement, removal,
        cleanup, abatement, disposal, relocation, or steps taken to address medical or
        legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides
insurance, in whole or in part, for these matters.

**LMA5018 - 14/09/2005**

**WAR AND CIVIL WAR EXCLUSION CLAUSE**

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**NMA464 - 1/1/38**

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE –**
**PHYSICAL DAMAGE - DIRECT**

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA1191

**BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION**

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**NMA2962 - 06/02/2003**

### POLLUTION, CONTAMINATION, DEBRIS REMOVAL EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**1.    Property Not Covered**

This Policy does not cover land, land values or water.

**2.    Pollution and Contamination Exclusion.**

This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, hot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3.    Asbestos, Dioxin or Polychlorinated Biphenyls Exclusions**

This Policy does not cover -

a)    Asbestos, dioxin or polychlorinated biphenyls (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from automatic fire protective system.

b)    Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property that can no longer be used for the purpose for which it was intended

4.    **Debris Removal Exclusion**

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a)    Extract contaminants or pollutants from the debris; or

b)    Extract contaminants or pollutants from land or water; or

c)    Remove, restore or replace contaminated or polluted land or water; or

d)    Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5.    **Authorities Exclusion**

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of the Policy remain the same.

## SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF
## TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured Locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

### Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.

In consideration of a premium charged of USD**96,000**, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein. This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under the LIMITS OF LIABILITY clause of the DECLARATIONS section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD100,000,000,000. If the aggregate insured losses for all insurers exceed USD100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law.

Under this formula, the United States pays 85% (and beginning on January 1, 2016, shall then decrease by

1 percentage point per calendar year until equal to 80 percent) of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of

Terrorism. Reference and Application: The following term(s) means:

Certified Act of Terrorism:

A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and

extended in 2005, 2007, and in 2015. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

    a. The act resulted in aggregate losses in excess of USD5,000,000; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

# Certified Act(s) of Terrorism Endorsement

*This endorsement changes the policy. Please read it carefully.*

In consideration of an additional premium detailed below, with respect to insured locations in the United States, its territories and possessions and Puerto Rico, this policy is extended to insure Certified Act(s) of Terrorism. All other terms, conditions and exclusions of this policy including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this policy.

Notwithstanding anything to the contrary in this policy or any of its endorsements, there is no coverage provided for any costs or expenses associated with coverage provisions for sue and labor or protection and preservation of property, including but not limited to costs or expenses incurred for actions to defend, safeguard, preserve, protect or recover any covered property against actual, imminent or suspected terrorism.

Any loss or damage and resulting business interruption for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act, as amended (all hereinafter,"TRIA"), are not insured under any circumstance by this coverage extension regardless whether caused by or resulting from an insured peril.

**Disclosure of U.S. Government Participation in Payment of Terrorism Loss**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals (see table below) of that portion of the amount of such insured losses that exceeds the Company's applicable retention. However, if aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

| Calendar Year | 2015 | federal share equals | 85% |
|---|---|---|---|
| Calendar Year | 2016 | federal share equals | 84% |
| Calendar Year | 2017 | federal share equals | 83% |
| Calendar Year | 2018 | federal share equals | 82% |
| Calendar Year | 2019 | federal share equals | 81% |
| Calendar Year | 2020 | federal share equals | 80% |

**Disclosure of Cap on U.S. Government and Company Participation in Payment of Terrorism Losses**

TRIA contains a $100 billion cap that limits U.S. Government reimbursement.
If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year and the Company has met its deductible under TRIA, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Disclosure of Premium for Certified Act(s) of Terrorism Coverage**

The premium charged for Certified Act(s) of Terrorism is included and does not include any charges for the portion of loss covered by the U.S. Government as set forth in the federal Terrorism Risk Insurance Program (hereinafter the "Program") established by TRIA.

Insured: Kemper Holdings, LLC
HFP 146 (01-15)                                                                                          Page 1 of 2

**Definitions**

Wherever used in this policy or its endorsements a Certified Act of Terrorism means any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to TRIA.

**Termination**

In the event the Program established by TRIA terminates prior to the expiration of this policy, coverage provided under this endorsement for "Certified Act(s) of Terrorism" shall cease simultaneously.

**Sublimit**

The Company's liability for Certified Act(s) of Terrorism shall not exceed.

**$750,000 (being 15%) part of $ 5,000,000 excess of the program Deductibles.** per occurrence for all loss or damage covered by this policy caused directly by or resulting from a Certified Act of Terrorism, including any loss or damage covered by this policy or its endorsements (by fire or otherwise) which ensues from a Certified Act of Terrorism. This sublimit applies even if another peril not otherwise excluded contributes concurrently or in any other sequence to the loss or damage. This sublimit is a part of and not in addition to the policy limit.

Endorsement Number    01                                       Effective Date      July 31, 2019

Policy Number:        US00085797PR19A

XL Insurance America, Inc.

Insured: Kemper Holdings, LLC
HFP 146 (01-15)                                                                Page 2 of 2

# Terrorism Exclusion Endorsement

*This endorsement changes the policy. Please read it carefully.*

Notwithstanding any provision to the contrary within this policy or any endorsement attached thereto it is agreed that this policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss, except as provided by the Certified Act(s) of Terrorism Endorsement provided that said endorsement is attached to this policy.

This policy excludes loss or damage caused by fire that is part of or arises directly from terrorism. However, with respect to insured locations in the United States, its territories and possessions and Puerto Rico, in the event that the law of the jurisdiction where the insured property sustaining loss or damage requires that damage caused by fire be covered, then this policy covers such loss or damage but only for the physical loss or damage, with adjustment being at the lesser of actual cash value, the cost to repair or the cost to replace, all as of the date of the loss at the location of the loss, for no more than the interest of the Insured and without allowance for upgrades to comply with codes or building laws. This coverage exception for such resulting fire loss or damage does not apply to any time element coverages; including but not limited to business interruption, loss of earnings, extra expense, contingent coverage(s), leasehold interest or rental insurance; nor for any fire legal liability.

For the purpose of this endorsement an act of terrorism means the intentional conduct by any person(s) or group(s) causing loss or damage and/or the threat thereof, in order to induce fear, submission or otherwise influence people or government(s), or to promote, publicize or advance any ideological, religious, social or political cause.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall continue in full force and effect.

Endorsement Number:   02                              Effective Date:   July 31, 2019

Policy Number:        US00085797PR19A

XL Insurance America, Inc.

---

Insured: Kemper Holdings, LLC                                        Page 1 of 1
HFP 144 (01-08)

# Asbestos Exclusion

*This endorsement changes the policy. Please read it carefully*

This endorsement modifies the Commercial Property Policy identified below and is subject to all definitions in that policy.

Notwithstanding any provision(s) to the contrary within this policy or any endorsement(s) attached thereto, this policy does not insure against any loss, damage, cost or expense directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any other sequence thereto:

1. Asbestos material defects, treatment, abatements or removal, unless the asbestos itself is damaged by the peril of fire, lightning, or explosion and then only as to the physical portion of asbestos material damaged on impact by that peril;

2. Regardless of cause, any sum relating to (i) health hazard from asbestos; (ii) treatment, abatement or repair of asbestos material that has become friable; or (iii) demolition, increased cost of reconstruction, removal or any type of cost or loss arising from the enforcement of or compliance with any law or ordinance regulating asbestos material; or

3. Any governmental requirement relating to asbestos material present in or part of any portion of Insured Property that was not damaged by fire, lightening or explosion during the Policy Term and cannot any longer be used where installed.

All other terms and conditions remain unchanged.

| | | | |
|---|---|---|---|
| Endorsement Number: | 03 | Effective Date: | July 31, 2019 |
| Policy Number: | US00085797PR19A | | |
| Insured: | Kemper Holdings, LLC | | |
| Company: | XL Insurance America, Inc | | |

PROP 501 (10-15)                              Page 1 of 1

# Chemical, Biological & Radiological Exposures Exclusion

*This endorsement changes the policy. Please read it carefully.*

This endorsement modifies the Commercial Property Policy identified below and is subject to all definitions in that policy.

Notwithstanding any provision(s) to the contrary within this policy or any endorsement(s) attached thereto, this policy does not insure against any loss, damage, cost or expense directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event contributing concurrently or in any other sequence thereto:

1.  The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2.  The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war has been declared or not, and regardless of any other cause or event contributing concurrently or in any other sequence thereto.

In any action, suit or other proceeding where the Company alleges that, by reason of either of the provisions above, some or all loss or damage is not insured by this policy, the burden of proving that such loss or damage is not excluded shall be upon the Insured.

All other terms and conditions remain unchanged.

| | | | |
|---|---|---|---|
| Endorsement Number: | 04 | Effective Date: | July 31, 2019 |
| Policy Number: | US00085797PR19A | | |
| Insured: | Kemper Holdings, LLC | | |
| Company: | XL Insurance America, Inc. | | |



# General Change Endorsement

*This endorsement changes the policy. Please read it carefully.*

This endorsement modifies the Commercial Property Policy identified below and is subject to all definitions in that policy.

### The Policy Shall Include the Following Definitions:

### High Hazard Wind Zones are defined as follows:

| U.S. State/Country | Counties / Areas |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantley, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Wayne |
| Hawaii | Entire State |
| Louisiana | Parishes of: Acadia, Ascension, Assumption, Cameron, Calcasieu, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, Saint Helena, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge, West Feliciana |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Greene, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Sampson, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Live Oak, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |
| Country/ Territory | Counties / Areas |
| The Bahamas | Entire and all islands  (Acklins, Abaco, Andros, The Berry Islands, Bimini, Cat Island, Crooked Island, Eleuthera, Grand Bahama, Inagua, Long Island, Mayaguana, New Providence, Nassau, Ragged, Rum Cay, San Salvador) |

| Bermuda | Entire island |
|---|---|
| Caribbean Islands | Entire and all islands (Anguilla, Antigua and Barbuda, Aruba, Bahamas, Barbados, Bonaire, British Virgin Islands, Cayman Islands, Cuba, Curacao, Dominica, Dominican Republic, Grenada, Guadeloupe, Haiti, Jamaica, Martinique, Montserrat, Netherlands Antilles, Puerto Rico, Saba, St Eustatius, St Maarten, St Barthelemy, St Kitts and Nevis, St Lucia, St Martin, St Vincent and the Grenadines, Trinidad and Tobago, Turks and Caicos Islands, U.S. Virgin Islands) |
| China | Shanghai (City/Municipality), Guangdong, Fujian, & Zhejiang (Provinces); Hong Kong & Macau (Special Administrative Regions) |
| Guam | Entire Territory |
| Japan | Entire Country |
| Mexico | The States of Baja California Sur, Campeche, Colima, Guerrero, Jalisco, Michoacán, Nayarit, Quintana Roo, Sinaloa, Tabasco, Tamaulipas, Veracruz and Yucatán. |
| Philippines | Entire Country |
| Puerto Rico | Entire Commonwealth |
| Taiwan | Entire Country |
| Other Areas | American Samoa, Marshall Islands |

## HIGH HAZARD AND MODERATE HAZARD EARTH MOVEMENT ZONE

| Country | Area | |
|---|---|---|
| Afghanistan | Entire Country | High Hazard |
| Albania | Entire Country | High Hazard |
| Anguilla & Barbuda | Entire Country | High Hazard |
| Argentina | only the Provinces of Catamarca, Chaco, Cordoba, Formosa, Jujuy, La Rioja, Mendoza, Neuquen, Salta, San Juan, San Luis, Santiago del Estero, and Tucuman; | Moderate Hazard |
| Armenia | Entire Country | High Hazard |
| Austria | Entire Country | Moderate Hazard |
| Australia | State of Western Australia | Moderate Hazard |

| Country | Area | |
|---|---|---|
| Azerbaijan | Entire Country | High Hazard |
| Bangladesh | Entire Country | High Hazard |
| Barbados | Entire and all islands | Moderate Hazard |
| Bhutan | Entire Country | High Hazard |
| Bolivia | Entire Country | High Hazard |
| Bonaire (Neth. Antilles) | Entire Country | Moderate Hazard |
| Bosnia and Herzegovina | Entire Country | Moderate Hazard |
| Bulgaria | Entire Country | Moderate Hazard |
| Burundi | Entire Country | High Hazard |
| Canada (Western) | Cresta Zones W1, W2, W3, W4 and W5 (Vancouver) | High Hazard |
| Canada (Eastern) | Cresta Zones E1, E2, E3, E4 and E5 (Quebec) | High Hazard |
| Cayman Islands | Entire Country | Moderate Hazard |
| Chile | Entire Country | High Hazard |
| China | Postcodes – first two digits (Province): 10 (Beijing), 21 & 22 (Jiangsu), 25, 26, & 27 (Shandong), 30 (Tianjin), 83 & 84 (Xinjiang) | High Hazard |
| China | Entire Country, except Postcodes – first two digits: 10, 21, 22, 25, 26, 27, 30, 83 and 84 | Moderate Hazard |
| Columbia | Capital District (aka Capital District of Bogotá, Bogotá DC, or Distrito Capital) and the following Departments: Caldas, Cundinamarca, Quindio, Risaralda, Tolima, and Valle del Cauca | High Hazard |
| | All other districts | Moderate Hazard |
| Costa Rica | Entire Country | High Hazard |
| Croatia | Entire Country | High Hazard |
| Cuba | Entire Country | High Hazard |
| Curacao | Entire Country | Moderate Hazard |

| Country | Area | |
|---------|------|---|
| Cyprus | Entire Country | Moderate Hazard |
| Dominica | Entire Country | Moderate Hazard |
| Dominican Republic | Entire Country | High Hazard |
| Ecuador | Entire Country | High Hazard |
| Egypt | Entire Country | Moderate Hazard |
| El Salvador | Entire Country | High Hazard |
| Ethiopia | Entire Country | High Hazard |
| Greece | Entire Country | High Hazard |
| Grenada | Entire Country | High Hazard |
| Guam | Entire Territory | High Hazard |
| Guatemala | Entire Country | High Hazard |
| Guadeloupe | Entire Country | High Hazard |
| Haiti | Entire Country | High Hazard |
| Honduras | Entire Country | High Hazard |
| Iceland | Entire Country | Moderate Hazard |
| India | only the States of Arunachal Pradesh, Assam, Bihar, Gujarat, Jammu, Himachal Pradesh, Madhya Pradesh, Manipur, Meghalaya, Tripura, Mizoram, Nagaland, Punjab, West Bengal, Uttar Pradesh and Uttaranchal | Moderate Hazard |
| Indonesia | Entire Country | High Hazard |
| Iran | Entire Country | High Hazard |
| Israel | Entire Country | High Hazard |
| Italy | Entire Country (including the Provinces of Bologna, Ravenna and Ferrara) except Regions Valle D'Aosta, Piemonte, Liguria, Lombardia, and the remainder of Emilia-Romagna | High Hazard |

| Country | Area | |
|---|---|---|
| | Regions Valle D'Aosta, Piemonte, Liguria, Lombardia, and Emilia-Romagna, but not including the Provinces of Bologna, Ravenna or Ferrara | Moderate Hazard |
| Jamaica | Entire Country | Moderate Hazard |
| Japan | Entire Country | High Hazard |
| Jordan | Entire Country | High Hazard |
| Kazakhstan | Entire Country | High Hazard |
| Kyrgyzstan | Entire Country | High Hazard |
| Martinique | Entire Country | Moderate Hazard |
| Montserrat | Entire Country | High Hazard |
| Mexico | Baja California, Baja California Sur, Chiapas, Colima, Guerrero, Jalisco, Mexico (including Mexico City, Michoacán, Morelos, Nayarit, Oaxaca, Puebla, Sinaloa, Sonora, & Tlaxcala. | High Hazard |
| | Durango, Guanajuato, Hidalgo, Queretaro, Tabasco, Veracruz, Zacatecas | Moderate Hazard |
| Moldova | Entire Country | Moderate Hazard |
| Monaco | Entire Country | Moderate Hazard |
| Montenegro | Entire Country | High Hazard |
| Myanmar | Entire Country | High Hazard |
| Nepal | Entire Country | High Hazard |
| New Zealand | Entire Country | High Hazard |
| Nicaragua | Entire Country | High Hazard |
| Pacific Islands | American Samoa, French Polynesia, New Caledonia, Samoa, Federated States of Micronesia, Northern Marianas, Marshall Islands and Kiribati | Moderate Hazard |
| | Fiji including Loyalty Islands, Palau, Solomon | High Hazard |

| Country | Area | |
|---|---|---|
| | Islands, Tonga, Tuvalu and Vanuatu | |
| Pakistan | Entire Country | High Hazard |
| Panama | Entire Country | High Hazard |
| Papua New Guinea | Entire Country | High Hazard |
| Peru | Entire Country | High Hazard |
| Philippines | Entire Country | Moderate Hazard |
| Portugal | Faro, Beja, Setubal, Evora, Lisbon, Santarem, & Portalegre Districts | High Hazard |
| | Remainder of Country | Moderate Hazard |
| Puerto Rico | Entire Commonwealth | Moderate Hazard |
| Romania | Entire Country | High Hazard |
| Serbia | Entire Country | High Hazard |
| Saint Barthelemy | Entire Island | High Hazard |
| Saint Croix | Entire Island | High Hazard |
| Saint Eustatius | Entire Island | High Hazard |
| Saint Kitts & Nevis | Entire Island | High Hazard |
| Saint Lucia | Entire Island | Moderate Hazard |
| Saint Martin (Maarten) | Entire Island | High Hazard |
| Saint Vincent and the Grenadines | Entire Island | Moderate Hazard |
| Switzerland | Entire Country | Moderate Hazard |
| Taiwan | Entire Country | High Hazard |
| Tajikistan | Entire Country | High Hazard |
| Trinidad & Tobago | Entire Country | Moderate Hazard |
| Tunisia | Entire Country | High Hazard |

| Country | Area | |
|---------|------|---|
| Turkey | Entire Country | High Hazard |
| Turkmenistan | Entire Country | High Hazard |
| USA<br>New Madrid | See New Madrid Seismic Zone Table | Moderate Hazard |
| US Pacific Northwest Seismic Zone 1 | Washington State counties of: Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom<br><br>Oregon, counties of: Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, Lake, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill | High Hazard |
| US Pacific Northwest Seismic Zone 2 | All remaining counties in Washington and Oregon | Moderate Hazard |
| USA | Alaska, California, Hawaii | High Hazard |
| Uzbekistan | Entire Country | High Hazard |
| Venezuela | Cresta Zones 1, 2 and 3 (Caracas) | High Hazard |
| Virgin Islands | All Islands | High Hazard |
| Zambia | Entire Country | High Hazard |
| Zimbabwe | Entire Country | High Hazard |

The New Madrid Seismic Zone is defined as follows:

| States | Counties |
|---|---|
| Arkansas | Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St Francis, White, Woodruff |
| Illinois | Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saint Clair, Saline, Sangamon, Scott, Shelby, Union, Wabash, Washington, Wayne, White, Williamson |
| Indiana | Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, Warrick |
| Kentucky | Ballard, Breckenridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster |
| Mississippi | Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo |
| Missouri | Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, St. Charles, St. Francois, Ste. Genevieve, St. Louis, St. Louis City, Scott, Shannon, Stoddard, Texas, Warren Washington, Wayne |
| Tennessee | Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Stewart, Tipton, Wayne, Weakley |

High Hazard Flood Zones are defined as follows:

1   The geographical area  specifically designated as a Special Flood Hazard Area on a Flood Insurance Rate Map by the Federal Insurance and Mitigation Administration (FIMA) Special Flood Hazard Areas shall mean the areas of a flood insurance rate map identified as zones A, AO, AH, A1-A30, AE, A99, AR, AR/A, AR/AE, AR/A1-A30, AR/AH, AR/AO, V, V1-V30, and VE

2.   Any geographical area, which in the past 100 years has been subjected to Flood, regardless of whether (a) the building or structure existed at the time of the flooding, (b) any physical loss or damage occurred; or (c) any claim for damage or loss was ever filed.

3. Any geographical area, that is partially or totally protected by dams, dikes, levees or walls which are intended to protect property from the level of a one hundred (100) year flood or its worldwide equivalent, regardless of any Zone or Area designation or assignment by Federal Insurance and Mitigation Administration (FIMA) or other recognized authority having jurisdiction.

4. The entire country of Thailand.

**All other terms and conditions of the policy remain unchanged.**

| | | | |
|---|---|---|---|
| Endorsement Number: | 05 | Effective Date: | July 31, 2019 |
| Policy Number: | US00085797PR19A | | |
| Insured: | Kemper Holdings, LLC | | |
| Company: | XL Insurance America, Inc. | | |

# General Change Endorsement

*This endorsement changes the policy. Please read it carefully.*

This endorsement modifies the Commercial Property Policy identified below and is subject to all definitions in that policy.

## Clause 2. PARTICIPATION - is deleted and replaced with the following:

The Company's liability under this Policy will not exceed **15% (fifteen percent)** or $150,000,000 part of $1,000,000,000 of any limits of liability as provided in Item 3. Limits of Liability, nor **15% (fifteen percent)** or $150,000,000 part of $1,000,000,000 of the recoverable loss in any one Occurrence.

## Clause 3. LIMITS OF LIABILITY – the following sublimits are amend to read as follows:

| | |
|---|---|
| **earth movement** | USD200,000,000 in the **aggregate during any policy year**, except NCP for all **locations in High Hazard Earth Movement Zones**, except for locations in the State of Washington |
| **ELECTRONIC DATA (as provided under NMA 2914, Endorsement A)** | USD10,000,000 |
| **flood** | USD200,000,000 in the **aggregate during any policy year**, except USD100,000,000 in the **aggregate during any policy year** as respects property located in **High Hazard Flood Zones** |
| **OFF PREMISES DATA SERVICES PROPERTY DAMAGE and TIME ELEMENT combined** | USD5,000,000 in the **aggregate during any policy year** |
| **SERVICE INTERRUPTION PROPERTY DAMAGE and SERVICE INTERRUPTION TIME ELEMENT combined** | USD10,000,000 |
| **Fire Brigade Charges and Extinguishing Expenses** | USD50,000,000 |

**Clause 3. LIMITS OF LIABILITY** – is amended to include the following sublimit:

| | |
|---|---|
| Royalties (formerly included under Contingent Time Element Extended) | USD25,000,000 |

**Clause 4. DEDUCTIBLES** – the following dedcutibles are amend to read as follows:

| | |
|---|---|
| Earthquake | Two percent (2%) of the actual value per unit of insurance per the VALUATION specified in the policy, of the Insured Property at locations involved; <br><br> This deductible shall apply only to those units of insurance suffering a loss in the occurrence and for which claim is being made, subject to a combined minimum of $100,000 per location |
| Flood, except High Hazard Flood Zones | USD100,000 combined all coverages, per location |
| Flood in High Hazard Flood Zones | USD250,000 combined all coverages, per location |

**Clause 4. DEDUCTIBLES** – is amended to include the following deductible:

| | |
|---|---|
| Wind in High Hazard Wind Zones | USD100,000 combined all coverages, per location |

**Clause 6. TERRITORY** - is deleted and replaced with the following:

Anywhere in the world where Insured Property is located excluding countries and/or places known or formerly known as: Afghanistan, Albania, Bosnia-Herzegovina, Burma (Myanmar), Cuba, Chechnya, Croatia, Iran, Iraq, Kampuchea (Cambodia), Kosovo, Libya, Liberia, Macedonia, Montenegro, North Korea, Pakistan, Palestine, Serbia, Sudan, Syria, and Zimbabwe or any other country in which, during the policy term and for such time as sanctions exist, the United States government prohibits the Insured and the Company from transacting business.

**Clause 10 <u>PERILS EXCLUDED</u>, Paragraph H. - the following paragraph is hereby deleted in its entirety:**

> Notwithstanding the above provisions, K (1), (3). (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated  Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

**Clause 10. <u>PERILS EXCLUDED</u> - is amended to include the following:**

> I. Earth movement at all **locations in High Hazard Earth Movement Zones**, except for locations in the State of Washington.

**Clause 11. <u>PROPERTY EXCLUDED</u>  - is amended to include the following:**

R.  spacecraft or satellites, and contents thereof;

S.  off-shore property, but not to exclude:

1)  structures and their contents extending from land or shore;

2)  waterborne vessels and their contents or floating docks permanently moored to dock, riverbank, or shore; or

3)  waterborne vessels and their contents that are normally moored to dock riverbank or shore, but which, in order to avoid loss or liability resulting from perils covered hereunder, are transported out of harm's way or leave their moorings as required under annual certification procedures;

T.  personal property of condominium owners in the Lincoln Square Condominiums, 650 Bellevue Way, Bellevue, WA.

**Clause 34. <u>CANCELLATION</u>, paragragh A. – is deleted and replaced with the following:**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at:

Risk Manager –Kemper Holdings, LLC
Office of Risk Management
575 Bellevue Square
Bellevue, WA  98004

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

**Under DEFINITIONS, OFF PREMISES DATA SERVICES  - is deleted in its entirety and replaced with the following:**

**1. PROPERTY DAMAGE -** This Policy covers insured physical loss or damage to insured property at an insured **location** when such physical loss or damage results from the interruption of **off-premises data processing or data transmission services** by reason of any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

**2. TIME ELEMENT -** This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the period of interruption at an insured **location** of **off-premises data processing or data transmission services,** when the interruption is caused by any accidental event at the facilities of the provider of such services that immediately prevents in whole or in part the delivery of such provided services.

**CONDITIONS:**

A. This Additional Coverage will apply when the period of interruption of **off-premises data processing or data transmission services** as described below is in excess of 24 hours.

B. The period of interruption of **off-premises data processing or data transmission services** is the period  starting with the time when an interruption of provided services happens; and ending when with due diligence and and dispatch the service could be wholly restored.

C. Additional General Provisions:

1) The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

D. This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) **earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

2) **terrorism.**

E. As used above, the period of interruption of off-premises data processing or data transmission service:

1) is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.

2) is limited to only those hours during which the insured would or could have used service(s) if it had been available.

3) does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

**SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT** - Is hereby declared null and void

**All other terms and conditions of the policy remain unchanged.**

| | | | |
|---|---|---|---|
| Endorsement Number. | 06 | Effective Date. | July 31, 2019 |
| Policy Number | US00085797PR19A | | |
| Insured. | Kemper Holdings, LLC | | |
| Company: | XL Insurance America, Inc. | | |

# EXHIBIT D

Policy Number MJ2-L9L-442757-079
Issued by Liberty Mutual Fire Insurance Company

### ANNUAL MEETING NOTICE

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

### PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

**In witness whereof**, the company has caused this policy to be signed by its President and its Secretary.

SECRETARY                              PRESIDENT



LIL 90 04 06 13                    © 2013 Liberty Mutual Insurance. All rights reserved.                    Page 1 of 1



Policy number: MJ2-L9L-442757-079

# SPECIAL PROPERTY POLICY
## POLICY INDEX

| TITLE | FORM NO | EDITION DATE |
|---|---|---|
| Annual Meeting Notice | LIL 90 04 | 06 13 |
| Policy Index | SL9000 | 10 08 |
| Producer of Record Information | EN4008 | 01 11 |
| Policy Declarations | SL9001 | 10 08 |
| Special Form | ------- | ------- |
| Exclusion of Certified Act(s) of Terrorism | SL9101R1 | 01 15 |
| Disclosure - Terrorism Risk Insurance Act | EN9052 | 01 15 |
| Computer Virus and Denial of Access Extension | SL9007 | 10 08 |
| Date or Time Failure Exclusion | SL9009 | 10 08 |
| Pollution Amendatory | SL9721 | 10 08 |
| Kemper Holdings, LLC Amendatory Addition of Specific Company Endorsements | SL9898 | 10 08 |
| Policyholder Notice - Company Contact Information | SNI 90 01 | 05 12 |

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved

Policy number  MJ2-L9L-442757-079

## Important Notice

## PRODUCER OF RECORD INFORMATION

This policy has been issued by us to you through the following producer of record:

Name and Address of Producer of Record

Dwight Jarvis
Parker Smith & Feek Inc
2233 112Th Ave Ne
Bellevue, WA  98004

# SPECIAL PROPERTY POLICY
## DECLARATIONS

Policy number  MJ2-L9L-442757-079

Named Insured and Mailing Address
Kemper Holdings, LLC
575 Bellevue Square                                    Premium Will Be Billed Annually
Bellevue, WA  98004

Policy Period:        07/31/2019 to 07/31/2020        ( ) at 12:00 Noon
Invoice/Rating Period: 07/31/2019 to 07/31/2020       (X) at 12:01 A.M. Standard Time at Location Insured.

Description of Coverage:

**Coverage:**
Coverage is provided per the Attached Form.

**Limit of Liability:**
**Our Limit Of Liability** in a single **Occurrence** regardless of the number of **Covered Locations** or coverages involved
will not exceed the policy **Limit of Liability** of **Our** pro rata share of 10% of $1,000,000,000 that being $100,000,000.

When a **Limit of Liability** or sub-limit of liability for a **Covered Location** applies, coverage or other specified property
is shown 10% of that limit or sub-limit up to a maximum of $100,000,000 will be the **Limit of Liability** payable for a
**Covered Loss. Coverage is provided per the Attached Form.**

| | | |
|---|---|---|
| Premium (Excluding premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended): | $ | 228,033 |
| Premium for "certified act(s) of terrorism" under the Terrorism Risk Insurance Act (TRIA), as amended: | $ | DECLINED |
| Total Premium/Other Charges for above Invoice/Rating Period: | $ | 228,033 |
| The Deposit Premium/Other Charges is: | $ | 228,033 |

Forms Applicable:  See attached inventory.

Issued by:  Liberty Mutual Fire Insurance Company         Countersigned by:

_____
Authorized Representative

SL9001 10-08                                                              Page 1 of 1

**Kemper Holdings, LLC** and any financial and/or managerial controlled subsidiary, division, trust, associated or allied company or foundation of the named insured, (or subsidiary thereof) and any interest in any partnership or joint venture in which Kemper Holdings, LLC or its subsidiaries (or subsidiaries thereof has management control or ownership, or for which they have assumed the responsibility for insuring, as now or hereafter constituted or acquired, and any antecedent companies for which Kemper Holdings, LLC (or subsidiaries therefor) may be or become liable; herein referred to as "the insured".

1. **TERM OF INSURANCE**

   In consideration of the $228,033_annual premium, this policy attaches and covers for a period of 12 months, from 07/31/2019 to 07/31/2020, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

   The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy (ies) replaced or renewed by this policy.

2. **PARTICIPATION**

   This policy covers for the percent interest in this insurance shown elsewhere in this Policy, and the Underwriters shall not be liable for more than its proportion of the limits of liability set forth herein.

3. **SUBLIMITS:** As per the attached Schedule in SECTION III – SCHEDULE OF PROGRAM SUBLIMITS

4. **DEDUCTIBLES:** As pre the attached Schedule in SECTION IV – SCHEDULE OF PROGRAM DEDUCTIBLES

5. **LOSS PAYABLE**

   Loss, if any, shall be adjusted with and payable to Insured, or order whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

6. **TERRITORY**

   This policy covers loss occurring anywhere in the World.

7. **COVERAGE**

   Except as hereinafter excluded, this policy covers:

   A. **Real and Personal Property**

   (1) The interest of the Insured in all real and personal property including but not limited to property owned, used, leased or intended for use by the Insured, or hereafter constructed, erected, installed, or acquired, including while in course of construction, erection, installation, and assembly. In the event of

loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2) The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

(3) Real and personal property which the Insured is responsible for or has agreed to insure.

(4) At the sole option of the Insured, this policy covers in any given instance personal property, except automobiles, of the Insured's officials and employees while on the premises of the Insured.

(5) Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by contract.

## B. Business Interruption

(1) Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business including 90 days ordinary payroll and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3) In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A., which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including 90 days ordinary payroll, directly attributable to such research and development activities.

(4) However, this Company shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock or for the time required reproducing said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5) Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:

(a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or

(b) by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6) Experience of the Business: In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7, A. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

(7)

## C. Extra Expense

(1) Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2) "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

## D. Rental Value

(1) Rental Value loss sustained by the Insured resulting directly from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2) "Rental Value" is defined as the sum of:

(a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3) Experience of the Business:

(a) In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss

occurred to real and personal property as described in Clause 7.A.

(b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

## E. Royalties

(1) Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3) Resumption of Operations: The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by this Company.

(4) Experience of the Business: In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.

## F. Time Element Extensions

(1) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against:

(a) Service Interruption: electrical, steam, gas, water, sewer, telephone, or any other utility or service transmission lines and related plants, substations and equipment situated on or outside of the premises;

(b) Contingent Time Element: Property that prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the policy territory;

(c) Impounded Water: Dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

(d) Leader Property: Property not owned or operated by the Insured, located in the same, which attracts business to the Insured.

(2) Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained during the period of time when as a direct result of a peril insured against, access to real or personal property is thereby prohibited by order of civil or military authority. A 30-day sub-limit will apply for business interruption.

(3) Ingress/Egress: This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, access to or egress from real or personal property is thereby prevented. A 30-day sub-limit will apply for business interruption.

## G. **Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1) Period of Recovery: The length of time for which loss may be claimed:
   (a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;
   (b) and such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:
      i.   the date on which the liability of the Company for loss or damage would otherwise terminate; or
      ii.  the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;
      but in no event for more than one year from said later commencement date;
   (c) with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

   (d) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2) Special Exclusions: This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of

the premises.

(3) Expense to Reduce Loss: This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

## H. Transit

    (1)    Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

    (2)    This insurance is extended to cover loss or damage to property;

        (a)    sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

        (b)    arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

        (c)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

        (d)    at the Insured's option, which is incoming to the Insured.

(3) (a) The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

(b) With respect to shipments made under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured.

(4) The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5) Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

## I.  Accounts Receivable

(1) All sums due the Insured from customers,  provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3) Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4) Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1) The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2) The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

## J.    Leasehold Interest

(1) Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

a.  the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;
b.  improvements and betterments to real property which are not covered under any other section of this policy;
c.  the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered wholly or partially un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2) a. "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

b. "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3) Definitions:

The following terms, wherever used in this section shall mean:

a. "The Interest of the Insured as Lessee" is defined as:

(i) the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

(ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

b. "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

c. "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(3) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

**K.**   **Radioactive Contamination**

The Company will pay for direct physical loss of or damage to covered property as a premises described in the schedule of locations caused by sudden and accidental radioactive contamination, including resultant radiation damage, provided:

a.   Radioactive contamination arises our of material on the described premises which is commonly known to be radioactive;

b.   Radioactive material is kept on the described premises for the purpose of the Insured's business activities;

There is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in that type of nuclear reactor on the described premises.

The Company will pay no more than the applicable sublimit of insurance.

**L.  Terrorism**

Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this Policy.

For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism.

**8.    COVERAGE EXTENSIONS**

**A.  Demolition and Increased Cost of Construction**

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for;

(1) the cost of demolishing the undamaged property including the cost of clearing the site;

(2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

(4) any increase in the business interruption, extra expense, rental value, royalties or soft costs loss arising out of the additional time required to comply with said law or ordinance.

## B. Debris Removal

This policy covers the following expenses resulting from a covered loss:
(1)      the cost of removal of debris of property covered hereunder;

(2)      the cost of removal of debris of property not covered hereunder from the premises of the Insured;

## C. Expediting Expense

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

## D. Loss Adjustment Expenses

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

## E. Fire Brigade Charges and Extinguishing Expenses

This policy covers the following expenses resulting from a covered loss:

(1)      fire brigade charges and any extinguishing expenses which the Insured incurs;

(2)      loss and disposal of fire extinguishing materials expended.

## F. Defense Costs

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and /or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or

settlement of any such claim or suit as it deems expedient.

G. **Consequential Loss**

(1) In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which cause physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2) This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded.

(3) This policy also insured the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or toher classifications due to a cause of loss not otherwise excluded.

H. **Control of Damaged Merchandise**

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.

I. **Brands or Trademarks**
In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

9. **PERILS INSURED AGAINST**

This policy insures against all risks of direct physical loss of or damage to property described herein including general average, salvage and all other charges on shipments covered hereunder, except as hereinafter excluded.

10. **PERILS EXCLUDED**

This policy does not insure:

A. against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

(1) cause the Insured to sustain such loss, and

(2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.   against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, if a peril not specifically excluded elsewhere in this policy ensues, then this Company shall be liable for only the ensuing loss or damage to property covered.

C.   against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D.   against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E.   against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F.   against moth, vermin, termites and other insects, inherent vice, latent defect, contamination, rust, or dampness of atmosphere.

G.   against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; or be in whole or in part caused by, contributing to, or aggravated by the peril(s) insured against in this policy, except: as otherwise covered by this policy and if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

H.   (1) against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

(a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;
(b) or by military, naval, or air forces;

(c) or by an agent of any such government, power, authority, or forces;

(2) against any weapon employing atomic fission or fusion;

(3) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5) against risks of contraband or illegal trade.

Notwithstanding the above provisions, K. (1), (3). (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

Exclusions C, D and E do not apply to alterations, additions and property while in the course of construction, erection, installation, or assembly.

Exclusions C and D do not apply to electronic data processing systems, valuable papers and records, and accounts receivable.

## 11.   **PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A. Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams, and additions to land such as pavements, roadways, or similar works;

B. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C. Money and securities;

D. Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber, and animals;

E. Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this exclusion shall not apply to contractor's equipment;

F. Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G. Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel, watercraft or aircraft until the ocean

marine insurance terminates, whichever occurs last;

H.  Property sold by or under encumbrance to the Insured after it leaves the custody of the Insured or an employee of the Insured;

I.  Furs, jewelry, jewels, precious or semiprecious stones, gold, silver and platinum or other precious alloys;

J.  Contractor's and subcontractor's machinery, tools and equipment used in erection of property covered unless the total capital value of such property is directly and specifically charged to the job;

K.  Personal property left in the open, when loss is caused by exposure to rain, sleet, snow, sand or dust;

L.  Property illegally acquired;

M.  Transmission and distribution lines beyond 1,000 feet from the Insured's premises;

N.  Property more specifically insured elsewhere.

## 12.  VALUATION
In case of loss, the basis of adjustment shall be as follows:

A. **Stock**

(1)  Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

(2)  Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and un-incurred expenses to which the sales price would have been subject.

(3)  Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts, rebates, and un-incurred expenses to which such sales price would have been subject.

B. **Real and Personal Property**

(1)  Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

(2)  Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to

repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

(3)     Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information.

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, paper, tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

"Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means. It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4)     Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5)     Fine Arts shall be valued at the appraised value; or if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(6)     Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7)     Permission is granted for the Insured to replace the damaged property with any property at the same site or at another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site, if property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

(8)     Mobile Equipment shall be valued at actual cost value at the time of loss.

13.   **EARTHQUAKE AND FLOOD**

    A. Each loss by earthquake or flood shall constitute a single occurrence hereunder if:

        (1)    more than one earthquake shock occurs within any period of 72 hours during the term of this policy, the beginning of which 72 hour period may be determined by the Insured; or

        (2)    any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the subsidence of same within the banks of such river(s) or stream(s); or

        (3)    any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

    Flood: The term "flood" is defined as waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.

    Earthquake: The term "earthquake" is defined as a movement or shaking of the earth that is seismic in origin. Landslide, mudflow, volcanic eruption, earth sinking, subsidence, rock fall shall not be considered an earthquake under this definition.

    B. Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

    C. This Company shall not be liable, however, for any loss caused by any earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

14.   **CONTRIBUTING INSURANCE**

    Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

15.   **EXCESS INSURANCE**

    Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

16.   **UNDERLYING INSURANCE**

    A. Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not

prejudice or affect any recovery otherwise payable under this policy.

B. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

## 17.   OTHER INSURANCE

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly covering the same property against the same causes of loss. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance. Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Company guarantees prompt payment in full of the amount of loss which would have been otherwise recoverable hereunder in the absence of such other collectible insurance and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other collectible insurance minus the cost of recovery. As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

## 18.   SUBROGATION

A. Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant of the Insured, is waived.

B. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other Company (ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

C. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

## 19.   SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided

between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

**20.  MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

**21.  ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

**22.  NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Office of Risk Management, the Insured shall report such loss or damage to Parker, Smith & Feek, 2233 112th NE, Bellevue, WA 98004 for transmission to this Company. Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

**23.  PROOF OF LOSS**

The Insured, at the request of the Company, will render a signed and sworn proof of loss to the Company or its appointed representative stating; the place, time, cause of the loss, damage, or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

**24.  PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company.

**25.  ASSIGNED ADJUSTER**

It is agreed that McLarens Young, Inc., 19324 40th Avenue W, Suite C, Lynnwood, WA 98036 will represent the Company in the investigation and adjustment of all losses reported under this policy.

**26.  APPRAISAL**

If the Insured and this Company fail to agree on the amount of the loss, each, upon written demand of either the Insured or this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

27. **PAIR AND SET**

Except as provided under the Machinery clause and paragraph (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A. the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B. the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

28. **ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall reasonably cooperate with this Company and, at this Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

29. **SUE AND LABOR**

In case of actual or imminent loss or damage covered by this policy, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

30. **PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

**31.** **REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**32.** **SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against It for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with Clause 22 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

**33.** **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein. Such certificates are to be forwarded to the Company within 30 days of issuance.

The Company hereby authorizes Parker, Smith & Feek, Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

**34. CANCELLATION**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at:

Kemper Holdings, LLC
Attn: Paul Cronkite
575 Bellevue Square
Bellevue, WA 98004

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

B. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D. In the event of non-payment of premium this policy may be canceled by the Company by mailing to the Insured at the address shown in A. above stating when, not less than 10 days thereafter, such cancellation shall be effective. Reinstatement of coverage shall be effective immediately upon receipt of premium by the Company.

**35. VALUES**

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

**36. TITLES OF PARAGRAPHS**
The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

**37. CONFORMANCE**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

**Section III Schedule of Program Sublimits**

**LIMITS OF LIABILITY**

This Company shall not be liable for more than its proportion of US$1,000,000,000 for any one occurrence, except:

A. With respect to the perils of Flood and Earthquake as defined elsewhere in the policy, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of US$200,000,000 for earthquake and US$200,000,000 for flood, which shall apply separately to each peril as referred to in Section 13. Even if the peril of flood or earthquake is the predominant cause of loss or damage, any ensuing loss or damage caused by fire, explosion, water damage or leakage from fire protective equipment not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause, except:

| | |
|---|---|
| Ammonia Contamination | US$ 500,000 |
| Attraction Property | 30 consecutive days, maximum US$ 25,000,000, 1 mile limitation |
| Automatic Coverage | 120 day period but not to exceed a US$50,000,000 limit per **location** |
| Civil or Military Authority | 30 consecutive days, maximum US$25,000,000 5 mile limitation |
| Claims Preparation Costs | US$100,000,000 |
| Communicable Disease Response | US$ 1,000,000 in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed US$1,000,000 in the **aggregate during any policy period** year regardless of the number of location, coverages or **occurrences** involved. |
| Computer Systems Non Physical Damage and Data, Programs or Software Combined | US$ 10,000,000 (PER NMA2914) |
| Contingent Time Element Extended | US$ 25,000,000 (No Further than Tier 2) |
| **Earth Movement** | US$ 200,000,000 in the **aggregate during any policy period** |
| Errors and Omissions | US$ 100,000,000 |
| Expediting Costs and Extra Expense Combined | US$ 100,000,000 |
| Extended Period of Liability | 365 day period |
| Fine Arts | US$ 100,000,000 but not to exceed a USD10,000 limit per item for **Irreplaceable fine arts** not on a schedule on file with the company |
| Fines or Penalties for breach of contract or for late or non completion of orders | |

| combined | US$ 100,000 |
|---|---|
| Flood | US$ 200,000,000 in the **aggregate during any policy period** |
| Ingress/ Egress | 30 day period, maximum US$25,000,000 5 mile limitation |
| Interruption by Communicable Disease | 12 month period but not to exceed a US$ 1,000,000 limit in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for **COMMUNICABLE DISEASE RESPONSE** and this coverage combined shall not exceed US$ 1,000,000 in the **aggregate during any policy period year** regardless of the number of locations, coverages or **occurrences** involved. |
| Land and Water Contamination Cleanup, Removal and Disposal | US$250,000 in the **aggregate during any policy period year** |
| Logistics Extra Cost | 180 day period but not to exceed 200% of the **normal cost** |
| Miscellaneous Property | As respects property at a **location:**<br>    a) US$ 50,000,000 **per location**<br>As respects property not at a **Location** a) US$ 50,000,000 |
| Off Premises Data Services Property Damage and Off Premises Data Services Time Element Combined | US$ 5,000,000 |
| Ordinary Payroll | 60 day period |
| Service Interruption | US$ 10,000,000, 24 hour waiting period |
| Terrorism | US$ 5,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year:**<br>    a) US$5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY AND TEMPORARY REMOVAL OF PROPERTY combined<br>    b) US$ 5,000,000 for **Flood** when caused by or resulting from **terrorism**<br><br>Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this |

| | Policy. |
| --- | --- |
| | For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism. The limits for TERRORISM shall not include **actual cash value** portion of fire damage caused by **terrorism.** |
| Valuable Papers and Records | US$ 100,000,000 but not to exceed a US$100,000 limit per item for **Irreplaceable valuable paper and records** not on a schedule on file with the company |
| Landscape Gardening, Car Parks, Parking Lots, Pavement, Roadways, Railways, Transformer Enclosure or Walkways. | US$1,000,000 |
| Water that is Contained Within Any Enclosed Tank, Piping System or Any other Processing Equipment | US$1,000,000 |
| Accidental Interruption of Services and Consequential Loss | US$ 5,000,000 |
| Debris Removal | US$ 100,000,000 |
| Deferred Payments | US$ 25,000,000 |
| Accounts Receivable | US$ 50,000,000 |
| Soft Costs | US$ 50,000,000 |
| Transit | US$ 25,000,000 |
| Ordinance of Law Combined Coverage A, B & C  Undamaged Portion, Demolition & Increased Cost of Construction  Coverage D  Increased Period of Restoration | US$ 200,000,000   US$   25,000,000 |
| Fire Brigade Charges | US$ 50,000,000 |
| Impounded Water | 30 day period |
| Radioactive Contamination | US$1,000,000 |



**SECTION IV – SCHEDULE OF**
**PROGRAM DEDUCTIBLES**

| Earthquake | Property Damage |
| --- | --- |
| | 2% **per unit of Insurance** as defined below Time element : 2% **per Unit of Insurance** as defined below The above are subject to a minimum deductible of US$ 100,000 for Property Damage and Time Element Combined, per **Location** |
| **Flood** | US$ 100,000 Combined all coverages, per **Location** |
| **100 Year Flood** | US$ 250,000 per **Location** |
| **Logistics Extra Cost** | US$ 100,000 per **Occurrence** |
| **All Other Loss** | US$ 100,000 Combined all coverages, per **Occurrence** |
| **Service Interruption** | 24 hour Waiting Period |

Deductible General Provisions:

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, In a single occurrence greater than the applicable deductible: specified above and only for its share of that greater amount.

A. For SERVICE INTERRUPTION loss, when a deductible is not specifically stated as applying to SERVICE INTERRUPTION the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured location that sustains the interruption of the specified services.

B. For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the contingent time element location was an insured location under this Policy.

C. The stated earthquake deductible will be applied to earthquake loss. The stated flood deductible will be applied to flood loss. The stated wind deductible will be applied to wind loss. The provisions of item E below will also be applied to each.

D. When this Policy insures more than one Location, the deductible will apply against the total loss covered by this Policy in an occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage happened regardless of the number of locations involved In the occurrence.

E. Unless stated otherwise, if two or more deductibles apply to an occurrence, the total to be deducted will not exceed the larges deductible applicable. For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible. If two or more deductibles apply on a per location basis in an occurrence, the largest deductible applying to each location will be applied separately to each such location.

F. The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of Insurance:

(1) Each building or structure, not including the value of its foundations, which has sustained loss or damage;
(2) Personal property within each building or structure if that personal property sustains loss or damage;
(3) Personal property in the open that sustains loss or damage;
(4) The Time Element values impacted by insured loss or damage to said property that sustains loss or damage.

Unit(s) of Insurance:

Property Damage Values (1), (2) and (3) above to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified (or property under construction), the values will be determined at the time of loss.

Time Element Values to be used when calculating deductibles shall be either those specified for each unit of Insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified, based upon the twelve (12) months following the date of loss, with consideration for the most probable experience of the business for the Location, had no loss occurred.

Time Element as used above refers to the following coverages:
a. Gross Earnings
b. Loss of Profits
c. Rental Value and Rental Income

G. For insured  physical loss or damage:

1) to insured fire protection equipment; or

2) from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items I or 2 above only will be reduced by fifty percent (50%), per occurrence. However, this provision will not apply to loss or damage resulting from fire or earth movement regardless of whether claim is made for such fire or earth movement.

H.  Any property damage or time element extensions provided herein are subject to the deductible provisions that would have applied had a physical loss or damage occurred

Policy number  MJ2-L9L-442757-079

This endorsement is effective 07/31/2019 and will terminate with the policy.  It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTIFIED ACT(S) OF TERRORISM

This endorsement modifies insurance provided by this policy as follows:

1. Definition of *Certified Act(s) of Terrorism*

   For the purpose of this endorsement, the italicized phrase *certified act(s) of terrorism* means one (1) or more acts certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be terrorism pursuant to the federal Terrorism Risk Insurance Act, including all amendments (hereafter "TRIA"). The criteria contained in TRIA for *certified act(s) of terrorism* include that the act is a violent act or an act that is dangerous to human life, property or infrastructure, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. Exclusion of *Certified Act(s) of Terrorism*

   The following exclusion is added:

   We will not pay for loss or damage caused by or resulting from *certified act(s) of terrorism*, regardless of any other cause or event, including a peril insured against, that contributes to the loss at the same time or in any other sequence.

3. Exception Covering Certain Fire Losses

   If a *certified act of terrorism* results in fire, subject to all applicable policy provisions, we will pay up to the following applicable amount(s) in any one (1) occurrence for loss or damage caused by that fire:

   A. The applicable limit of liability for covered property in any and all States listed on the Schedule of this endorsement, or

   B. A limit of liability of $1,000,000 for covered property in any and all States that are not listed on the Schedule of this endorsement.

   Such coverage for fire applies only to direct loss or damage by fire to covered property.  Therefore, for example, the coverage does not apply to insurance provided under loss of business income or extra expense coverage forms or endorsements which apply to or modify those forms.

4. Cap on Losses From *Certified Act(s) of Terrorism*

   If aggregate insured losses attributable to *certified act(s) of terrorism*:

   A. exceed $100 billion in a calendar year (January 1 through December 31); and

   B. we have met our deductible under the Act;

© 2015 Liberty Mutual Insurance.
Includes copyrighted material of Insurance Service Office, Inc., with its permission.

## EXCLUSION OF CERTIFIED ACT(S) OF TERRORISM (Continued)

neither we nor the Secretary of the Treasury shall be liable for the payment of any portion of the amount of such losses that exceeds the $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

5.  Application of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded by this policy, such as losses excluded by any Nuclear Hazard Exclusion or War and Military Action Exclusion.

6.  Clarification of Definitions

A.  In the event the word Company or another word is used in this policy to designate the company issuing this policy it is replaced by the words "we", "us" or "our(s)" depending on the context it is used in. For the purpose of this endorsement the words "we", "us", and "our(s)" means the company issuing this policy as shown on the DECLARATIONS of this policy.

B.  In the event the word Insured or another word is used in this policy to designate the name insured it is replaced by the words "you" and "your(s)" depending on the context it is used in. For the purpose of this endorsement the words "you" and "your(s)" means the named insured as shown on the DECLARATIONS of this policy.

Schedule of States

California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Washington, West Virginia, Wisconsin, and the US Virgin Islands

Policy number  MJ2-L9L-442757-079

## DISCLOSURE - TERRORISM RISK INSURANCE ACT

**THIS FORM IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.**

In accordance with the Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

**Disclosure of Premium**

The Company has made available coverage for "certified acts of terrorism" as defined in the Act.  If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown on the DECLARATIONS, or elsewhere by endorsement in your policy.

THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government.  If an individual insurer's losses from a "certified act of terrorism" exceed a specified deductible amount, the government will reimburse the insurer for a percentage of losses (the "Federal Share") paid in excess of the deductible but only if aggregate industry losses from such an act exceed the "Program Trigger".  An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year.  Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount.  If aggregate insured losses exceed $100 billion, losses  up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

The Federal Share and Program Trigger by calendar year are:

| Calendar Year | Federal Share | Program Trigger |
|---|---|---|
| 2015 | 85% | $100,000,000 |
| 2016 | 84% | $120,000,000 |
| 2017 | 83% | $140,000,000 |
| 2018 | 82% | $160,000,000 |
| 2019 | 81% | $180,000,000 |
| 2020 | 80% | $200,000,000 |

© 2015 Liberty Mutual Insurance.

## DISCLOSURE - TERRORISM RISK INSURANCE ACT (Continued)

MANDATORY AVAILABILITY OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM"

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States

   (i)  to be an act of terrorism;

   (ii)  to be a violent act or an act that is dangerous to –

      (I)  human life;

      (II)  property; or

      (III) Infrastructure;

   (iii)  to have resulted in damage within the United States, or outside of the United States in the case of

      (I)  an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

      (II)  the premises of a United States mission; and

   (iv)  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Policy number  MJ2-L9L-442757-079

This endorsement is effective 07/31/2019 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## COMPUTER VIRUS AND DENIAL OF ACCESS EXTENSION

1.  Our Company will not pay for loss or damage to, or any cost, claim or expense caused by or resulting directly or indirectly from any of the following, regardless of any other cause or event that contributes to the loss, damage, cost, claim or expense at the same time or in any sequence:

   A.  The introduction of a malicious code, program, virus, worm, Trojan Horse program, macro, time or logic bomb or similar unauthorized instruction into any of the following, whether owned by the insured or others

   (1)  "Data processing equipment", "software", "data", or "media";

   (2)  Information repository;

   (3)  Hardware or "software" based computer operating systems;

   (4)  Microprocessor;

   (5)  Integrated circuit;

   (6)  Computer network; or

   (7)  Other electronic equipment, computerized equipment or similar devices

   which is designed or intended to damage, corrupt, destroy, distort, or delete any part of the system or disrupt its normal operation.

   B.  A change in the functionality, availability, operation, use of, accessibility to or operation of any of the following, whether owned by the insured or others:

   (1)  "Data processing equipment", "software", "data", or "media";

   (2)  Information repository;

   (3)  Hardware or "software" based computer operating system;

   (4)  Microprocessor;

   (5)  Integrated circuit;

   (6)  Computer network; or

   (7)  Other electronic equipment, computerized equipment or similar devices.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## COMPUTER VIRUS AND DENIAL OF ACCESS EXTENSION (Continued)

C. Loss resulting from any advice, consultation, evaluation, design, inspection, installation, repair, replacement or maintenance done by the insured or for the insured to determine or correct any conditions or problems described in items **1. A. or 1. D.**

2. If loss to covered property by one of the following perils ensues, our Company will pay for that loss:

   A. Fire;

   B. Explosion;

   C. Aircraft;

   D. Riot;

   E. Civil commotion;

   F. Smoke;

   G. Leakage or accidental discharge from automatic fire protection system; or

   H. Collapse.

3. Our Company will not pay for modification, repair or replacement of systems or devices described in items **1. A. or 1. B.** in order to correct any potential or actual deficiencies.

Policy number  MJ2-L9L-442757-079

This endorsement is effective 07/31/2019 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## DATE OR TIME FAILURE EXCLUSION

1. We will not pay, under any form, coverage, or endorsement of this policy, for loss caused directly or indirectly by:

   A. The failure of any of the following, whether owned by you or others:

      (1) *Data processing equipment*, *software*, *data*, or *media*;

      (2) Hardware or *software* based computer operating systems;

      (3) Microprocessors;

      (4) Integrated circuits; or,

      (5) Any other electronic equipment, computerized equipment, or similar devices;

      due to the inability of these items to correctly recognize, process, or accept one or more dates or times as their true calendar date or time.

   B. Loss resulting from:

      (1) Any services, functions, or products that use one or more of the systems or devices described in item 1. A.

      (2) Any advice, design, inspection, installation, repair or maintenance done by you or for you to determine or correct any problems described in item 1. A.

   These losses are excluded regardless of any other cause or event, including a *peril insured against*, that contributes to the loss at the same time or in any sequence.

2. If loss to covered property by a *specified peril* ensues, we will pay for that loss.

3. We will not pay for modification, repair or replacement of systems or devices described in item 1. A. in order to correct any potential or actual deficiencies.

4. The italicized terms have special meanings in this endorsement.  They are defined below.

   A. *Data* means any information recorded on *media* and used in your processing operations, but does not mean *software*.

   B. *Data processing equipment* means processing units, terminals, tape drives, disk drives, controllers, printers, and other equipment capable of receiving, processing, storing or retrieving information.  It does not include *media*, *software*, or *data*.

   C. *Media* means the material on which *data* or *software* is recorded, such as magnetic tape, perforated paper tape, punch cards, discs, drums, and other storage devices used in your *data* processing operations.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## DATE OR TIME FAILURE EXCLUSION (Continued)

**D.** *Peril(s) insured against* means possible causes of loss for which this policy provides coverage.

**E.** *Software* means programs stored on *media* which instruct *data processing equipment* how to process *data*.

**F.** *Specified perils* means any of the following:

Fire;

Lightning;

Aircraft;

Explosion;

Riot;

Civil commotion;

Smoke;

Vehicles;

Windstorm or hail to property contained in any building;

Malicious mischief;

Leakage or accidental discharge from automatic fire protection system; or,

Collapse.

Policy number  MJ2-I.9L-442757-079

This endorsement is effective 07/31/2019 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## POLLUTION AMENDATORY

This endorsement modifies insurance provided by the policy as follows:

PROPERTY NOT COVERED

This policy does not cover land (including land on which covered property is located) or water.

DEBRIS REMOVAL

The Debris Removal provision of the policy is replaced by the following:

This policy covers expense incurred in the removal of debris of the Property Covered caused by or resulting from a peril insured against in this policy that occurs during the policy period.  The expenses will be paid only if they are reported to the Company in writing within one-hundred-eighty (180) days of the earlier of:

1.   the date of the direct physical loss or damage; or

2.   the end of the policy period.

The total liability under this policy for debris removal expense shall not exceed twenty-five (25) percent of:

1.   the amount paid under this policy for direct physical loss or damage to covered property; plus

2.   the deductible in this policy applicable to such loss or damage.

Payment under this Debris Removal coverage will not increase the Company's limit of liability under this policy, but if

1.   the sum of the direct physical loss or damage and debris removal expense exceeds the Limit of Liability, or

2.   the Debris Removal expense exceeds the amount payable under the twenty-five (25) percent limitation in this Debris Removal coverage,

the Company will pay up to an additional $5,000 for each location in any one (1) occurrence under this Debris Removal coverage.

*POLLUTANTS* CLEANUP AND REMOVAL

The following additional coverage is added:

This insurance covers the expense to extract *pollutants* from land or water at the described premises if the presence, discharge, dispersal, seepage, migration, release or *escape of* any *pollutant(s)* is occasioned by loss caused by any of the perils insured against in this policy during the policy period.  Such expenses must be reported to the Company in writing within one-hundred-eighty (180) days of the earlier of the date of the direct physical loss or the end of the policy period.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## POLLUTION AMENDATORY (Continued)

The liability of the Company for loss under this coverage shall not exceed $10,000 in the aggregate for the sum of all such expense incurred arising out of insured perils occurring during each separate twelve (12) month period of this policy. This limit applies as an additional amount of insurance.

The italicized term *pollutant(s)* as used in this endorsement means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, fiber, smoke, vapor, soot, fumes, acids, alkalis, chemicals, biological, organic or bacterial agents and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed. However, *pollutant(s)* does not include ammonia.

POLLUTION EXCLUSION

The following exclusion is added or supersedes any pollution exclusion of the policy to which this endorsement is attached:

This policy does not insure under this form against loss caused by the presence, discharge, dispersal, seepage, migration, release or escape of any *pollutant(s)* unless the presence, discharge, dispersal, seepage, migration, release or escape is itself caused by fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism, malicious mischief or leakage or accidental discharge from automatic fire protective systems. But if loss by any of the above twelve (12) perils ensues, then this Company shall be liable for only loss caused by the ensuing peril.

PERIOD OF RECOVERY/RESTORATION

APPLICABLE ONLY TO BUSINESS INTERRUPTION, EXTRA OR ADDITIONAL EXPENSE, LOSS OF INCOME, LOSS OF RENTS OR OTHER CONSEQUENTIAL LOSS.

The period of recovery/restoration or similar length of time for which a loss may be claimed shall not include any increase period of time required due to the enforcement of any law that:

1. Regulates the construction, use or repair, or requires the tearing down of any property; or

2. Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

Policy number  MJ2-L9L-442757-079

This endorsement is effective 07/31/2019 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## KEMPER HOLDINGS, LLC AMENDATORY
## ADDITION OF SPECIFIC COMPANY ENDORSEMENTS

As shown on the Schedule of this endorsement, it is agreed the following Company endorsements are added to and made part of this policy:

Schedule

Policy Type:

( )   Primary
( )   Excess
(X)   Quota Share
( )   DIC

| Endorsement Number | Title of Endorsement |
|---|---|
| SL9101R1 | Exclusion of Certified Act(s) of Terrorism |
| EN9052 | Disclosure - Terrorism Risk Insurance Act |
| SL9007 | Computer Virus and Denial of Access Extension |
| SL9009 | Date or Time Failure Exclusion |
| SL9721 | Pollution Amendatory |

The terms and conditions of these endorsements will determine the coverage afforded by this policy and will supersede any terms and conditions in the policy which are contrary to the coverage they amend.

Copyright 2008, Liberty Mutual Group of Companies - all rights reserved.

## POLICYHOLDER NOTICE – COMPANY CONTACT INFORMATION

In the event you need to contact someone about this policy for any reason, please contact your Sales Representative or Producer of Record as shown on the policy Declarations or Information Page.

If you have additional questions, you may contact the company at the following address:

**Liberty Mutual Insurance
175 Berkeley Street
Boston, MA 02116
(617) 357-9500 Ext. 41015**

 © 2012 Liberty Mutual Insurance. All rights reserved.

# EXHIBIT E



**CNA Property Policy**

## Policy Holder Notice - Large Property Claims Reporting

All new property claims under CNA Large Property policies should be reported to our centralized Loss Processing Center. Claims will be assigned to our specialized technical staff or to one of our preferred service providers.

**FOR EMERGENCY CONTACT:**

- Our 24-hour toll free number for direct contact with the CNA Loss Processing Center is:

  877-261-6676

**FOR NON-EMERGENCY:**

- Property claims may be reported by toll free <u>fax</u> to the CNA Loss Processing Center at:

  877-566-2728

- Property claims may also be reported via <u>email</u> to the CNA Loss Processing Center at:

  CNAproperty.LPC@cna.com

Claims reported by fax or email are processed during normal business hours. If your claim is an emergency requiring after hours contact with an adjuster, call the 24-hour toll free number.



# CNA Property Policy

## Policy Declarations

CNA Insurance
151 N. Franklin St.
Chicago, IL 60606

| Branch | Producer Number | Prefix | Policy Number |
|--------|-----------------|--------|---------------|
| 630 | 501117 | RMP | 6072928892 |

| NAMED INSURED & ADDRESS: | INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW (A stock insurance company, herein called the company) |
|---|---|
| KEMPER HOLDINGS LLC<br>P.O. BOX 4186<br>BELLEVUE, WA 98009 | CONTINENTAL CASUALTY COMPANY |
| NAMED INSURED IS: Corporation | |

Policy Period: From July 31, 2019 to July 31, 2020

This policy becomes effective and expires at 12:01 a.m. Standard Time at Your Mailing Address Shown Above.

**In Return For The Payment Of The Premium, And Subject To All The Terms Contained Herein, the Company Agrees With the Named Insured To Provide The Insurance As Stated.**

☐ "X" if Supplemental Declarations is attached

**DESCRIPTION OF PREMISES**

Per CNA BROKER Property Policy

**COVERAGES PROVIDED** - INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT IS SHOWN

Per CNA BROKER Property Policy

**OPTIONAL COVERAGES** - APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

Per CNA BROKER Property Policy

**MORTGAGE HOLDER(S)**

Per CNA BROKER Property Policy

**DEDUCTIBLE**

Per CNA BROKER Property Policy

**FORMS AND ENDORSEMENTS APPLICABLE AT TIME OF ISSUANCE:**

APPLICABLE TO ALL COVERAGES: SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS

Copyright CNA All Rights Reserved



**CNA Property Policy**

**Policy Declarations**

| | |
|---|---|
| **TOTAL PREMIUM PAYABLE AT INCEPTION:** | **$250,988.00** |
| Premium includes the following amount for Terrorism coverage: | None |
| Total amount payable includes Taxes/Surcharges of: | None |

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its Chairman and Secretary.

Chairman of the Board                          Secretary



**CNA Property Policy**

**Policy Declarations**

### SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and endorsements attached to this Policy at inception are as follows:

| FORM NAME | FORM NUMBER | FORM EDITION DATE |
|---|---|---|
| Policy Declarations | G55161E | (01-17) |
| Kemper - 2019 - 2020 Policy | | (07-19) |
| Modification Endorsement | | (07-19) |
| Quota Share Following Form | | (07-19) |
| Computer Virus Exclusion | L1002A | (03-10) |
| Economic and Trade Sanctions Condition | LEOFAC02 | (03-10) |
| Mold Exclusion Endorsement | L1003A | (03-10) |
| Product Contamination and Recall Exclusion | LCE02 | (03-10) |
| Terrorism Exclusion | L1001B | (03-10) |

Copyright CNA All Rights Reserved



## QUOTA SHARE FOLLOWING FORM INSURANCE POLICY

Throughout this policy the words "you" and "your" refer to the Named Insured shown on the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in bold have special meaning. Refer to Section D – DEFINITIONS, below.

### QUOTA SHARE SCHEDULE

Lead Policy:

Name of Carrier: Lex-London a Division of American International Group UK Limited

Policy Number: B0702  PN304770n

Limits of Liability: $100,000,000 (being 10% of $1,000,000,000)

**A.     INSURING AGREEMENT**

The insurance provided by the **CNA policy** shall be subject to the same terms and conditions as the **lead policy** on file with us, except with respect to premium, Limits of Liability, and the terms and conditions that are part of the **CNA policy**.

**B.     LIMITS OF LIABILITY**

1.     We shall not be liable for more than our pro rata proportion of the Limit of Liability, shown in the QUOTA SHARE SCHEDULE above, in any one occurrence as a result of all covered loss, damage, cost or expense regardless of the number of covered locations, coverages or covered causes of loss involved.

2.     The amount of covered loss or damage from any one occurrence for which the **CNA policy** applies shall be determined by multiplying the percentage shown in the QUOTA SHARE SCHEDULE above by the sum total of all loss, damage, cost and expense payable under the **lead policy**, after application of all deductibles in the **lead policy** and subtracting recoveries from::

   a.     salvage;

   b.     subrogation.

   c.     other valid and collectible insurance; and

   d.     any other source.

**C.     CONDITIONS**

1.     **BANKRUPTCY, INSOLVENCY OR UNCOLLECTIBILITY OF OTHER INSURANCE**

In the event of the bankruptcy, insolvency, or any other financial impairment of any other Insurer, including the Insurer of the **lead policy**, we will not be liable for the obligations of any other Insurers. We will pay only the amount that would have been paid had those other policies been in effect, and this insurance will not replace such other insurance. The inability to collect, in whole or in part, under any other insurance for any reason is expressly retained by you and is not in any way, or under any circumstance, covered or assumed by us.

---

CNA90574XX (11-17)
Page 1

Policy No: RMP6072928892
Endorsement No: 1
Effective Date: 7/31/2019

Insured Name:

© CNA All Rights Reserved.



2. **CHANGES TO UNDERLYING INSURANCE**

If, subsequent to the inception date of the **CNA policy**, there is a change to the lead **policy** which expands coverage, then the **CNA policy** will become subject to such change only if we agree, in writing, to such changes

3. **MAINTENANCE OF PRIMARY COVERAGE**

It is a condition of the **CNA policy** that the **lead policy** is maintained in full force and effect during the term of the **CNA policy**. Such insurance may, without prejudice to this insurance, be replaced or renewed by another policy issued by the same Insurer, but such replacement or renewal policy shall be written under the same terms and conditions of the **lead policy**.

4. **NOTICE OF OCCURRENCE**

Whenever you have information from which you may reasonably conclude that loss or damage has occurred that could result in a payment under the terms of the **CNA policy**, notice shall be sent to us as soon as practicable. Failure to give notice of any such loss or damage which, at the time of loss or damage, did not appear to involve the **CNA policy**, but which at a later date was determined to be covered, shall not prejudice such claim. These circumstances notwithstanding, such notice of occurrence should be provided to us within 60 days of the date of the event giving rise to such loss or damage.

D. **DEFINITIONS**

1. **CNA Policy** means this Quota Share Following Form Insurance Policy, the Declarations, and all endorsements attached to this policy.

2. **Lead Policy** means the insurance policy described on the QUOTA SHARE SCHEDULE of this endorsement.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

Policy No   RMP6072928892
Endorsement No: 1
Effective Date   7/31/2019

© CNA All Rights Reserved

**Kemper Holdings, LLC** and any financial and/or managerial controlled subsidiary, division, trust, associated or allied company or foundation of the named insured, (or subsidiary thereof) and any interest in any partnership or joint venture in which Kemper Holdings, LLC or its subsidiaries (or subsidiaries thereof has management control or ownership, or for which they have assumed the responsibility for insuring, as now or hereafter constituted or acquired, and any antecedent companies for which Kemper Holdings, LLC (or subsidiaries therefor) may be or become liable; herein referred to as "the insured".

1.   **TERM OF INSURANCE**

In consideration of the US$ 2,643,850 (100%) annual premium, this policy attaches and covers for a period of 12 months, from 07/31/2019 to 07/31/2020, beginning and ending at 12:01 A.M., standard time, at the location of the property involved.

The actual effective time of attachment of this insurance on the above date shall be the same time as the actual effective time of cancellation or expiration of policy (ies) replaced or renewed by this policy.

2.   **PARTICIPATION**

This policy covers for the percent interest in this insurance shown elsewhere in this Policy, and the Underwriters shall not be liable for more than its proportion of the limits of liability set forth herein.

3.   **LIMITS OF LIABILITY**

This Company shall not be liable for more than its proportion of US$1,000,000,000 for any one occurrence, except:

A. With respect to the perils of Flood and Earthquake as defined elsewhere in the policy, this Company shall not be liable, per occurrence and in any one policy year, for more than its proportion of US$200,000,000 for earthquake and US$200,000,000 for flood, which shall apply separately to each peril as referred to in Section 13. Even if the peril of flood or earthquake is the predominant cause of loss or damage, any ensuing loss or damage caused by fire, explosion, water damage or leakage from fire protective equipment not otherwise excluded herein shall not be subject to any sublimits or aggregates specified in this Clause, except:

| | |
|---|---|
| Ammonia Contamination | US$ 500,000 |
| Attraction Property | 30 consecutive days, maximum US$ 25,000,000, 1 mile limitation |
| Automatic Coverage | 120 day period but not to exceed a US$50,000,000 limit per **location** |
| Civil or Military Authority | 30 consecutive days, maximum US$25,000,000 5 mile limitation |

| | |
|---|---|
| Claims Preparation Costs | US$1,000,000 |
| Communicable Disease Response | US$ 1,000,000 in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed US$1,000,000 in the **aggregate during any policy period** year regardless of the number of location, coverages or **occurrences** involved. |
| Computer Systems Non Physical Damage and Data, Programs or Software Combined | US$ 10,000,000 (PER NMA2914) |
| Contingent Time Element Extended | US$ 25,000,000 (No Further than Tier 2) |
| **Earth Movement** | US$ 200,000,000 in the **aggregate during any policy period** |
| Errors and Omissions | US$ 100,000,000 |
| Expediting Costs and Extra Expense Combined | US$ 100,000,000 |
| Extended Period of Liability | 365 day period |
| Fine Arts | US$ 100,000,000 but not to exceed a USD10,000 limit per item for **Irreplaceable fine arts** not on a schedule on file with the company |
| Fines or Penalties for breach of contract or for late or non completion of orders combined | US$ 100,000 |
| Flood | US$ 200,000,000 in the **aggregate during any policy period** |
| Ingress/ Egress | 30 day period, maximum US$25,000,000 5 mile limitation |
| Interruption by Communicable Disease | 12 month period but not to exceed a US$ 1,000,000 limit in the **aggregate during any policy period**<br><br>The Company's maximum limit of liability for **COMMUNICABLE DISEASE RESPONSE** and this coverage combined shall not exceed US$ 1,000,000 in the **aggregate during any policy period year** regardless of the number of locations, coverages or **occurrences** involved. |

| | |
|---|---|
| Land and Water Contamination Cleanup, Removal and Disposal | US$250,000 in the **aggregate during any policy period year** |
| Logistics Extra Cost | 180 day period but not to exceed 200% of the **normal cost** |
| Miscellaneous Property | As respects property at a **location:** a) US$ 50,000,000 **per location** As respects property not at a **Location** a) US$ 50,000,000 |
| Off Premises Data Services Property Damage and Off Premises Data Services Time Element Combined | US$ 5,000,000 |
| Ordinary Payroll | 60 day period |
| Service Interruption | US$ 10,000,000, 24 hour waiting period |
| Terrorism | US$ 5,000,000 in the **aggregate during any policy year** but not to exceed the following limits in the **aggregate during any policy year:** a) US$5,000,000 for AUTOMATIC COVERAGE, ERRORS AND OMISSIONS, MISCELLANEOUS PROPERTY AND TEMPORARY REMOVAL OF PROPERTY combined b) US$ 5,000,000 for **Flood** when caused by or resulting from **terrorism** Subject to the exclusions, limits and conditions herein contained, this Policy insures buildings and contents against direct physical loss or damage caused by an Act of Terrorism, as herein defined, occurring during the policy period shown within the policy attaching to and forming part hereof, and will provide Business Income Coverage and Additional Coverages, where provided within this Policy. For the purpose of this Policy, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes, including the intention to influence any government and/or to put the public in fear for such purposes. An Act of Terrorism shall also include any act which is certified by the United States Government as an Act of Terrorism. The limits for TERRORISM shall not include **actual cash value** portion of fire |

|  |  |
|---|---|
|  | damage caused by **terrorism.** |
| Valuable Papers and Records | US$ 100,000,000 but not to exceed a US$100,000 limit per item for **Irreplaceable valuable paper and records** not on a schedule on file with the company |
| Landscape Gardening, Car Parks, Parking Lots, Pavement, Roadways, Railways, Transformer Enclosure or Walkways. | US$1,000,000 |
| Water that is Contained Within Any Enclosed Tank, Piping System or Any other Processing Equipment | US$1,000,000 |
| Accidental Interruption of Services and Consequential Loss | US$ 5,000,000 |
| Debris Removal | US$ 100,000,000 |
| Deferred Payments | US$ 25,000,000 |
| Accounts Receivable | US$ 50,000,000 |
| Soft Costs | US$ 50,000,000 |
| Transit | US$ 25,000,000 |
| Ordinance of Law Combined Coverage A, B & C  Undamaged Portion, Demolition & Increased Cost of Construction  Coverage D  Increased Period of Restoration | US$ 200,000,000      US$  25,000,000 |
| Fire Brigade Charges | US$ 50,000,000 |
| Impounded Water | 30 day period |
| Radioactive Contamination | US$1,000,000 |

4. **DEDUCTIBLES**

| Earthquake | Property Damage |
| --- | --- |
| | 2% per unit of Insurance as defined below Time element : 2% per Unit of Insurance as defined below The above are subject to a minimum deductible of US$ 100,000 for Property Damage and Time Element Combined, per Location |
| Flood | US$ 100,000 Combined all coverages, per Location |
| 100 Year Flood | US$ 250,000 per Location |
| Logistics Extra Cost | US$ 100,000 per Occurrence |
| All Other Loss | US$ 100,000 Combined all coverages, per Occurrence |
| Service Interruption | 24 hour Waiting Period |

Deductible General Provisions:

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss, including any insured TIME ELEMENT loss, in a single occurrence greater than the applicable deductible: specified above and only for its share of that greater amount.

A. For SERVICE INTERRUPTION loss, when a deductible is not specifically stated as applying to SERVICE INTERRUPTION the deductible applied to the SERVICE INTERRUPTION loss will be the deductible that would apply if the cause of the interruption happened at the insured location that sustains the interruption of the specified services.

B. For CONTINGENT TIME ELEMENT EXTENDED loss, when a deductible is not specifically stated as applying to CONTINGENT TIME ELEMENT EXTENDED, the deductible for CONTINGENT TIME ELEMENT EXTENDED loss will be determined as though the contingent time element location was an insured location under this Policy.

C. The stated earthquake deductible will be applied to earthquake loss. The stated flood deductible will be applied to flood loss. The stated wind deductible will be applied to wind loss. The provisions of item E below will also be applied to each.

D. When this Policy insures more than one Location, the deductible will apply against the total loss covered by this Policy in an occurrence except that a deductible that applies on a per location basis, if specified, will apply separately to each location where the physical damage happened regardless of the number of locations involved in the occurrence.

E. Unless stated otherwise, if two or more deductibles apply to an occurrence, the total to be deducted will not exceed the larges deductible applicable. For the purposes of this provision, when a separate Property Damage and a separate Time Element deductible apply, the sum of the two deductibles will be considered a single deductible. If two or more deductibles apply on a per location basis in an occurrence, the largest deductible applying to each location will be applied separately to each such location.

F. The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of Insurance:

(1) Each building or structure, not including the value of its foundations, which has sustained loss or damage;
(2) Personal property within each building or structure if that personal property sustains loss or damage;
(3) Personal property in the open that sustains loss or damage;
(4) The Time Element values impacted by insured loss or damage to said property that sustains loss or damage.

Unit(s) of Insurance:

Property Damage Values (1), (2) and (3) above to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified (or property under construction), the values will be determined at the time of loss.

Time Element Values to be used when calculating deductibles shall be either those specified for each unit of insurance shown in the most recent Statement of Values on file with the **Insurer** or, if not so specified, based upon the twelve (12) months following the date of loss, with consideration for the most probable experience of the business for the Location, had no loss occurred.

Time Element as used above refers to the following coverages:
a. Gross Earnings
b. Loss of Profits
c. Rental Value and Rental Income

G. For insured  physical loss or damage:

    1) to insured tire protection equipment; or

    2) from water or other substance discharged from fire protection equipment of the type insured,

the applicable deductible applying to items I or 2 above only will be reduced by fifty percent (50%), per occurrence. However, this provision will not apply to loss or damage resulting from fire or earth movement regardless of whether claim is made for such fire or earth movement.

H. Any property damage or time element extensions provided herein are subject to the deductible provisions that would have applied had a physical loss or damage occurred

## 5.   **LOSS PAYABLE**

Loss, if any, shall be adjusted with and payable to Insured, or order whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

## 6.   **TERRITORY**

Coverage as provided under this Policy applies Worldwide.

7.   **COVERAGE**

Except as hereinafter excluded, this policy covers:

A.  **Real and Personal Property**

(1) The interest of the Insured in all real and personal property including but not limited to property owned, used, leased or intended for use by the Insured, or hereafter constructed, erected, installed, or acquired, including while in course of construction, erection, installation, and assembly. In the event of loss or damage, this Company agrees to accept and consider the Insured as sole and unconditional owner of improvements and betterments, notwithstanding any contract or leases to the contrary.

(2) The interest of the Insured in real and personal property of others in the Insured's care, custody, or control.

(3) Real and personal property which the Insured is responsible for or has agreed to insure.

(4) At the sole option of the Insured, this policy covers in any given instance personal property, except automobiles, of the Insured's officials and employees while on the premises of the Insured.

(5) Contractors' and vendors' interest in property covered to the extent of the Insured's liability imposed by law or assumed by written contract.

B.  **Business Interruption**

(1) Loss resulting from necessary interruption of business conducted by the Insured, whether total or partial, and caused by loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED by the Insured, consisting of the net profit which is thereby prevented from being earned and of all charges and expenses only to the extent that these must necessarily continue during the interruption of business including 90 days ordinary payroll and only to the extent such charges and expenses would have been earned had no loss occurred.

"Ordinary payroll" is defined to be the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other important employees as determined by the Insured.

(3) In the event of loss, damage, or destruction covered herein to property as described in Clause 7.A., which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period, this policy shall cover the actual loss sustained

of the continuing fixed charges and expenses, including 90 days ordinary payroll, directly attributable to such research and development activities.

(4) However, this Company shall not be liable under this Clause B. for any loss resulting from damage to or destruction of finished stock or for the time required reproducing said finished stock. Finished stock shall mean stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

(5) Resumption of Operations: If the Insured, by reasonable means within its control, could reduce the loss resulting from the interruption of business:
  (a) by a complete or partial resumption of operation of the property insured, whether damaged or not; or
  (b) by making use of available stock, merchandise, or other property; such reduction shall be taken into account in arriving at the amount of loss hereunder.

(6) Experience of the Business: In determining the amount of net profit, charges and expenses covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real or personal property as described in Clause 7, A. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

## C. Extra Expense

(1) Extra Expense incurred resulting from loss, damage, or destruction covered herein during the term of this policy to real or personal property as described in Clause 7.A.

(2) "Extra Expense" means the excess of the total cost chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred.

## D. Rental Value

(1) Rental Value loss sustained by the Insured resulting directly from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue.

(2) "Rental Value" is defined as the sum of:

  (a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured; and

(b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

(c) the fair rental value of any portion of said property which is occupied by the Insured.

(3) Experience of the Business:

(a) In determining the amount of rental value covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to real and personal property as described in Clause 7.A.

(b) With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

## E. Royalties

(1) Loss of income to the Insured under royalty, licensing fees, or commission agreements between the Insured and another party which is not realizable due to loss, damage, or destruction by any of the perils covered herein during the term of this policy to property of the other party.

(2) If such loss occurs during the term of this policy, it shall be adjusted on the basis of ACTUAL LOSS SUSTAINED of such income referred to in paragraph (1) above, which would have been earned had no loss occurred.

(3) Resumption of Operations: The Insured shall influence, to the extent reasonably possible, the party with whom the agreement described in paragraph (1) above has been made to use any other machinery, supplies or locations in order to resume business so as to reduce the amount of loss hereunder, and the Insured shall cooperate with that party in every reasonable way to effect this, but not financially unless such expenditures shall be authorized and paid by this Company.

(4) Experience of the Business: In determining the amount of income derived from the agreement(s) described in paragraph (1) above for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the amount of income derived from such agreement(s) before the date of damage or destruction and to the probable amount of income thereafter had no loss occurred to real and personal property of the type insured under this policy of such other party.

**F. Time Element Extensions**

(1) This policy, subject to all provisions and without increasing the limits of this policy, also insures against loss resulting from damage to or destruction by causes of loss insured against:

    (a) Service Interruption: electrical, steam, gas, water, sewer, telephone, or any other utility or service transmission lines and related plants, substations and equipment situated on or outside of the premises;

    (b) Contingent Time Element: Property that prevents any direct or indirect supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents any direct or indirect receiver of goods and/or services from the Insured from accepting the Insured's goods and/or services, such supplier or receiver to be located anywhere in the policy territory;

    (c) Impounded Water: Dams, reservoirs, or equipment connected therewith when water, used as a raw material or used for power or for other purposes, stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of water supply from such sources;

    (d) Attraction Property: Property not owned or operated by the Insured, located within 1 mile of the Insureds location which attracts business to the Insured.

(2) Interruption by Civil or Military Authority: This policy is extended to cover the loss sustained during the period of time when as a direct result of a peril insured against, access to real or personal property is thereby prohibited by order of civil or military authority. A 30-day sub-limit will apply for business interruption.

(3) Ingress/Egress: This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, access to or egress from real or personal property is thereby prevented. A 30-day sub-limit will apply for business interruption.

**G. Provisions Applicable to Business Interruption, Extra Expense, Rental Value and Royalties Coverages**

(1) Period of Recovery: The length of time for which loss may be claimed:

    (a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

    (b) and such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

      i.  the date on which the liability of the Company for loss or damage would otherwise terminate; or

      ii.  the date on which repair, replacement, or rebuilding of the property that has been damaged is actually completed;

    but in no event for more than one year from said later commencement date;

(c) with respect to alterations, additions and property while in the course of construction, erection, installation, or assembly shall be determined as provided in subparagraph (a) above, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations;

(d) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy or cancellation date.

(2) Special Exclusions: This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse, or cancellation of any lease, license, contract, or order; nor for any increase of loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

(3) Expense to Reduce Loss: This policy also covers such expenses incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

## H. Transit

(1) Property in transit within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted into place of final destination.

(2) This insurance is extended to cover loss or damage to property;

(a) sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b) arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

(c) occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

(d) at the Insured's option, which is incoming to the Insured.

(3) (a) The Insured may waive right(s) of recovery against private, contract, and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman, or processor.

(b) With respect to shipments made under subparagraphs 2(a) and 2(d) above, this Company agrees to waive its rights of subrogation against consignees at the option of the Insured.

(4) The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(5) Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

## I. Accounts Receivable

(1) All sums due the Insured from direct customers, provided the Insured is unable to effect collection thereof as the direct result of loss of or damage to records of accounts receivable;

(2) Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3) Collection expense in excess of normal collection cost and made necessary by such loss or damage;

(4) Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

(1) The monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

(2) The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

**J.  Leasehold Interest**

(1) Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

    a.  the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

    b.  improvements and betterments to real property which are not covered under any other section of this policy;

    c.  the amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

(2) a.  "The Interest of the Insured as Lessee or Lessor" when property is rendered un-tenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

b.  "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

(3) Definitions:

The following terms, wherever used in this section shall mean:

a.  "The Interest of the Insured as Lessee" is defined as:

    (i)  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    (ii) the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

b.  "The Interest of the Insured as Lessor"  is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

c.  "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

(3) This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause.

## K. AUTOMATIC COVERAGE

This Policy covers insured physical loss or damage to insured property at any **location** purchased leased or rented by the Insured after the inception date of this Policy. This Additional Coverage applies:

1) from the date of purchase, lease or rental,

2) until the first of the following:

a) the **location** is bound by the Company.

b) agreement is reached that the **location** will not be insured under this Policy.

c) the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached. The time limit begins on the date of purchase, lease or rental.

## L. COMMUNICABLE DISEASE RESPONSE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**communicable disease** and access to such **location** is limited, restricted or prohibited by:

3) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

4) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such

**location** with the actual not suspected presence of **communicable disease** for the:

1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and

2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease.**

COMMUNICABLE DISEASE RESPONSE Exclusions: As respects COMMUNICABLE DISEASE RESPONSE , the following additional exclusion applies :

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

I) **terrorism.**

## M. INTERRUPTION BY COMMUNICABLE DISEASE

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of

**Communicable disease** and access to such **location** is limited, restricted or prohibited by:

a. an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease** ; or

b. a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease,**

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease.**

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions: As respects INTERRUPTION BY COMMUNICABLE DISEASE, the following additional exclusions apply:

This Policy does not insure loss resulting from:

I) the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease.**

2) loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will.

be:

The period of time:

1) starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

2) not to exceed the time limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section,
this period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.


## N. LOGISTICS EXTRA COST

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the **normal** movement of goods or materials:

a. directly between insured **locations; or**

b. directly between an insured **location** and a **location** of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss:

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1) extra costs to temporarily continue as nearly **normal** as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for **earth movement** and/or **flood** and/or **wind.**

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1) any loss resulting from disruption in the movement of goods or materials between **contingent time element locations.**

2) any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

3) any loss of income.

4) costs that usually would have been incurred in conducting the business during the same period had there been no disruption of **normal** movement of goods or materials.

5) costs of permanent repair or replacement of property that has been damaged or destroyed.

6) any expense recoverable elsewhere in this Policy.

7) any loss resulting from disruption caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

8) any loss resulting from disruption caused by loss or damage from **earth movement** in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

9) any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.
The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will

be:

The period of time:

1) starting at the time of physical loss or damage causing the disruption of the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured, and

2) ending not later than
   a) when with due diligence and dispatch the **normal** movement of goods or materials directly between insured **locations;** or directly between the insured **location** and the **location** of the direct customer, supplier, contract manufacturer or contract service provider to the Insured could be resumed; or

   b) the number of consecutive days shown in the LIMITS OF LIABILITY clause of the DECLARATIONS section.

**O.**   **MISCELLANEOUS PROPERTY**

This Policy covers insured physical loss or damage to:

1) insured property;

2) property of the type insured that is under contract to be used in a construction project at an insured **location:**

a) from the time such property is delivered to the Insured or their contractor(with respect to the property under construction) by the manufacturer or supplier;

b) while such property is located at a storage site; and

c) while such property is in transit from a storage site to another storage site or to a construction project at an insured **location,** that does not include any such property owned or rented by the contractor; while anywhere within this Policy's TERRITORY, including while in transit.

This Additional Coverage excludes property covered elsewhere in this Policy

MISCELLANEOUS PROPERTY Exclusions: As respects MISCELLANEOUS PROPERTY, the following additional exclusions apply:

1) This Policy excludes:

a) **transmission and distribution systems** not at a **location.**

b) property insured under import or export ocean marine insurance.

c) property shipped between continents.

d) airborne shipments unless by regularly scheduled passenger airlines or airfreight carriers.

e) property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

2) This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

**earth movement** for property located in California, in the **New Madrid Seismic Zone** or in the **Pacific Northwest Seismic Zone.**

8. **COVERAGE EXTENSIONS**

A. **Ordinance of Law**

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for;

(1) i) the cost of demolishing the undamaged property including the cost of clearing the site;

ii) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(2) i) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

ii) any increase in the business interruption, extra expense, rental value, royalties or soft costs loss arising out of the additional time required to comply with said law or ordinance.

B. **Debris Removal**

This policy covers the following expenses resulting from a covered loss:
(1) the cost of removal of debris of property covered hereunder;

(2) the cost of removal of debris of property not covered hereunder from the premises of the Insured;

C. **Expediting Costs**

This policy covers the extra cost of temporary repair and/or replacement and of expediting the repair and/or replacement of damaged property insured hereunder, including, but not limited to, overtime and express freight or other rapid means of transportation.

D. **Claims Preparation Costs**

This policy is extended to include expenses incurred by the Insured, or by the Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the Insured in utilizing the services of a public adjuster.

E. **Fire Brigade Charges and Extinguishing Expenses**

This policy covers the following expenses resulting from a covered loss:

(1) fire brigade charges and any extinguishing expenses which the Insured incurs;
(2) loss and disposal of fire extinguishing materials expended.

F. **Defense Costs**

This policy, subject to all of its provisions, also insures the costs and fees to defend any claim or suit against the Insured and/or its directors, officers and /or employees alleging physical loss or damage as insured against to property of others in the care, custody or control of the Insured to the extent of the Insured's liability therefore, even if such claim or suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation or settlement of any such claim or suit as it deems expedient.

G. **Consequential Loss**

(1) In the event of loss or damage not otherwise excluded to property, and such damage, without the intervention of any other independent excluded cause, results in a sequence of events which cause physical damage to insured property, then there shall be liability under the policy for the resulting loss.

(2) This policy also insures against consequential loss to the property insured caused by but not limited to change of temperature or humidity or by interruption of power, heat, air conditioning, or refrigeration resulting from loss or damage not otherwise excluded.

(3) This policy also insured the reduction in value to the remaining part or parts of any lot of merchandise usually sold by lots or sizes, color ranges, or other classifications due to damage to or destruction of a part of such lots or toher classifications due to a cause of loss not otherwise excluded.

**H. Control of Damaged Merchandise**

The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for normal intended use or consumption. No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Company any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods.

**I. Brands or Trademarks**

In case of damage insured against to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal at the Company's expense in the customary manner of all such brands or trademarks or other identifying characteristics.

**9.   PERILS INSURED AGAINST**

This policy insures against all risks of direct physical loss of or damage to property described herein including general average salvage and all other charges on shipments covered hereunder, including Flood, Earthquake and Terrorism except as hereinafter excluded.

**10.   PERILS EXCLUDED**

This policy does not insure:

A.  against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees meaning only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

    (1) cause the Insured to sustain such loss, and

    (2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

    This exclusion does not apply to acts of damage or destruction by employees, but theft by employees is not covered.

B.  against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, if a peril not specifically excluded elsewhere in this policy ensues, then this Company shall be liable for only the ensuing loss or damage to property covered.

C. against errors in processing or manufacture of the Insured's product unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

D. against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

E. against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage;

F. against moth, vermin, termites and other insects, inherent vice, latent defect, contamination, rust, or dampness of atmosphere.

G. against nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote; or be in whole or in part caused by, contributing to, or aggravated by the peril(s) insured against in this policy, except: as otherwise covered by this policy and if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation, or radioactive contamination;

H. (1) against warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    (a) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;
    (b) or by military, naval, or air forces;

    (c) or by an agent of any such government, power, authority, or forces;

(2) against any weapon employing atomic fission or fusion;

(3) against rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence;

(4) against seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of, or to otherwise contain, control or minimize loss, damage or destruction not otherwise excluded under this policy;

(5) against risks of contraband or illegal trade.

Notwithstanding the above provisions, K. (1), (3), (4), and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated. Nothing in the foregoing shall be construed to include any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no

event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war;

Exclusions C, D and E do not apply to alterations, additions and property while in the course of construction, erection, installation, or assembly.

Exclusions C and D do not apply to electronic data processing systems, valuable papers and records, and accounts receivable.

**11.   PROPERTY EXCLUDED**

This policy does not cover loss or damage to:

A. Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams, and additions to land such as pavements, roadways, or similar works;

B. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

C. Money and securities;

D. Growing crops, standing timber which is grown or maintained specifically for purposes of conversion to lumber and animals.

E. Watercraft, aircraft, motor vehicles licensed for highway use when not on the Insured's premises, but this exclusion shall not apply to contractor's equipment;

F. Waterborne shipments via the Panama Canal, and to and from Puerto Rico, the Virgin Islands, Hawaii, and Alaska;

G. Export shipments after loading on board an overseas vessel or watercraft or after ocean marine insurance attaches, whichever occurs first; and import shipments prior to discharge from the overseas vessel, watercraft or aircraft until the ocean marine insurance terminates, whichever occurs last;

H. Property sold by or under encumbrance to the Insured after it leaves the custody of the Insured or an employee of the Insured;

I. Furs, jewelry, jewels, precious or semiprecious stones, gold, silver and platinum or other precious alloys;

J. Contractor's and subcontractor's machinery, tools and equipment used in erection of property covered unless the total capital value of such property is directly and specifically charged to the job;

K. Personal property left in the open, when loss is caused by exposure to rain, sleet, snow, sand or dust;

L.  Property illegally acquired;

M. Transmission and distribution lines beyond 1,000ft from the Insured's premises;

N. Property more specifically insured elsewhere.

O. Loss of Market, Loss of Use, Delay of Use

P. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

Q. Indirect or remote loss or damage.

12.  **VALUATION**
In case of loss, the basis of adjustment shall be as follows:

A. **Stock**

   (1) Raw Stock (materials and supplies in the state in which the Insured received them for conversion by the Insured into finished stock, including supplies consumed in such conversion or in the service rendered by the Insured) shall be valued at replacement cost at the time and place of loss.

   (2) Stock in process (raw stock which has undergone any aging, seasoning, or other processing by the Insured but which has not become finished stock) shall be valued at the Insured's selling price of finished stock at the time of loss, less any manufacturing expense not incurred by the Insured and less any discounts, rebates, and un-incurred expenses to which the sales price would have been subject.

   (3) Finished stock (stock which in the ordinary course of the Insured's business is ready for packing, shipment or sale) and merchandise shall be valued at the Insured's selling price at the time of loss, less all discounts, rebates, and un-incurred expenses to which such sales price would have been subject.

B. **Real and Personal Property**

   (1) Buildings, structures, furniture and fixtures, machinery, equipment, improvements and betterments, shall be valued at the replacement cost new on the same premises, as of the date of replacement.

   (2) Electronic Data Processing or control equipment and production machinery and equipment or any part thereof shall be valued at the cost to repair or replace new on the same premises as of the time of replacement except, that with respect to items for which replacement with identical property is impossible, the replacement cost shall be the cost of items similar to the destroyed property and intended to perform the same function but which may include technological advances.

   (3) Valuable papers and records shall be valued at the cost to reproduce the property as of the date of reproduction including the cost of gathering and/or assembling information.

"Valuable papers and records" are defined as written, printed, or otherwise inscribed documents and records, including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts, and media and the data recorded thereon, but not including money and/or securities.

"Media" is defined as materials upon which data is recorded including, but not limited to, paper, tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

"Data" is defined as facts, concepts, or instructions in a form usable for communications, interpretation, or processing by automatic means. It includes computer programs.

The term "securities" shall mean all negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use, tokens and tickets but does not include money.

(4) Property of others which the Insured is required to insure to a stipulated value shall be valued at the replacement cost new as of the date of replacement, if replaced at the Insured's option; otherwise at the stipulated value.

(5) Fine Arts shall be valued at the appraised value; or if there is no appraisal, at the greater of the original acquisition cost or the market value at the time of the loss.

(6) Other property not otherwise provided for, at replacement cost new on the same premises as of the date of replacement.

(7) Permission is granted for the Insured to replace the damaged property with any property at the same site or at another site within the territorial limits of this policy, but recovery is limited to what it would cost to replace on same site, if property damaged or destroyed is not repaired, rebuilt or replaced within a reasonable period after the loss or damage, this Company shall not be liable for more than the actual cash value at the time of loss (ascertained with proper deduction for depreciation) of the property damaged or destroyed. However, limitations imposed by federal, state or municipal building codes shall not result in actual cash valuation.

(8) Mobile Equipment shall be valued at actual cost value at the time of loss.

## 13.   **EARTHQUAKE AND FLOOD**

A. Each loss by earthquake or flood shall constitute a single occurrence hereunder if:
   (1) more than one earthquake shock occurs within any period of 72 hours during the term of this policy, the beginning of which 72 hour period may be determined by the Insured; or

   (2) any flood occurs within a period of the continued rising or overflow of any river(s) or stream(s) and the subsidence of same within the banks of such

river(s) or stream(s); or

(3) any flood results from any tidal wave or series of tidal waves caused by any one disturbance.

Flood: The term "flood" is defined as waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.

Earthquake: The term "earthquake" is defined as a movement or shaking of the earth that is seismic in origin.  Landslide, mudflow, volcanic eruption, earth sinking, subsidence, rock fall shall not be considered an earthquake under this definition.

B. Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

C. This Company shall not be liable, however, for any loss caused by any earthquake or flood commencing before the effective date and time or commencing after the expiration date and time of this policy.

14.   **CONTRIBUTING INSURANCE**

Contributing insurance is insurance written upon the same plan, terms, conditions, and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

15.   **EXCESS INSURANCE**

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

16.   **UNDERLYING INSURANCE**

A. Underlying insurance is insurance on all or any part of the deductible and against all or any of the causes of loss covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

B. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered other insurance, as defined in the Other Insurance clause.

17. **OTHER INSURANCE**

Except for insurance described by the contributing insurance clause, the excess insurance clause, or the underlying insurance clause, this policy shall not cover to the extent of any other collectible insurance, whether directly or indirectly covering the same property against the same causes of loss. This Company shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from such other collectible insurance. Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Company guarantees prompt payment in full of the amount of loss which would have been otherwise recoverable hereunder in the absence of such other collectible insurance and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other collectible insurance minus the cost of recovery. As used herein, "other collectible insurance" does not include self-insurance, deductibles, self-insured retentions or fronting policies.

18. **SUBROGATION**

A. Any release from liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, affiliated, subsidiary, and associated companies or corporations, the Insured's officers, directors, and employees, or any other corporations or companies associated with the Insured through ownership or management, and at the option of the Insured against a tenant of the Insured, is waived.

B. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall do anything that may be reasonably necessary at the expense of the Company to secure such right. The Company will act in concert with all other interests concerned, i.e., the Insured and any other Company (ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.

C. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the cost of recovery shall be divided between the interests concerned in the proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne by the insurers instituting the proceedings.

19. **SALVAGE AND RECOVERIES**

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

20. **MACHINERY**

In case of loss or damage insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

21. **ERRORS OR OMISSIONS**

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the Insured reports such error or omission as soon as reasonably possible after discovery by the Insured's home office insurance department.

22. **NOTICE OF LOSS**

As soon as practicable after any loss or damage occurring under this policy is known to the Insured's Office of Risk Management, the Insured shall report such loss or damage to Parker, Smith & Feek, 2233 112th NE, Bellevue, WA 98004 for transmission to this Company. Any delay by the Insured in providing notice shall not affect the Insured's right to coverage under this policy, except if and to the extent that the Company proves that it actually and substantially was prejudiced by any unreasonable delay in notice.

23. **PROOF OF LOSS**

The Insured, at the request of the Company, will render a signed and sworn proof of loss to the Company or its appointed representative stating; the place, time, cause of the loss, damage, or expense; the Interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

24. **PARTIAL PAYMENT OF LOSS**

In the event of a loss covered by this policy, it is understood and agreed that the Company will issue partial payment(s) of claim subject to the policy provisions, and shall not be less than the undisputed estimate of loss or damage between the Insured and the Company.

25. **ASSIGNED ADJUSTER**

It is agreed that Jeff Hellman at McLarens Young, Inc., 19324 40th Avenue W, Suite C, Lynnwood, WA 98036 will represent the Company in the investigation and adjustment of all losses reported under this policy.

26. **APPRAISAL**

If the Insured and this Company fail to agree on the amount of the loss, each, upon written demand of either the Insured or this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such

appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss and shall be paid by the Company within 30 days thereafter. The Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

**27.    PAIR AND SET**

Except as provided under the Machinery clause and paragraph (3) of the Consequential Loss clause, in the event of loss or damage insured against to any article or articles which are a part of a pair or set, the measure of loss or damage to such article or articles shall be, at the Insured's option:

A.  the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

B.  the full value of the pair or set provided that the Insured surrenders the remaining article or articles of the pair or set to the Company.

**28.    ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall reasonably cooperate with this Company and, at this Company's reasonable request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

**29.    SUE AND LABOR**

In case of actual or imminent loss or damage covered by this policy, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants, or assigns to sue, labor and travel for, in and about the defense, the safeguard, and the recovery of property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

**30.    PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

**31.    REINSTATEMENT**

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 3, no loss hereunder shall reduce the amount of this policy.

**32.    SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all

the requirements of this policy; however, if there is any dispute between the Insured and the Company as to whether the Insured has fully complied with all the requirements of this policy, such a dispute may be resolved in a suit or action on the policy for recovery of any claim. The Company agrees that any action or proceedings against it for recovery of any loss under this policy shall not be barred if commenced within two years and one day after the Insured provides notice to the Company in accordance with Clause 22 above, which period shall be tolled from the date of notice until the date that the Insured receives the Company's final coverage decision (this two year and one day period is referred to as the "limitations period"). However, the limitations period shall not apply if by the laws of the State of the address of the Insured such a limitation is invalid or if the laws of the state in which any such action is brought permit a longer period of time within which to commence such a suit. Furthermore, any tolling of the limitations period shall not preclude the Insured from bringing a suit or any other proceeding regarding recovery for any loss or of any claim hereunder during the period of tolling or at any other time.

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. The Company shall not transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

## 33. **CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions and exclusions stated herein. Such certificates are to be forwarded to the Company within 30 days of issuance.

The Company hereby authorizes Parker, Smith & Feek, Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

## 34. **CANCELLATION**

A. This policy may be canceled at any time at the request of the Insured or it may be canceled by the Company by mailing to the Insured at:

Risk Manager –xyz Company
Office of Risk Management.
Post Office Box
Seattle, WA

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

B. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

C. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

D. In the event of non-payment of premium this policy may be canceled by the Company by mailing to the Insured at the address shown in A. above stating when, not less than 10 days thereafter, such cancellation shall be effective. Reinstatement of coverage shall be effective immediately upon receipt of premium by the Company.

## 35.   **VALUES**

The values and schedule of property declared to the Company at the inception of the policy are for premium purposes only and shall not limit the coverages provided by this policy.

## 36.   **TITLES OF PARAGRAPHS**
The titles of paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 37.   **CONFORMANCE**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

**DEFINITIONS:**

**Accidental Interruption Of Services**
This Policy covers physical damage resulting from changes in temperature or relative humidity to insured property at an insured location when such changes in temperature or relative humidity result from the interruption of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at the insured location.

This Additional Coverage will apply when the period of service interruption as described below is in excess of 24 hours.

**Actual cash value:**
the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

**Aggregate during any policy year:**
the Company's maximum amount payable during any policy year.

**Ammonia Contamination**
In the event of direct physical loss of or damage to Covered Property caused by a breakdown of covered equipment at a Location covered hereunder, the Company will pay for resulting Ammonia Contamination.

Ammonia Contamination shall mean the loss or damage, including salvage expense, caused by ammonia contacting or permeating Covered Property under refrigeration or in process requiring refrigeration, as the result of any one occurrence.

**Automatic Coverage**

This Policy covers property of the type insured by this Policy at any Location rented, leased or purchased by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease or purchase.

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1)      The Location is agreed to be insured by the Underwriters.

2)      Agreement is reached that the Location will not be insured under this Policy.

3)      The Time Limit specified in the Schedule has been reached.  The Time Limit begins on the date of rental, lease or purchase.

**Contamination:**
any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**Contingent time element location:**

**Direct (Tier 1 Supplier/Customer):**

Supplier:     A supplier that supplies products or services directly to the Insured,

Customer:     A customer that receives products or services directly from the Insured.

**Indirect (Tier 2 Supplier/Customer):**

Supplier:     A supplier that supplies products or services directly to a Tier 1 supplier of the Insured,

Customer:     A customer that receives products or services directly from a Tier 1 customer of the Insured

**Date or time recognition:**

the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or

processing of data involving one or more dates or times, including the Year 2000.

**Deferred Payments**

This Policy covers insured physical loss or damage to Personal Property of the type Insured by this Policy sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property.

In the event of such loss to property sold under deferred payment plans, the Insured will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

There is no liability under this Policy for loss:

1)     pertaining to products recalled including, but not limited to, the costs to recall, test or to advertise such recall by the Insured.

2)     from theft or conversion by the buyer of the property after the buyer has taken possession of such property.

3)     to the extent the buyer continues payments.

4)     not within the Territory of this Policy.

**Earth movement:**
any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage, or flood resulting from earth movement will not be considered to be loss by earth movement within the terms and conditions of this Policy.

**Electronic data processing equipment or media**:
any computer, computer system or component, hardware, network, microprocessor, microchip,

integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

## Extended Period Of Liability

The ~~Gross  Earnings~~Business Interruption coverage is extended to cover the reduction in sales:

1) resulting from the interruption of business as covered by ~~Gross Earnings~~Business Interruption;

2) for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred; and

3) commencing with the date on which the liability of the Underwriters for loss resulting from interruption of business would terminate if this Extension had not been included herein.

Extended Period of Liability Exclusions: As respects Extended Period of Liability, the Time Element Exclusions B of this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to fines or damages for breach of contract or for late or non completion of orders, or penalties of any nature.

Coverage under this Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended Period of Liability.

Coverage under this Extension does not apply for more than the number of consecutive days specified in the Schedule.

**Fine arts**:
paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary;

sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money, securities.

## Fines Or Penalties

This policy covers fines or penalties imposed by a governmental agency and arising from a Regulatory Action, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty. This policy also insures fines or penalties resulting from a breach of contract by the Insured. This Policy shall pay for the amount of loss in excess of the Policy

Deductible, but not to exceed the sublimit as stated in the
~~Declarations~~Declarations applying to this Coverage.

**Flood:**
flood; surface waters; rising waters; storm surge, sea surge, wave wash;
waves; tsunami; tide or tidal water; the release of water, the rising,
overflowing or breaking of boundaries of natural or man-made bodies of
water; or the spray therefrom; all whether driven by wind or not; or sewer
back-up resulting from any of the foregoing; regardless of any other cause
or event, whether natural or man-made, contributing concurrently or in any
other sequence of loss. Physical loss or damage from flood associated with a
storm or weather disturbance whether or not identified by name by any
meteorological authority, is considered to be flood within the terms of this
Policy. However, physical loss or damage by fire, explosion or sprinkler
leakage resulting from flood is not considered to be loss by flood within the
terms and conditions of this Policy.

## Land And Water Contaminant Or Pollutant Cleanup, Removal And Disposal

This Policy covers the reasonable and necessary cost for the cleanup, removal and
disposal of contaminants or pollutants from uninsured property consisting of land,
water or any other substance in or on land at the Insured Location if the release,
discharge or dispersal of contaminants or pollutants is a direct result of insured
physical loss or damage to insured property.

This Policy does not cover the cost to cleanup, remove and dispose of contaminants
or pollutants from such property:

1)      at any location insured for Personal Property only.

2)      at any property insured under Automatic Coverage, Errors And Omissions
        or Miscellaneous Unnamed Location coverage provided by this Policy.

when the Insured fails to give written notice of loss to the Underwriters within 180
days after inception of the loss.

**Location:**

A.      as specified in the Schedule of Locations, or

B.      if not so specified in the Schedule of Locations:

        1) a building, yard, dock, wharf, pier or bulkhead (or any group of the
                          foregoing)

        a) bounded on all sides by public streets, clear land space or open
           waterways, each not less than 50 feet/15 metres wide. Any bridge or
           tunnel crossing such street, space or waterway will render such
           separation inoperative for the purpose of this definition.

## LOGISTICS EXTRA COSTS

This Policy covers the extra cost incurred by the Insured during the PERIOD OF LIABILITY due to the disruption of the normal movement of goods or materials;

1)    directly between insured locations; or
2)    directly between an insured location and a location of a direct customer, supplier, contract manufacturer or contract service provider to the Insured,

provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured located within the TERRITORY of this Policy.

Measurement of Loss;
The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

1)    extra costs to temporarily continue as nearly normal as practicable the movement of goods or materials.

This Extension will apply when the PERIOD OF LIABILITY is in excess of 48 hours except 168 hours applies for earth movement and/or flood and "or wind.

LOGISTICS EXTRA COST Exclusions: As respects LOGISTICS EXTRA COST, the following additional exclusions apply:

This Policy does not insure:

1)    any loss resulting from disruption in the movement of goods or materials between contingent time element locations.
2)    any loss resulting from disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.
3)    any loss of income.
4)    costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials.
5)    costs of permanent repair or replacement of property that has been damaged or destroyed.
6)    any expense recoverable elsewhere in this Policy.
7)    any loss resulting from disruption caused by or resulting from terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.
8)    any loss resulting from disruption caused by loss or damage from earth movement in California, in the New Madrid Seismic Zone or in the Pacific Northwest
9)    any loss resulting from disruption caused by physical loss or damage to personal property of the Insured while in transit.

The PERIOD OF LIABILITY for this TIME ELEMENT COVERAGE EXTENSION will be:

The period of time:
1)    starting at the time of physical loss or damage causing the disruption of the normal movement of goods or materials directly between insured locations; or directly between the insured location and the location of the

direct customer, supplier, contract manufacturer or contract service
provider to the Insured, and

2)     ending not later than:

a)  when with due diligence and dispatch the normal movement of goods or
materials directly between insured locations; or directly between the insured
location and the location of the direct customer, supplier, contract
manufacturer or contract service provider to the Insured could he resumed; or

b)  the number of consecutive days shown in the LIMITS OF LIABILITY clause of
the DECLARATIONS section.

### Miscellaneous Unnamed Location

This Policy covers all real and personal property at a Miscellaneous Unnamed
Location.

A Miscellaneous Unnamed Location as used herein shall be defined as a location
at which the Insured has property of the type insured hereunder which has not
been reported to the Insurers. Upon report to the Insurers of said location, the
Policy Limit shall apply.

#### Normal:
the condition that would have existed had no physical loss or damage
happened.

#### Normal cost:
the cost associated with the movement of goods or materials suffering the
disruption that the

Insured would have incurred had no physical loss or damage causing
disruption happened.

### Off Premises Data Services

1. PROPERTY DAMAGE—This Policy covers insured physical loss or damage to
insured property al an insured location when such physical loss or damage
results from the interruption of off-premises data processing or data
transmission services by reason of any accidental event at the facilities of
the provider of such services that immediately prevents in whole or in part
the delivery of such provided services.

2. TIME ELEMENT—This Policy covers the Actual Loss Sustained and EXTRA
EXPENSE incurred by the Insured during the period of interruption at an
insured location of off-premises data processing or data transmission
services, when the interruption is caused by any accidental event al the
facilities of the provider of such services that immediately prevents in
whole or in part the delivery of such provided services.

### CONDITIONS

A. For the purposes of these Off Premises Data Services coverages:

1) facilities of the provider of off-premises data processing or data transmission services can be located worldwide except in Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine, and
2) an accidental event to satellites will be considered an accidental event at the facilities of the provider

B. This Additional Coverage will apply when the period of interruption of off-premises data processing or data transmission services as described below is in excess of 24 hours.

C. The period of interruption of off-premises data processing or data transmission services is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored.

D. Additional General Provisions:
1) The Insured will immediately notify the company providing off-premises data processing or data transmission services of any interruption of such services.
2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

E. This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:
1) movement for property located in California, in the New Madrid earth Seismic Zone or in the Pacific Northwest Seismic Zone.
2) terrorism.

F. As used above, the period of interruption of off-premises data processing or data transmission services:
1) is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the location receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the PERIOD OF LIABILITY clause in this section.
2) is limited to only those hours during which the Insured would or could have used service(s) if it had been available.
3) does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

**Occurrence:**
the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

A.    terrorism: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all acts of terrorism during a continuous period of seventy-two (72) hours.

B.    earth movement: occurrence shall mean the sum total of all loss or damage of the type insured, including any insured TIME ELEMENT loss, arising out of or caused by all earth movement(s) during a continuous period of seventy-two (72) hours.

### Off-premises data processing or data transmission services:

The storage or processing of data performed off-premises of the Insured's property, including the

Transmission of voice, data or video over a single, or combination of, computer or communication networks.

### Physical loss or damage to electronic data, programs or software:
the destruction, distortion or corruption of electronic data, programs or software.

### Representative company:
Lex London a Division of American International Group UK Limited

### Soft costs:
costs over and above those that are normal at an insured location undergoing renovation or in the course of construction, limited to the following:

A.    construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including; the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

B.    commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

C.    additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

D.    property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

### Terrorism:

any act, involving the use or threat of: force, violence, dangerous conduct, interference with the

operations of any business, government or other organization or

institution, or any similar act, when the effect or apparent purpose

is:

A.    to influence or instill fear in any government (de jure or de facto)
or the public, or any segment of either; or

B.    to further or to express support for, or opposition to, any
political, religious, social, ideological or similar type of objective
or position.

### Transmission and distribution systems:
transmission and distribution systems including but not limited to
electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data,
and video. Such systems shall include poles, towers and fixtures,
overhead conductors and devices, underground and underwater conduit,
underground and underwater conductors and devices, line transformers,
service meters, street lighting and signal systems.


### Valuable papers and records:

This Policy covers insured physical loss or damage to Valuable Papers and Records
while anywhere within this Policy's Territory, including while in transit.

1)    This Additional Coverage excludes loss or damage to:

a)  property described below, if such property cannot be replaced with other
of like kind and quality, unless specifically declared to the Underwriters.

b)  currency, money or securities.

c)  property held as samples or for sale or for delivery after sale.

2)    Valuable Papers and Records Exclusions:

In addition to the exclusions in the Exclusions clause of this section, as respects Valuable
Papers And Records, this Policy does not insure errors or omissions in processing, or
copying; all unless physical damage not excluded by this Policy results, in which event, only
that resulting damage is insured.

3)  The term Valuable Papers and Records wherever used in this Policy means written, printed
or otherwise inscribed documents and records, including books, maps, films, drawings,
abstracts, deeds, mortgages and manuscripts, all of which must be of value to the Insured.


### Wind:
direct action of wind including substance driven by wind. Wind does
not mean or include anything defined as flood in this Policy.

## ELECTRONIC DATA ENDORSEMENT A

### 1.  Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows: -

a)  This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b)  However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils:
Fire, Explosion

### 2.  Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows: -

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed US$ 10,000,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

**NMA 2914 – (25.1.01)**

## ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

This Policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:
a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or
b) any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**NMA 2802 - 17/12/1997**

### Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such Suit may be made upon

Messrs Mendes & Mount
750 Seventh Avenue,
New York N.Y. 10019-6829

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking **to** the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998

**Short Form Privacy Notice – Commercial Lines**

American International Group UK Limited Privacy Policy is available at
https://www.aig.co.uk/privacy-policy or by requesting a copy from: Data Protection
Officer American International Group UK Limited The AIG Building, 58 Fenchurch Street,
London EC3M 4AB, UK] or by email dataprotectionofficer.uk@aig.com

Before providing us with Personal Information about another individual you must (unless
we agree otherwise): (a) inform the individual about the content of this notice and our
Privacy Policy; and (b) obtain their permission (where possible) to share their Personal
Information with us in accordance with the Privacy Policy.

### FRAUDULENT CLAIM CLAUSE

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as
regards amount or otherwise, then this contract shall become void and all claim
hereunder shall be forfeited.

**LMA5062**
04/06/2006

### MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly
or indirectly arising out of or relating to:

> mold, mildew, fungus, spores or other microorganism of any type, nature, or
> description, including but not limited to any substance whose presence poses an
> actual or potential threat to human health.

This Exclusion applies regardless whether there is:

(i)     any physical loss or damage to insured property;

(ii)    any insured peril or cause, whether or not contributing concurrently or in any
        sequence;

(iii)   any loss of use, occupancy, or functionality; or

(iv)    any action required, including but not limited to repair, replacement, removal,
        cleanup, abatement, disposal, relocation, or steps taken to address medical or
        legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides
insurance, in whole or in part, for these matters.

**LMA5018 - 14/09/2005**

## WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**NMA464 - 1/1/38**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE – PHYSICAL DAMAGE - DIRECT

This policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* NOTE. - If Fire is not an insured peril under this policy the words "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

7/5/59
NMA1191

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**NMA2962 - 06/02/2003**

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**1.    Property Not Covered**

This Policy does not cover land, land values or water.

**2.    Pollution and Contamination Exclusion.**

This Policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this Policy arising directly from that fire is insured, subject to the provisions of this Policy.

CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

**3.    Asbestos, Dioxin or Polychlorinated Biphenyls Exclusions**

This Policy does not cover -

a)    Asbestos, dioxin or polychlorinated biphenyls (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, or leakage or accidental discharge from automatic fire protective system.

b)    Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property that can no longer be used for the purpose for which it was intended

**4.     Debris Removal Exclusion**

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

The Company will not pay the expense to:

a)     Extract contaminants or pollutants from the debris; or

b)     Extract contaminants or pollutants from land or water; or

c)     Remove, restore or replace contaminated or polluted land or water; or

d)     Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

**5.     Authorities Exclusion**

Notwithstanding any of the provisions of this Policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

All other terms and conditions of the Policy remain the same.

## SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured Locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

### Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.

In consideration of a premium charged of USD**96,000**, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting TIME ELEMENT loss, as provided in the TIME ELEMENT section of the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein. This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under the LIMITS OF LIABILITY clause of the DECLARATIONS section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD100,000,000,000. If the aggregate insured losses for all insurers exceed USD100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law.

Under this formula, the United States pays 85% (and beginning on January 1, 2016, shall then decrease by

1 percentage point per calendar year until equal to 80 percent) of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of

Terrorism. Reference and Application: The following term(s) means:

Certified Act of Terrorism:

A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and

extended in 2005, 2007, and in 2015. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

    a. The act resulted in aggregate losses in excess of USD5,000,000; and

The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.



**CNA Property Policy**

**Computer Virus Exclusion Endorsement**

### THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.

Effective July 31, 2019, this policy is amended as follows:

It is hereby understood and agreed that the policy to which this endorsement is attached excludes coverage for any physical damage, direct or indirect and any *Time Element*, direct or indirect, occasioned by or through or in consequence, directly or indirectly, of *Computer Virus*, whether intentional or unintentional, and whether such loss be direct or indirect, proximate or remote or be in whole or in part caused by, contributed to or aggravated by the peril(s) insured against in this policy

In any action, suit or other proceeding, where the Company alleges that by reason of the provisions of this condition any loss is not covered by this insurance, the burden of proving that such loss or damage is covered shall be upon the Insured.

For the purposes of this policy and endorsement *Computer Virus* is hereby defined as any unauthorized intrusive codes or programming that are entered by any means into covered data processing equipment, media, software, programs, systems or records and interrupt the Insured's operations at any covered locations.

For the purpose of this policy and endorsement, *Time Element* shall mean Business Interruption (Gross Earnings/ Loss of Profits), Extra Expense, Rents/ Rental Value, Leasehold Interest, Contingent Business Interruption, Contingent Extra Expense, Interdependency.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

L1002A (03-10)
Page 1 of 1
CONTINENTAL CASUALTY COMPANY
Insured Name: KEMPER HOLDINGS LLC

Policy No: 6072928892
Endorsement No: 2
Effective Date:

Copyright CNA All Rights Reserved.



**CNA Property Policy**

**Economic and Trade Sanctions Condition Endorsement**

### THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the policy to which this endorsement is attached is amended as follows:

The following condition is added:

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void ab initio (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

LEOFAC02 (03-10)
Page 1 of 1
CONTINENTAL CASUALTY COMPANY
Insured Name: KEMPER HOLDINGS LLC

Policy No: 6072928892
Endorsement No: 3
Effective Date:

Copyright CNA All Rights Reserved



**CNA Property Policy**

**Mold Exclusion Endorsement**

### THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.

Effective July 31, 2019, it is hereby agreed that this policy is amended as follows:

Notwithstanding any provisions to the contrary within this policy or any endorsement thereto, it is hereby understood and agreed that the policy to which this endorsement is attached excludes coverage, including but not limited to loss, damage, cost or expense of whatsoever nature, for any physical damage, direct or indirect and any *Time Element*, direct or indirect, as a result of, occasioned by, in connection with, arising from the actual, perceived or threatened involvement of or happening through or in consequence of *Mold*, regardless of any other cause or event contributing concurrently, regardless of being resultant from any other peril insured against herein or in any other sequence to the loss.

This insurance does not apply to any loss, cost or expense arising out of an insured's or anyone else's testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any other way responding to or assessing the effects of *Mold*, regardless of whether such action was taken or is proposed in response to:

**(1)**      Any request, demand or order by or on behalf of any private party or governmental authority;

**(2)**      Any claim, "suit" or proceeding brought by or on behalf of any private party or governmental authority; or

**(3)**      Any statutory or regulatory requirement.

For the purposes of this policy and endorsement, "*Mold*" shall be defined to include:

**(1)**      Any "fungi";

**(2)**      Any mold, mildew, bacteria, virus, scent, spore, mycotoxin, or any other substance, product or byproduct produced by, released by, or arising out of the current or past presence of "fungi";

**(3)**      Any past, present, or potential future presence or growth of "fungi" in or on any medium, material, product, building, or structure.

For the purpose of this endorsement, "fungi" includes, but is not limited to, any form of fungus, mold, mushroom, or mildew other than edible mushrooms that were deliberately grown for human consumption.

For the purpose of this policy and endorsement, "*Time Element*" shall mean Business Interruption (Gross Earnings/ Loss of Profits), Extra Expense, Rents/ Rental Value, Leasehold Interest, Contingent Business Interruption, Contingent Extra Expense, Interdependency.

If the insurer alleges that by reason of this exclusion, any loss, damage or cost or expense is not covered by this policy or endorsement the burden of proving the contrary shall be upon the insured.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

L1003A (03-10)
Page 1 of 1
CONTINENTAL CASUALTY COMPANY
Insured Name: KEMPER HOLDINGS LLC

Policy No: 6072928892
Endorsement No:  4.
Effective Date:

Copyright CNA All Rights Reserved.



**CNA Property Policy**

**Product Contamination and Recall Exclusion Endorsement**

### THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the policy to which this endorsement is attached is amended as follows:

The following exclusion is added:

Product Contamination and Recall

This policy excludes loss or damage caused by or resulting from adulteration or contamination to raw stock, stock in process or finished stock or products in the stream of commerce which causes the stock or products to become diminished in value or use, including but not limited to diminished value or use due to change in color, finish, flavor, size or texture. This exclusion applies unless the adulteration or contamination is itself caused by covered physical loss, damage or destruction of property insured by this Policy for the following Causes of Loss:

Fire; lightning; explosion; windstorm or hail; *earth movement*; *flood*; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; sudden and accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured *location*;

Further, this policy does not insure against any loss, damages, costs or expenses incurred by the Insured or by others for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Insured's products or the Insured's direct or indirect customers or suppliers if such product or any portion of it is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, contamination or dangerous condition.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

LCE02 (03-10)
Page 1 of 1
CONTINENTAL CASUALTY COMPANY
Insured Name: KEMPER HOLDINGS LLC

Policy No: 6072928892
Endorsement No: 5
Effective Date:

Copyright CNA All Rights Reserved



**CNA Property Policy**

**Terrorism Exclusion Endorsement**

### THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.

It is hereby understood and agreed that the policy to which this endorsement is attached excludes coverage for any loss or damage, direct or indirectly cause by or resulting from **Terrorism** regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence to the loss.

**Terrorism** shall mean the use or threat of force or violence against persons or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when one or more of the following apply:

> The effect is to intimidate or coerce a government or business, or to disrupt any segment of the economy;

> The effect is to cause any alarm, fright, fear or danger, or apprehension of public safety; or

> The apparent or logically implied intent is to further political, ideological, religious or cultural objectives, or to express support for (or opposition to) a philosophy, ideology, religion or culture.

This exclusion does not apply to fire damage which results or follows from acts of **Terrorism** in the United States of America in those states which require such coverage to be provided.

All other terms and conditions of the Policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

L1001B (03-10)                                                           Policy No: 6072928892
Page **1** of 1                                                           Endorsement No:  6
CONTINENTAL CASUALTY COMPANY                                Effective Date:
Insured Name: KEMPER HOLDINGS LLC

Copyright CNA All Rights Reserved.



| CNA Property Policy |
|---|

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

It is hereby understood and agreed that the following changes have been made to the policy:

**Section 3. Limits of Liability, A. Earthquake** is removed and replaced with **Earth Movement**.

**Section 4. Deductibles, Earthquake** is removed and replaced with **Earth Movement**

**Section 13. EARTHQUAKE AND FLOOD**, EARTHQUAKE is removed and replaced with **EARTH MOVEMENT**:

Earth Movement: Earthquake, landslide, mine subsidence, volcanic eruption, volcanic action, earth sinking (including sinkhole collapse), rising, shifting, or any other earth movement (natural or man-made) except as follows:

    a.  Flood, surface water, mudslide or mud flow (caused by accumulation of water on or underground), waves, tidal water or tidal wave, Tsunami, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

    b.  Release of water impounded by a dam regardless of cause.

    c.  However, any fire, explosion or leakage from fire protective systems or devices resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms of this policy.

The following sublimits are amended as follows:

| | |
|---|---|
| • **Attraction Property** | **NOT COVERED** |
| • **Contingent Time element Extended** | **$10,000,000** |
| • **Fire Brigade Charges** | **$10,000,000** |
| • **Off Premises Data Services Property Damage** | |
| **And Off Premises Data Services Time Element Combined** | **NOT COVERED** |
| • **Terrorism** | **NOT COVERED** |

All other terms and conditions remain unchanged.

THIS ENDORSEMENT IS A PART OF YOUR POLICY AND TAKES EFFECT ON THE EFFECTIVE DATE OF YOUR POLICY UNLESS ANOTHER EFFECTIVE DATE IS SHOWN BELOW

| ENDORSEMENT NUMBER | POLICY NUMBER |
|---|---|
| 7 | RMP 6072928892 |
| NAMED INSURED | EFFECTIVE DATE |
| Kemper Holdings LLC | |

# EXHIBIT F



**JAY INSLEE**
Governor

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

## PROCLAMATION BY THE GOVERNOR

### 20-05

**WHEREAS**, On January 21, 2020, the Washington State Department of Health confirmed the first case of the novel coronavirus (COVID-19) in the United States in Snohomish County, Washington, and local health departments and the Washington State Department of Health have since that time worked to identify, contact, and test others in Washington State potentially exposed to COVID-19 in coordination with the United States Centers for Disease Control and Prevention (CDC); and

**WHEREAS**, COVID-19, a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person; and

**WHEREAS**, The CDC identifies the potential public health threat posed by COVID-19 both globally and in the United States as "high", and has advised that person-to-person spread of COVID-19 will continue to occur globally, including within the United States; and

**WHEREAS**, On January 31, 2020, the United States Department of Health and Human Services Secretary Alex Azar declared a public health emergency for COVID-19, beginning on January 27, 2020; and

**WHEREAS**, The CDC currently indicates there are 85,688 confirmed cases of COVID-19 worldwide with 66 of those cases in the United States, and the Washington State Department of Health has now confirmed localized person-to-person spread of COVID-19 in Washington State, significantly increasing the risk of exposure and infection to Washington State's general public and creating an extreme public health risk that may spread quickly; and

**WHEREAS**, The Washington State Department of Health has instituted a Public Health Incident Management Team to manage the public health aspects of the incident; and

**WHEREAS**, The Washington State Military Department, State Emergency Operations Center, is coordinating resources across state government to support the Department of Health and local officials in alleviating the impacts to people, property, and infrastructure, and is assessing the magnitude and long-term effects of the incident with the Washington State Department of Health; and

**WHEREAS,** The worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and Washington State significantly impacts the life and health of our people, as well as the economy of Washington State, and is a public disaster that affects life, health, property or the public peace.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a State of Emergency exists in all counties in the state of Washington, and direct the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented.  State agencies and departments are directed to utilize state resources and to do everything reasonably possible to assist affected political subdivisions in an effort to respond to and recover from the outbreak.

As a result of this event, I also hereby order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I direct the Washington State Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Signed and sealed with the official seal of the state of Washington this 29th day of February, A.D., Two Thousand and Twenty at Olympia, Washington.


By:


_____/s/_____
Jay Inslee, Governor


BY THE GOVERNOR:


_____/s/_____
Secretary of State

# EXHIBIT G



**JAY INSLEE**
Governor

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

## PROCLAMATION BY THE GOVERNOR
## AMENDING PROCLAMATIONS 20-05 AND 20-06

### 20-07

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** on March 10, 2020, as a result of significant risks from COVID-19 to persons living in congregate care settings, I issued Proclamation 20-06 amending Proclamation 20-05 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** COVID-19, a respiratory disease that spreads easily from person to person and may result in serious illness or death, has been confirmed in 9 counties of Washington State resulting in 24 deaths, with significant community spread in King, Pierce, and Snohomish counties; and

**WHEREAS,** to reduce spread of COVID-19, the United States Centers for Disease Control and Prevention and the Washington State Department of Health (DOH) recommend implementation of community mitigation strategies to increase containment of the virus, including cancellation of large gatherings and social distancing in smaller gatherings; and

**WHEREAS,** implementation of limitations on large gatherings and use of social distancing prevent initial exposure and secondary transmission to our most vulnerable populations, and are especially important for people who are over 60 years old and those with chronic health conditions due to the higher risk of severe illness and death from COVID-19; and

**WHEREAS,** the worldwide outbreak of COVID-19 and the resulting epidemic in Washington State continue to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property and the public peace; and

**WHEREAS,** the DOH continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS,** the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that Proclamations 20-05 and 20-06 remain in effect and are amended to impose restrictions on large gatherings in King, Pierce, and

Snohomish counties as provided herein, and that a State of Emergency continues to exist in all counties of Washington State. I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 epidemic.

As a result of this event, I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(b) and RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the following activities in King, Pierce and Snohomish counties related to social, spiritual, and recreational gatherings, which restrictions shall remain in effect until midnight on March 31, 2020, unless extended beyond that date:

> Gatherings of 250 people or more for social, spiritual and recreational activities including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 11th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# EXHIBIT H



JAY INSLEE
Governor

**STATE OF WASHINGTON**
## OFFICE OF THE GOVERNOR
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATION 20-05

**20-13**
**Statewide Limits:  Food and Beverage Services, Areas of Congregation**

**WHEREAS,** on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, and 20-12, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the spread of COVID-19 has been classified by the World Health Organization as a pandemic that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the COVID-19 disease has and continues to spread quickly across the state of Washington, beyond the original community outbreaks in King, Pierce and Snohomish counties, drastically increasing the threat of significant associated health risks statewide; and

**WHEREAS,** on March 9, confirmed cases of COVID-19 infection in Washington totaled 162 in nine counties, including 21 deaths; and on March 13, confirmed cases increased to a total of 568 in 15 counties, including 37 deaths; and on March 15, confirmed cases further increased to 769 in 17 counties, including 42 deaths, with these 17 counties representing 85% of the State's total population;

**WHEREAS,** as of March 15, 2020, Washington State represents 2% of the nation's population and has 21% of confirmed COVID-19 cases, and 64% of COVID-19-related deaths, in the United States;

**WHEREAS,** on March 15, 2020, the United States Center for Disease Control and Prevention revised its guidance to reduce the size of gatherings from 250 persons to 50 persons;

**WHEREAS,** to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately prohibit any number of people from congregating in public venues for purposes of public entertainment, recreation, food or beverage service, theater, bowling, and other similar activities, in order to limit opportunities for disease exposure and transmission in the State; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a state of emergency continues to exist in all counties of Washington State, that Proclamation 20-05 is amended to prohibit any number of people from gathering in any public venue in which people congregate for purposes of public entertainment, recreation, food and beverage service, theater, bowling, fitness and other similar activities, to include all public venues in which the serving, provision, or consumption of prepared food or beverages occurs at a table, bar, or for consumption within.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the onsite consumption of food and/or beverages in a public venue, including but not limited to, the following venues, and which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date:

1. Restaurants;
2. Food courts;
3. Bars;
4. Taverns;
5. Coffee shops;
6. Catered events;
7. Clubs;
8. Bowling alleys;
9. All other similar venues in which people congregate for the consumption of food or beverages.

For purposes of this Proclamation, "public venue" has its ordinary meaning and also includes, but is not limited to, social clubs, private clubs, tennis clubs, golf clubs, faith-based organizations/facilities, and other similar venues.

This Proclamation does not prohibit the sale of prepared food or beverages that are otherwise legally delivered or taken out of the venue for consumption or the purchasing of groceries that are not consumed within the premises, more commonly known as drive-through, take-out, and delivery services.

This Proclamation does not apply to a broad range of businesses and services, including but not limited to grocery stores, pharmacies, convenience stores, gas stations, pet stores, and libraries; however, any sit-down food or beverage services within these facilities are prohibited.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the operation of public venues in which people congregate for entertainment, social or recreational purposes, including but not limited to theaters, bowling alleys, gyms, fitness centers, non-tribal card rooms, barbershops and hair/nail salons, tattoo parlors, pool halls, and other similar venues, which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, for all other retail businesses except pharmacies and grocery stores, I hereby prohibit the operation of all retail stores unless they designate an employee or officer who must establish and implement social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines, which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 16th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# EXHIBIT I



**JAY INSLEE**
Governor

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATIONS 20-05, 20-07, and 20-11

**20-14**
**Reduction of Statewide Limits on Gatherings**

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS**, as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, and 20-13, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the spread of COVID-19 has been classified by the World Health Organization as a pandemic that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the COVID-19 disease has and continues to spread quickly across the state of Washington, beyond the original community outbreaks in King, Pierce, and Snohomish counties, significantly increasing the threat of significant associated health risks statewide; and

**WHEREAS,** to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately expand the restrictions on large gatherings of 250 or more as amended under Proclamation 20-11 to gatherings of 50 people or more; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continue to threaten the life and health of our people as well as the economy of Washington State and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a state of emergency

continues to exist in all counties of Washington State, that Proclamations 20-05 and all amendments thereto remain in effect, and Proclamations 20-07 and 20-11, pertaining to gatherings of 250 people or more, is amended to reduce the size of gatherings to 50 people or less. Furthermore, activities of less than 50 people are also prohibited, unless organizers of those activities comply with social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines. The provisions of this order shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 16th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# EXHIBIT J



**JAY INSLEE**
Governor

**STATE OF WASHINGTON**
## OFFICE OF THE GOVERNOR
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

## PROCLAMATION BY THE GOVERNOR
## AMENDING PROCLAMATION 20-05

### 20-25

### STAY HOME – STAY HEALTHY

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS**, as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, 20-13, 20-14, 20-15, 20-16, 20-17, 20-18, 20-19, 20-20, 20-21, 20-22, 20-23, and 20-24, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS**, the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State, significantly increasing the threat of serious associated health risks statewide; and

**WHEREAS**, there are currently at least 2,221 cases of COVID-19 in Washington State and, tragically, 110 deaths of Washingtonians associated with COVID-19; and

**WHEREAS**, models predict that many hospitals in Washington State will reach capacity or become overwhelmed with COVID-19 patients within the next several weeks unless we substantially slow down the spread of COVID-19 throughout the state; and

**WHEREAS**, hospitalizations for COVID-19 like illnesses are significantly elevated in all adults, and a sharply increasing trend in COVID-19 like illness hospitalizations has been observed for the past three (3) weeks; and

**WHEREAS**, the worldwide COVID-19 pandemic and its progression in Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim: that a State of Emergency continues to exist in all counties of Washington State; that Proclamation 20-05 and all amendments thereto remain in effect as otherwise amended; and that Proclamations 20-05, 20-07, 20-11, 20-13, and 20-14 are amended and superseded by this Proclamation to impose a Stay Home – Stay Healthy Order throughout Washington State by prohibiting all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business, within the limitations provided herein.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE**, based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, and to implement the Stay Home—Stay Healthy Order described above, I hereby impose the following necessary restrictions on participation by all people in Washington State by prohibiting each of the following activities by all people and businesses throughout

Washington State, which prohibitions shall remain in effect until midnight on April 6, 2020, unless extended beyond that date:

1. **All people in Washington State shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services.** This prohibition shall remain in effect until midnight on April 6, 2020, unless extended beyond that date.

   **To implement this mandate, I hereby order** that all people in Washington State are immediately prohibited from leaving their home or place of residence except to conduct or participate in (1) essential activities, and/or (2) employment in providing essential business services:

   a. **Essential activities** permitted under this Proclamation are limited to the following:
      1) **Obtaining necessary supplies and services** for family or household members and pets, such as groceries, food and supplies for household consumption and use, supplies and equipment needed to work from home, and products necessary to maintain safety, sanitation and essential maintenance of the home or residence.
      2) **Engaging in activities essential for the health and safety** of family, household members and pets, including things such as seeking medical or behavioral health or emergency services and obtaining medical supplies or medication.
      3) **Caring for** a family member, friend, or pet in another household or residence, and to transport a family member, friend or their pet for essential health and safety activities, and to obtain necessary supplies and services.
      4) **Engaging in outdoor exercise activities**, such as walking, hiking, running or biking, but only if appropriate social distancing practices are used.

   b. **Employment in essential business services** means an essential employee performing work for an essential business as identified in the "Essential Critical Infrastructure Workers" list, or carrying out minimum basic operations (as defined in Section 3(d) of this Order) for a non-essential business.

   c. **This prohibition shall not apply to** individuals whose homes or residences are unsafe or become unsafe, such as victims of domestic violence. These individuals are permitted and urged to leave their homes or residences and stay at a safe alternate location.

   d. **This prohibition also shall not apply to** individuals experiencing homelessness, but they are urged to obtain shelter, and governmental and other entities are strongly encouraged to make such shelter available as soon as possible and to the maximum extent practicable.

e.  For purposes of this Proclamation, homes or residences include hotels, motels, shared rental units, shelters, and similar facilities.

2.  **All people in Washington State shall immediately cease participating in all public and private gatherings and multi-person activities for social, spiritual and recreational purposes, regardless of the number of people involved, except as specifically identified herein.** Such activity includes, but is not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities. This prohibition also applies to planned wedding and funeral events.  This prohibition shall remain in effect until midnight on April 6, 2020, unless extended beyond that date.

    **To implement this mandate, I hereby order** that all people in Washington State are immediately prohibited from participating in public and private gatherings of any number of people for social, spiritual and recreational purposes. **This prohibition shall not apply to** activities and gatherings solely including those people who are part of a single household or residential living unit.

3.  **Effective midnight on March 25, 2020, all non-essential businesses in Washington State shall cease operations except for performing basic minimum operations. All essential businesses are encouraged to remain open and maintain operations, but must establish and implement social distancing and sanitation measures established by the United States Department of Labor or the Washington State Department of Health Guidelines.** This prohibition shall remain in effect until midnight on April 8, 2020, unless extended beyond that date.

    **To implement this mandate, I hereby order** that, effective midnight on March 25, 2020, all non-essential businesses in Washington State are prohibited from conducting all activities and operations except minimum basic operations.

    a.  **Non-essential businesses** are strongly encouraged to immediately cease operations other than performance of basic minimum operations, but must do so no later than midnight on March 25, 2020.
    b.  **Essential businesses** are prohibited from operating under this Proclamation unless they establish and implement social distancing and sanitation measures established by the United States Department of Labor's Guidance on Preparing Workplaces for COVID-19 at https://www.osha.gov/Publications/OSHA3990.pdf and the Washington State Department of Health Workplace and Employer Resources & Recommendations at https://www.doh.wa.gov/Coronavirus/workplace.
    c.  **This prohibition does not apply to** businesses consisting exclusively of employees or contractors performing business activities at their home or residence, and who do not engage in in-person contact with clients.

    d.  For purposes of this Proclamation, minimum basic operations are the minimum activities necessary to maintain the value of the business' inventory, preserve the condition of the business' physical plant and equipment, ensure security, process payroll and employee benefits, facilitate employees of the business being able to continue to work remotely from their residences, and related functions.

This Proclamation shall not be construed to prohibit working from home, operating a single owner business with no in-person, on-site public interaction, or restaurants and food services providing delivery or take-away services, so long as proper social distancing and sanitation measures are established and implemented.

No business pass or credentialing program applies to any activities or operations under this Proclamation.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 23rd day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

<div align="center">By:</div>

                    /s/
                    Jay Inslee, Governor

BY THE GOVERNOR:

      /s/
Secretary of State

# EXHIBIT K



**JAY INSLEE**
Governor

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATIONS 20-05, 20-25, 20-25.1, 20-25.2 and 20-25.3

### 20-25.4

### TRANSITION FROM "STAY HOME – STAY HEALTHY" TO "SAFE START - STAY HEALTHY" COUNTY-BY-COUNTY PHASED REOPENING

**WHEREAS,** on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06 through 20-53 and 20-55 through 20-57, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations, including issuance of Proclamations 20-25, 20-25.1, 20-25.2 and 20-25.3 *(Stay Home - Stay Healthy)*, prohibiting all people in Washington State from leaving their homes except to participate in essential services or essential work and preventing all non-essential businesses in Washington State from conducting business, within the limitations therein; and

**WHEREAS,** the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State and remains a significant health risk to all of our people, especially members of our most vulnerable populations; and

**WHEREAS,** when I last amended the *Stay Home - Stay Healthy* order (Proclamation 20-25.3) on May 4, 2020, there were approximately 15,462 cases of COVID-19 in Washington State with 841 deaths; and, now, as of May 31 2020, the Department of Health indicated that there have been 21,349 cases and 1,118 deaths, demonstrating the ongoing, present threat of this lethal disease; and

**WHEREAS,** the health professionals and epidemiological modeling experts predict that although we have passed the peak of the first wave of COVID-19 in the State and we have made adequate progress as a state to modify some of the initial community mitigation efforts, the nature of COVID-19 viral transmission, including both asymptomatic and symptomatic spread as well as the relatively high infectious nature, suggests it is appropriate to slowly re-open Washington State only through a careful, phased, and science-based approach. Modelers continue to agree that fully relaxing social distancing measures will result in a sharp increase in the number of cases; and

**WHEREAS,** although the judicial system, an essential service, has undergone significant disruption and modification to operate safely during this crisis, and by order of the Supreme Court has delayed most jury trials in criminal and civil matters, in-person proceedings are necessary in many circumstances, and the judicial system is currently working with health officials to innovate and plan for the safe resumption of jury trials and other court services including at offsite facilities; and the efforts undertaken to innovate and plan are equally essential to the resumption of our judicial system, and should be conducted remotely if possible but otherwise may be conducted in person if appropriate physical distancing and protective measures are in place; and

**WHEREAS,** this unprecedented health crisis has caused extraordinary anxiety and a significant disruption of routine and important activities for every Washingtonian; and I recognize the extraordinary resiliency, strength, adaptability, and courage of every Washingtonian during this difficult time; and

**WHEREAS,** many people in Washington State attend religious services on a regular basis, making such services a vital part of the spiritual and mental health of our community, and previous guidance issued related to remote services, drive-in services, counseling, outdoor services, and Phase 2 indoor services, all subject to restrictions outlined in those guidance documents, remain in place and may be further expanded or modified as the science and data support; and

**WHEREAS,** the science also suggests that by ensuring safe social distancing and hygiene practices, many business activities can be conducted with limited exposure to customers, which is important to revitalizing Washington State's economy, restoring jobs, and providing necessary goods and services; and

**WHEREAS,** in Proclamation 20-25.3 I established an initial four-phased approach to reopening Washington State; and, while all counties started in Phase I on May 4, 2020, a total of 28 counties are now either in or eligible to apply for Phase 2; and

**WHEREAS,** the Washington State Department of Health's data and modeling demonstrate that many counties have significantly reduced or eliminated the number of new COVID-19 cases sufficiently to enable those counties to control and respond to virus outbreaks within the capacity of existing local and regional health care systems without significant increased risk of being overwhelmed, and this data supports

providing all counties with an opportunity to lift some restrictions, subject to certain conditions and requirements; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continue to threaten the life and health of our people as well as the economy of Washington State, and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS,** the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS,** the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people; and

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim and order that a State of Emergency continues to exist in all counties of Washington State, that Proclamation 20-05 and all amendments thereto remain in effect as otherwise amended, and that, to help preserve and maintain life, health, property or the public peace pursuant to RCW 43.06.220(1)(h), Proclamations 20-25, 20-25.1, 20-25.2, and 20-25.3 (*Stay Home – Stay Healthy*) are amended to extend all of the prohibitions and each expiration date therein to 11:59 p.m. on July 1, 2020, and are renamed (*Safe Start – Stay Healthy*), and that except as otherwise provided in this order or the *Safe Start Washington* Phased Reopening County-by-County Plan found here, all other provisions of Proclamations 20-25, 20-25.1, 20-25.2, and 20-25.3 shall remain in full force and effect.

**FURTHERMORE,** in collaboration with the Washington State Department of Health, and based on analysis of the data and epidemiological modeling, I hereby order that, beginning on June 1, 2020, the *Safe Start Washington* Phased Reopening Plan will be applied on a county-by-county basis, and will allow any county that has been in Phase 1 or 2 for three weeks to apply to the Secretary of Health to move in whole or in part to the next phase; and further, the application process will include target metrics (intended to be applied as "targets" and not hard-line measures) set by the Secretary of Health, and the application must be submitted by the County Executive, or, in the absence of a County Executive, with the approval of the County Council or Commission, in accordance with the instructions provided by the Secretary of Health; and

**FURTHERMORE,** in evaluating any application to move forward, the Secretary of Health may approve a county moving in whole to the next phase, or may only approve certain activities moving to the next phase; and

**FURTHERMORE**, until there is an effective vaccine, effective treatment or herd immunity, it is crucial to maintain some level of community interventions to suppress the spread of COVID-19 throughout all phases of recovery; and, therefore, throughout all phases, individuals should continue to engage in personal protective behaviors including: practice physical distancing, staying at least six feet away from other people; wear cloth face coverings in public places when not eating or drinking; stay home if sick; avoid others who are sick; wash hands frequently; cover coughs and sneezes; avoid touching eyes, nose and mouth with unwashed hands; and disinfect surfaces and objects regularly; and

**FURTHERMORE**, I hereby order, in addition to other requirements detailed in the *Safe Start Washington* Phased Reopening Plan, that, beginning on June 8, 2020, when on the job, all employees must wear a facial covering except when working alone or when the job has no in-person interaction as detailed in the *Safe Start Washington* Phased Reopening Plan; and, further, that employers must provide cloth facial coverings to employees, unless their exposure dictates a higher level of protection; and

**FURTHERMORE,** I continue to permit the low-risk activities previously permitted as reflected or clarified in formal guidance documents here, and which may be updated or modified as the science and data supports; and

**FURTHERMORE,** in collaboration with the Washington State Department of Health, in furtherance of the physical, mental, and economic well-being of all Washingtonians, I will continue to analyze the data and epidemiological modeling and adjust the *Safe Start Washington* Phased Reopening Plan accordingly.

I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

All persons are again reminded that no credentialing program or requirement applies to any activities or operations under this Proclamation.

Violators of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5). Further, if people fail to comply with the required social distancing and other protective measures while engaging in this phased reopening, I may be forced to reinstate the prohibitions established in earlier proclamations.

This order goes into effect on June 1, 2020, and expires at 11:59 pm on July 1, 2020.

Signed and sealed with the official seal of the state of Washington on this 31st day of May, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# EXHIBIT L



THE BELLEVUE
COLLECTION

March 16, 2020

Dear KDC Team,

I am reaching out to update you on our company's response to the rapidly evolving Coronavirus (COVID-19) situation here in Western Washington.  These are unsettling and unprecedented times.

I would like to thank you for the remarkable efforts you have made to support your fellow colleagues and team members here at KDC, as well as the care and compassion you have shown our tenants and customers being impacted by this pandemic.

As you have witnessed, this situation is fluid and evolving quickly.  As an organization, we are working tirelessly to keep informed of all directives and executive orders impacting businesses throughout The Bellevue Collection.  Additionally, we have taken extraordinary measures to keep our properties safe and clean.  These measures have included increased cleaning protocols and added frequency of hospital-grade disinfectant applications in common areas.

To date, a public health directive has been issued by King County and the state temporarily closing all in-restaurant dining, gyms, entertainment venues, theaters and salons. Additionally, many of our stores have chosen to close. At this time, we have made the necessary and difficult decision to temporarily close our retail shops in Bellevue Square, Bellevue Place, Lincoln Square North and Lincoln Square South with a planned reopening on April 2, 2020.

While this situation is disconcerting on multiple levels, we have overcome turbulent events and economic downturns in the past and we will persevere through this storm as well.  Your health and safety, and that of our tenants and customers, will continue to be my greatest priority.

Be assured that our executive team will continue to monitor this evolving situation and keep you updated on business conditions and operational changes.

Thank you again for your ongoing efforts to help mitigate the impacts of this global pandemic on our families, businesses and community.

Stay safe,

Kemper Freeman


Office of
INSURANCE COMMISSIONER
P.O. BOX 40255
OLYMPIA, WA 98504-0255

7020 1810 0000 6097 7808



U.S. POSTAGE ⟩⟩ PITNEY BOWES

FIRST CLASS

ZIP 98501 $ 013.75
02 4W
0000354556 NOV 10. 2020

AMERICAN GUARANTEE & LIABILITY INSU-
CORPORATION SERVICE COMPANY
MC-CSC1
300 DESCHUTES WAY SW SUITE 208
TUMWATER WA 98501